IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURIE BOLOS, an individual, ET AL., | CIV. NO. 23-00104 JMS-KJM |
| Plaintiffs, | ORDER GRANTING IN PART |
| | AND DENYING IN PART |
| v. | DEFENDANT JOSEPH BERGER'S |
| | RENEWED MOTION TO DISMISS |
| WALDORF=ASTORIA | FOR LACK OF PERSONAL |
| MANAGEMENT LLC OPERATING AS | JURISDICTION, ECF NO. 128 |
| GRAND WAILEA RESORT, a Waldorf | |
| Astoria Resort, ET AL., | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JOSEPH BERGER'S RENEWED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, ECF NO. 128**

## I. INTRODUCTION

Before the court is Defendant Joseph Berger's ("Berger") Renewed

Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss"), ECF

No. 128, filed under Federal Rule of Civil Procedure 12(b)(2).  The Motion to

Dismiss is directed at the allegations in Plaintiffs' "Corrected Second Amended

Class and Collective Action Complaint."[1]  *See* ECF No. 166.  As announced at the

---

[1]  The Motion to Dismiss was originally filed on July 5, 2023, and it was directed at allegations in the First Amended Complaint ("FAC").  *See* ECF No. 86.  The Motion was deemed withdrawn without prejudice after the parties stipulated to stay the case pending settlement discussions.  *See* ECF No. 91.  After those discussions went nowhere, the Motion was
(continued . . . )

July 1, 2024 hearing, the court GRANTS the Motion to Dismiss in part and

DENIES it in part.

The court grants the Motion to Dismiss to the extent the court finds

that there is no general or specific jurisdiction over Berger under Hawaii's long

arm statute.  *See, e.g.*, *LNS Enters. LLC v. Continental Motors, Inc.*, 22 F.4th 852,

858–59 (9th Cir. 2022) (reiterating that "due process necessitates that a nonresident

defendant have 'certain minimum contacts' with a forum state before that state can

exercise personal jurisdiction over that individual," and explaining general or

specific jurisdiction).

But the court denies the Motion to Dismiss as to the SAC's federal

claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act

because the SAC alleges the basic elements of personal jurisdiction under 21

U.S.C. § 1965(b), which is a federal statute authorizing nationwide service of

process for federal RICO claims.  *See, e.g.*, *Butcher's Union Local No. 498 v. SDC

Inv. Inc.*, 788 F.2d 535, 539 (9th Cir. 1986) (defining the elements of personal

---

re-filed on March 21, 2024, and was still directed to the allegations of the FAC.  *See* ECF No.
128.  Subsequently, the parties agreed to allow Plaintiffs to file a Second Amended Complaint
("SAC"), and—with the court's permission—to have the Motion to Dismiss directed to the
SAC's allegations without the necessity of revising and refiling the Motion.  *See* ECF Nos. 149,
152.  Accordingly, a SAC was filed on June 20, 2024.  *See* ECF No. 156.  After the July 1, 2024
hearing on the Motion to Dismiss, Plaintiffs filed a "corrected" SAC on July 8, 2024 to clarify
errors in the SAC.  *See* ECF No. 166.  The court thus considers the Motion to Dismiss to be
challenging the corrected SAC's allegations as to Berger.  For ease of reference, hereinafter, the
court refers to the corrected SAC, ECF No. 166, simply as the "SAC."

jurisdiction under § 1965(b)).  Thus, at present, the court also has pendent personal jurisdiction over the state law RICO count.  *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180−81 (9th Cir. 2004).

Berger's argument that Plaintiffs' federal RICO claim fails under *Miller v. Yokohama Tire*, 358 F.3d 616, 620–21 (9th Cir. 2004), is premature, requiring a fully-briefed motion that challenges the merits and substance of the SAC's RICO allegations, such as a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings.  The court will not address those arguments in this Rule 12(b)(2) motion.

## II.  <u>DISCUSSION</u>

Plaintiffs assert a variety of counts against several Defendants based generally on the alleged misclassification of Plaintiffs as independent contractors rather than employees of the Grand Wailea Resort on Maui.  *See generally* ECF No. 166.  But, given the filing of the corrected SAC, it is now clear that only two of the SAC's sixteen Counts are directed at Berger.  That is, Berger is only a Defendant as to the federal and state RICO counts—Counts XII and XIII of the SAC.  *See* ECF No. 166 at PageID.4454–4460.  The court proceeds directly to its legal analysis of Berger's Motion to Dismiss which contends the court lacks personal jurisdiction against him for both of those claims.  *See Action Embroidery*,

368 F.3d at 1180 ("Personal jurisdiction must exist for each claim asserted against a defendant.") (citation omitted).

## A.   Personal Jurisdiction Standards

"For a court to exercise personal jurisdiction over a defendant, there must be an applicable rule or statute that potentially confers jurisdiction over the defendant." *Id.* at 1177 (citation, brackets, and internal quotation marks omitted). "Further, '[a] federal court obtains personal jurisdiction over a defendant if it is able to serve process on him.'" *Id.* (quoting *Butcher's Union*, 788 F.2d at 538).

Thus, under Federal Rule of Civil Procedure 4(k)(1)(A), "personal jurisdiction over an out-of-state defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Balongo v. Balongo*, 2024 WL 3293620, at *2 (D. Haw. July 3, 2024) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (brackets omitted)). "And Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, is coextensive with federal due process." *Id.* (citations omitted). The Due Process clause "necessitates that a nonresident defendant have 'certain minimum contacts' with a forum state before that state can exercise personal jurisdiction over that individual." *LNS Enters. LLC*, 22 F.4th at 858. In turn, "[a] defendant's minimum contacts can give rise to either general or specific jurisdiction." *Balongo*, 2024

4

WL 3293620, at *3 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)).

Personal jurisdiction may also be grounded in Rule 4(k)(1)(C), which provides for service of process "when authorized by a federal statute."  In civil RICO cases, 18 U.S.C. § 1965(b) authorizes nationwide service of process if "the ends of justice require that other parties residing in any other district be brought before the court."  Personal jurisdiction over an out-of-state defendant is proper under § 1965(b) if the court has personal jurisdiction over "at least one of the participants in [an] alleged multidistrict conspiracy" and "there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union*, 788 F.2d at 539.  That is, there must be a "single nationwide RICO conspiracy." *Doe v. Walmart Inc.*, 2019 WL 499754, at *6 (N.D. Cal. Feb. 8, 2019) (quoting *Gilbert v. Bank of Am.*, 2014 WL 4748494, at *4 (N.D. Cal. Sept. 23, 2014) (emphasis omitted)).

To withstand a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdictional facts.  *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).  "When a defendant's motion to dismiss on jurisdictional grounds rests only on written materials rather than on testimony at an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th

1085, 1090 (9th Cir. 2023) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation and internal quotation marks omitted)).

The court "take[s] as true all *uncontroverted* allegations in the complaint and resolve[s] all genuine disputes in the plaintiff's favor." *LNS Enters.*, 22 F.4th at 858 (quoting *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma*, S.A., 972 F.3d 1101, 1106 (9th Cir. 2020)) (brackets and emphasis added). But the court cannot "assume the truth of allegations in a pleading which are contradicted by affidavit." *Id.* (citation omitted). If a defendant proffers evidence in a Rule 12(b)(2) motion that controverts a complaint's allegations, a plaintiff may not simply rely on the complaint but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc., v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)); *see also, e.g.*, *Mir v. Greines*, *Martin, Stein & Richland*, 2015 WL 4139435, at *5 (C.D. Cal. Jan. 12, 2015) ("Plaintiff's version of the facts is taken as true for purposes of the [Rule 12(b)(2)] motion *if not directly controverted. . . .*") (emphasis added) (citations omitted). That is, if a plaintiff "file[s] no affidavits or declarations in response," then "[t]he relevant uncontroverted record . . . includes Defendants' rebuttals to Plaintiffs' allegations," *LNS Enters.*, 22 F.4th at 858, and the court need not assume all the complaint's allegations are true. "If both sides submit affidavits, then conflicts between the

6

parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (citation and quotation marks omitted).

Applying these standards, the court first analyzes whether there is general or specific jurisdiction over Berger under Hawaii's long arm statute, and then discusses whether jurisdiction is proper under § 1965(b).

## B.   Application of Standards

### 1.   *Hawaii's Long Arm Statute*

Initially, when examining whether asserting personal jurisdiction based on Hawaii Revised Statutes ("HRS") § 634-35 violates due process, the parties now agree that there is no general jurisdiction over Berger. *See* ECF No. 139 at PageID.3990; ECF No. 148 at PageID.4191. The analysis thus focuses on whether Plaintiffs can meet the test for specific jurisdiction.

"Whether specific jurisdiction is proper 'depends on an affiliation between the forum and the underlying controversy [which is], principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Balongo*, 2024 WL 3293620, at *3 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The court applies the Ninth Circuit's three-part inquiry to determine whether a non-resident defendant's "minimum contacts" with a forum meet the due process standard for specific personal jurisdiction:

> (1) The non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*LNS Enters.*, 22 F.4th at 859 (emphases added) (citation omitted). "All three prongs must be satisfied to assert personal jurisdiction . . . ." *Id.* If a plaintiff satisfies its burden to prove the first two prongs, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017) (citation and internal quotation marks omitted).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks omitted). And *Walden* emphasizes that the relationship between the nonresident defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State." 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). That is, the minimum contacts analysis examines "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* "[A] defendant's

8

relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. "[A] plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285. Personal jurisdiction is improper if "the forum state was only implicated by the happenstance of Plaintiff['s] residence." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017).

       a.    *Specific Jurisdiction Fails at Prong One—Purposeful Direction*

      "The first prong of the specific jurisdiction inquiry encompasses two separate concepts: 'purposeful availment' and 'purposeful direction.'" *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (citation omitted). The Ninth Circuit "generally use[s] the purposeful availment analysis in suits sounding in contract, and for unintentional tort claims." *Id.* (citations omitted). And it generally employs a purposeful direction analysis for "intentional tortious or 'tort-like' act[s]." *Id.* at 1091 (citations omitted); *Ayla*, 11 F.4th at 979 (same).

      Counts XII and XIII of the SAC—again, the only claims asserted against Berger—are both civil RICO counts. And it appears well-settled that RICO and RICO conspiracy claims based on fraud sound in tort. *See, e.g.*, *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 991 (C.D. Cal. 2013). The court

thus focuses on a "purposeful direction" analysis at the first prong of the specific jurisdiction test.  *See Marani v. Cramer*, 2024 WL 1511329, at *4 (N.D. Cal. Feb. 2, 2024) (applying a purposeful direction analysis to RICO claims based on wire fraud); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1027 (N.D. Cal. 2018) ("Because the RICO and fraud-on-consumer claims are all predicated on torts, a purposeful direction analysis applies instead of a purposeful availment analysis") (citation omitted); *Munderloh v. Biegler GmbH*, 2022 WL 901408, at *3 (D. Ariz. Mar. 28, 2022) ("Because RICO claims are torts, the purposeful direction analysis is appropriate.") (citations omitted).

"The governing test for determining whether a defendant has purposefully directed its actions toward the forum is the so-called '"effects" test, derived from *Calder v. Jones*, 465 U.S. 783 (1984).'"  *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 452 (9th Cir. 2024) (quoting *Axiom Foods*, 874 F.3d at 1069).  Under that test, a defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.* (quoting *Axiom Foods*).

Here, Berger submitted a declaration attesting to a lack of contacts with Hawaii.  *See* ECF No. 128-1.  According to his declaration—although he is the president and chief executive of co-Defendant BRE Hotels & Resorts LLC—

Berger was not involved in the day-to-day management of the Grand Wailea Resort. *Id.* at PageID.3886. He attests that he made no decisions regarding classifying individuals who provided services at the Grand Wailea Resort, and he was not involved with negotiating or drafting the independent contractor agreements at issue in this litigation. *Id.* He conducts most of his work in Florida, and his "limited and sporadic" work-related travel to Hawaii was unrelated to the "joint employment and misclassification issues raised in the operative Complaint." *Id.* at PageID.3887. He has no other contacts with Hawaii. *Id.*

In response, the only evidence Plaintiffs offer is a confidential (redacted) settlement agreement which Berger signed in October of 2021 in his capacity as "President & CEO [of] BRE Hotels & Resorts" for "BRE Iconic GWR Owner LLC," which was a party to that settlement agreement.[2] *See* ECF No. 139-4 at PageID.4016. No details are provided about the facts of the underlying dispute, which apparently settled before a lawsuit was filed. Construed in Plaintiffs' favor, that agreement settled a dispute involving allegations that a worker was wrongfully misclassified as an independent contractor by the Grand Wailea, similar to the allegations of the SAC.[3] *See* ECF No. 139-1 at

---

[2] Both BRE Hotels & Resorts LLC and BRE Iconic GWR Owner LLC are also co-Defendants in the instant actions. *See* ECF No. 166 at PageID.4396.

[3] In this regard, the SAC alleges, in part: "When another Spa worker recently challenged Defendants' willful misclassification, Defendant Berger personally, through his counsel,

(continued . . . )

PageID.3995−3996.  But, in any event, this vague evidence does not rebut Berger's sworn declaration that he has no other relevant contacts with Hawaii, and the SAC contains no other allegations regarding specific contacts between Berger and Hawaii.[4]  *See Scott*, 792 F.2d at 927 (explaining that, if evidence in a Rule 12(b)(2) motion is proffered that controverts a complaint's allegations, a plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction"); *LNS Enters.*, 22 F.4th at 858 (reiterating that a court "cannot assume the truth of allegations in a pleading which are contradicted by affidavit").

More important, the settlement agreement does not demonstrate that Berger purposefully directed suit-related activities to a Hawaii forum.  That is, Berger's signing of the settlement agreement does not establish necessary "minimum contacts" that Berger "expressly aimed" at Hawaii, and that Berger knew would cause harm to Plaintiffs in Hawaii.  *See Axiom Foods*, 874 F.3d at 1069–70 (reiterating the *Calder* effects test).

As Berger argues, his signature as a corporate officer on behalf of BRE Iconic GWR Owner LLC does not make him a party to the settlement

_____

negotiated the resolution of the worker's claim and executed a settlement agreement with the worker on behalf of Defendants, including BRE Iconic Holdings, Inc."  ECF No. 166 at PageID.4417.

[4]  At most, the SAC alleges that "[u]pon information and belief, Defendants Berger, Oliver, and Santiago currently make financial and personnel decisions for Grand Wailea, including the Spa."  ECF No. 166 at PageID.4417.

agreement; his signing a contract in a corporate capacity is insufficient to establish minimum contacts with Hawaii in this suit.  *See In re Boon*, 923 F.3d at 651 (reasoning that "[the non-resident's] signature on the Agreement as CEO does not 'automatically establish sufficient minimum contacts in the other party's home forum'") (quoting *Burger King Corp.*, 471 U.S. at 478);[5] *see also, e.g.*, *Stemcell Technologies Canada, Inc. v. StemExpress, LLC*, 2022 WL 509673, at *3 (N.D. Cal. Feb. 21, 2022) (rejecting argument that signing of contracts and documents sufficed to establish minimum contacts, reasoning in part that "a corporate officer does not become a party to the contract simply 'by signing it in the officer's representative capacity'") (quoting *In re Boon*, 923 F.3d at 651)); *Cress v. Nexo Fin. LLC*, 2023 WL 6609352, at *8 (N.D. Cal. Oct. 10, 2023) ("[The

---

[5]  *In re Boon* relied, in part, on a statement in *Forsythe v. Overmeyer*, 576 F.2d 779, 783−84 (9th Cir. 1978).  *See In re Boon*, 923 F.3d at 651 (quoting in a parenthetical the statement from *Forsythe* that "a corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum").  But *In re Boon's* reliance on *Forsythe* has been undermined by subsequent case law.  As recognized in *Global Commodities,* 972 F.3d at 1110:

> Our statement in *Forsythe* that "a corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum," *Forsythe*, 576 F.2d at 783–84, is clearly irreconcilable with the Supreme Court's decisions subjecting corporate employees to suit in exactly those circumstances.

Nevertheless, *In re Boon* is still proper authority for the general proposition that a person's status as an officer does not guarantee personal jurisdiction wherever the officer's corporation has contacts.  *See Glob. Commodities*, 972 F.3d at 1109 ("Although their status as officers of [the corporation] does not foreclose personal jurisdiction over [the non-resident officers] their status also does not guarantee it.").  Rather, "[p]ersonal jurisdiction over an individual who acts as an agent . . . must be assessed on the individual's actions alone."  *Id.*

nonresident's] signing of this agreement in his corporate capacity does not count toward his contacts with California."). "[T]he contacts of a corporation cannot be imputed to its officers unless the officer is the corporation's 'alter ego.'" *Stemcell Technologies*, 2022 WL 509673, at *3 (citations omitted).

What's more, Berger's litigation conduct in approving and signing a settlement agreement—or even negotiating a settlement—regarding a different but similar dispute in Hawaii does not provide the necessary minimum contacts with Hawaii in this case. As *Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 454 F. Supp. 3d 1040 (D. Or. 2020), reasoned "[c]onduct that is required by the litigation process cannot, standing alone, provide the minimum contacts necessary to support personal jurisdiction." *Id.* at 1046 (citing *Morrill*, 873 F.3d at 1146−48). In turn, *Morrill* concluded that "actions taken by the Defendants in Arizona . . . as part of . . . [l]itigation [do not] provide a sufficient basis to show that the alleged torts were 'expressly aimed' at Arizona." 873 F.3d at 1146. In rejecting litigation conduct in an Arizona forum as sufficient contacts, *Morrill* explained:

> Defendants' conduct in Arizona occurred as part of the required process for pursuing discovery and serving Plaintiffs in connection with the litigation in Nevada. The outcome would be different if . . . [a defendant] had traveled to Arizona, not to appear at a hearing on a motion to quash a subpoena, but to throw a rock through the window of the Arizona residence of opposing counsel

in litigation that was pending in Nevada.

873 F.3d at 1148.  Likewise, here, what Berger did by signing the settlement

agreement, was—at most—participation as a corporate representative in resolving

a legal dispute that occurred in Hawaii.

Nor is it sufficient for purposes of personal jurisdiction that—as

Plaintiffs argue and as alleged in the SAC—Berger's involvement in the settlement

agreement provided notice to Berger that similar wrongdoing was continuing to

occur and that his failure to stop it caused injury to Plaintiffs.[6]  Such allegations are

insufficient to constitute conduct that was purposefully directed (i.e., "expressly

aimed") at Hawaii.  *See Walden*, 571 U.S. at 289 (rejecting the position that

"knowledge, combined with . . . foreseeable harm . . . satisfie[s] the 'minimum

contacts' inquiry," and reasoning that "Petitioner's actions in Georgia did not

create sufficient contacts with Nevada simply because he allegedly directed his

---

[6] In this regard, the SAC alleges:

> In 2021, Defendants Berger, Oliver, and Santiago were put on
> express written notice of the unlawful business practices described
> above and herein and took no action to remedy or cure these
> practices.  The individual Defendants repeatedly and continuously
> communicated through mail, telephone, and email regarding the
> unlawful business practices in response to this explicit written
> notice and caused the wire transfer of funds to complete the
> confidential settlement of the complaint about Defendants'
> unlawful business practices in furtherance of their conspiracy and
> in deliberate disregard of the law.  Defendants continued
> to violate the law thereafter in the same manner.

ECF No. 166 at PageID.4418; *see also id.* at PageID.4456 & 4459 (similar).

conduct at plaintiffs whom he knew had Nevada connections"). *Cf. Perez v. United States*, 2014 WL 4385473, at *8 (S.D. Cal. Sept. 3, 2014) ("[T]hese federal officers' alleged omissions—failures to train, supervise, and prevent or correct the use of the Rocking Policy—are not 'intentional act[s] . . . expressly aimed at the forum state.'") (citation omitted).  Indeed, nothing in the settlement agreement or in the record indicates that BRE Iconic GWR Owner LLC committed or admitted to any wrongdoing in that dispute; the only fact the court can infer for purposes of the minimum contacts analysis that Berger knew of *allegations* of misclassification of a Spa worker.  Such vague references to Berger's possible knowledge do not establish conduct purposefully directed at a Hawaii forum.  *See Walden*, 571 U.S. at 289.

> b.    *Specific Jurisdiction also Fails at Prong Two*

In any event, Plaintiffs' arguments about Berger's negotiation and signing of the settlement agreement fail at the second prong of the minimum contacts test—the claims against Berger in this suit do not "arise[] out of or relate[] to the defendant's forum-related activities."  *LNS Enters.*, 22 F.4th at 859 (quoting *In re W. States Wholesale Nat Gas Antitrust Litig.*, 715 F.3d 716, 741–42 (9th Cir. 2013)).  The RICO claims against Berger are not based on the settlement agreement or even his contacts with Hawaii related to that settlement agreement.  There is no claim, for example, that the settlement agreement was entered into

fraudulently or was breached.  Rather, this suit is based on different events (even if allegedly similar wrongdoing).  As Berger argues, "[t]his case is about Plaintiffs' classification as independent contractors, not BRE Iconic GWR Owner LLC's entry of a settlement agreement in a different [dispute]."  ECF No. 148 at PageID.4196.

        In short, at prongs one and two of the analysis, the court lacks specific jurisdiction over Berger as to either Count XII or XIII of the SAC.  Personal jurisdiction fails as to Berger under HRS § 634-34.

### 2.   *Jurisdiction Under 18 U.S.C. § 1965(b)*

        Alternatively, Plaintiffs argue in their Opposition that personal jurisdiction is proper under Rule 4(k)(1)(C) (providing for service of process "when authorized by a federal statute") because 18 U.S.C. § 1965(b) authorizes nationwide service of process for a federal RICO claim if "the ends of justice require that other parties residing in any other district be brought before the court."  Under § 1965(b),

> Plaintiffs must show: (1) the Court has personal jurisdiction over at least one of the participants in the action; (2) "there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators;" and (3) the facts show a *single nationwide* RICO conspiracy exists.

*Gilbert*, 2014 WL 4748494, at *4 (citing *Butcher's Union,* 788 F.2d at 539.

> In order to demonstrate that a single nationwide RICO conspiracy exists Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to, or participated in, a violation of two predicate offenses.  The Court considers whether the words, actions and relationships between the parties, as alleged in the [operative complaint] raise an inference of an agreement.

*Id.* (quotation marks and internal citations omitted).

Berger's Reply argues that jurisdiction is improper under § 1965(b) because the SAC fails to allege a single nationwide conspiracy.  He argues that there can be no RICO claim under the SAC's allegations, relying heavily on *Miller v. Yokohama Tire*—a case that "involve[d] an effort to transform a California state law wage and hour claim into a federal RICO claim."  358 F.3d at 618.  *Miller* held that a RICO claim based on fraudulently misrepresenting an employee's legal status as an independent contractor failed because a RICO claim cannot be based on misrepresentations of law.  *Id.* at 621; *see also, e.g.*, *Albers v. Yarbrough World Solutions, LLC*, 2020 WL 2218964, at *5 (N.D. Cal. May 7, 2020) (dismissing RICO claim under *Miller* because "plaintiffs premised their RICO claims on purported acts of mail and wire fraud involving their employers' alleged misrepresentations about their employment classification").

Berger's arguments, however, were made in its Reply when responding to Plaintiffs' assertion in their Opposition of jurisdiction under § 1965(b).  Under this posture, Plaintiffs have not had an opportunity to file a

written response to Berger's argument under *Miller*.  More importantly, Berger's

argument is essentially that the SAC fails to state a RICO claim—not that it fails to

*allege* personal jurisdiction for a federal RICO claim.  The argument challenges the

merits of the SAC's allegations, not their adequacy.  Here, the SAC *does* allege the

basic elements of personal jurisdiction under § 1965(b).  *See* ECF No. 166 at

PageID.4398.[7]  Berger's arguments based on *Miller* are much more suited to being

raised in a motion attacking the SAC's RICO theory as pled—such as a Rule

12(b)(6) or Rule 12(c) motion—not a motion challenging jurisdiction, especially

with the current procedural posture where Berger's primary argument challenging

jurisdiction under § 1965(b) was raised in his Reply.  With a motion challenging

the merits, the court could analyze the particular allegations of the SAC, and

consider whether—in light of *Miller*—the SAC states a substantive violation of

RICO, and "whether the words, actions and relationships between the parties, as

---

[7] The SAC provides, in part:

> This Court also has personal jurisdiction over the individual
> Defendants (also hereinafter referred to as "co-conspirators" or the
> "RICO enterprise")—one of whom, Defendant Joseph Berger, is a
> nonresident of the forum state—and venue is proper because this
> court possesses personal jurisdiction over at least one co-
> conspirator based on a traditional minimum contacts analysis with
> the forum state, there is no other district in which a court would
> have personal jurisdiction over all of the alleged co-conspirators,
> and a single nationwide RICO conspiracy exists.

ECF No. 166 at PageID.4398.  Berger's declaration does not specifically challenge these
allegations, focusing instead on general and specific jurisdiction under Hawaii's long arm statute.
*See* ECF No. 128-1 at PageID.3886–3887.

alleged in the [SAC] raise an inference of an [illegal] agreement." *Gilbert*, 2014 WL 4748494, at \*4 (citing *Oki Semiconductor Co. v. Well's Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002)).

Accordingly, the court DENIES Berger's Motion to Dismiss to the extent the SAC adequately alleges personal jurisdiction under § 1965(b). This denial, however, is without prejudice to Defendants raising *Miller*, and perhaps other arguments, in an appropriate motion challenging the merits of the SAC's federal RICO allegations.[8]

Given this ruling, the court presently has personal jurisdiction as to Count XII—the federal RICO claim. Section 1965(b), however, does not apply to the state law RICO claim asserted in Count XIII, which was brought under HRS Chapter 842. *See* ECF No. 166 at PageID.4457−4460. Nevertheless, because the court has jurisdiction over Berger as to a federal claim, the court can and does accept pendent personal jurisdiction over Berger as to the state law claim. *See Action Embroidery*, 368 F.3d at 1180−81.

> Under this doctrine, a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus

---

[8] To be clear, if the SAC fails to state a RICO conspiracy claim, or lacks a viable nationwide RICO conspiracy, then the court would also lack personal jurisdiction over Berger under *Butcher's Union*. But, as indicated at the July 1, 2024 hearing, Berger intended to file a different motion challenging the RICO allegations substantively (and, in fact, all the Defendants that have been served have already done so, *see* ECF No 169). If appropriate, the court will address the merits of the RICO claims in that motion.

of operative facts with a claim in the same suit over
which the court does have personal jurisdiction.

*Id.* at 1180 (citations omitted).[9]

### III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant Joseph Berger's Renewed

Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 128, is GRANTED

in PART and DENIED in PART.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 31, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Bolos v. Waldorf Astoria Management LLC, et al.*, Civ. No. 23-00104 JMS-KJM, Order Granting
in Part and Denying in Part Defendant Joseph Berger's Renewed Motion to Dismiss For Lack of
Personal Jurisdiction, ECF No. 128

---

[9]  Accepting pendent personal jurisdiction is discretionary.  *See Action Embroidery*, 368
F.3d at 1181 ("Like our sister circuits, we hold that the actual exercise of personal pendent
jurisdiction in a particular case is within the discretion of the district court.  '[T]he district court
may have discretion to dismiss the pendent claims where considerations of judicial economy,
convenience and fairness to litigants so dictate.") (quoting *Oetiker v. Werke*, 556 F.2d 1, 5 (D.C.
Cir. 1977) (internal quotation marks omitted).  If necessary, the court may reexamine its views as
to the state law RICO claim when analyzing the federal RICO claim in a different motion.