IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURIE BOLOS, an individual, ET AL., | CIV. NO. 23-00104 JMS-KJM |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION, ECF NO. 170 |
| v. | |
| WALDORF=ASTORIA MANAGEMENT LLC OPERATING AS GRAND WAILEA RESORT, a Waldorf Astoria Resort; ET AL., | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION, ECF NO. 170

## I. INTRODUCTION

Waldorf=Astoria Management LLC, GW Manager LLC, BRE Iconic GWR Owner LLC, BRE Hotels & Resorts LLC, Joseph Berger, Bart Santiago, and John Paul Oliver ("Defendants") move under 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA") and Hawaii Revised Statutes ("HRS") § 658A-7 to compel individual arbitration for claims brought against them by 21 of the 121 Plaintiffs, each of whom executed an agreement containing an arbitration clause in

this collective and class action.[1]  Plaintiffs allege they were misclassified as

independent contractors rather than employees of the Grand Wailea, a luxury resort

on Maui ("Hotel").  *See generally* ECF No. 166.  As set forth below, Defendants'

motion is GRANTED.  Furthermore, the court STAYS proceedings brought by the

21 Arbitration Plaintiffs.

## II. <u>BACKGROUND</u>

**A.    Factual Background**

Due to the complex and protracted history of the underlying litigation,

of which the parties are aware, the court sets forth only those facts necessary to

provide general background and context to this Order.

As of 1998, Plaintiffs—consisting of estheticians, hair stylists,

massage therapists, and nail technicians ("Plaintiffs" or "Spa workers")—were

allegedly classified as Hotel employees.  ECF No. 166 at PageID.4413 (Corrected

Second Amended Class and Collective Action Complaint (or Second Amended

Complaint, "SAC") ¶ 150).  Around the same time, Defendants—individuals and

entities which purportedly own and manage the Hotel[2]—terminated the

---

[1]  Also pending—which the court addresses in a separate Order—is a motion (1) filed by Defendants Waldorf=Astoria Management LLC, GW Manager LLC, and BRE Iconic GWR Owner LLC, seeking partial dismissal, and (2) by Defendants John Paul Oliver, Joseph Berger, Bart Santiago, and Defendant BRE Hotels & Resorts LLC, seeking dismissal of all claims against them.  *See* ECF No. 169.

(continued . . . )

employment relationship with the Spa workers and rehired them as independent

contractors.  *Id*.  Accordingly, each Spa worker, at various times and in one-year or

longer intervals, executed an Independent Contractor Agreement ("ICA").[3]  *Id*.

(SAC ¶ 151).

Generally, the ICA sets the terms of employment of the Spa workers'

services as independent contractors to provide services at their own expense, to be

paid for hours worked, and without employee benefits.  *See, e.g.*, ECF No. 170-5[4]

at PageID.4773–4774.  The ICA is signed by the Spa worker (as "Contractor") and

Hotel via one of Hotel's executives.  *See, e.g.*, *id*. at PageID.4782.

The subject arbitration clause, ICA ¶ 18 (Arbitration), provides:

> The parties agree that, subject to the exclusion of
> Indemnitees' contractual rights of indemnification as set
> forth in Section 17 herein and intellectual property
> matters as set forth below, any dispute in any way arising
> out of or relating to this Agreement will be resolved by
> arbitration before JAMS/ENDISPUTE(R) or the
> American Arbitration Association in the state and city in

---

[2]  Defendants include Waldorf=Astoria Management LLC operating as Grand Wailea, A Waldorf Astoria Resort; GW Manager LLC dba Grand Wailea; BRE Iconic GWR Owner LLC; BRE Hotels & Resorts LLC; John Paul Oliver (Managing Director of GWR); Allan Federer (Former Managing Director of GWR); Joseph Berger (President and CEO of BRE Hotels); and Bart Santiago (Director of Finance at GWR).  Federer has not been served and is not a movant. *See* ECF No. 169 at PageID.4656 n.1; ECF No. 170 at PageID.4708 n.4.

[3]  Plaintiffs claim that "the majority of named Plaintiffs had executed a controlling ICA in 2020 which did not contain an arbitration provision."  ECF No. 181 at PageID.5333 n.2.  This Order addresses only the 21 Arbitration Plaintiffs because, as their name suggests, they each signed an ICA that contained an arbitration clause.

[4]  Throughout this Order the court references ECF No. 170-5 as exemplar of all 21 Arbitration Plaintiffs' ICAs.

which Hotel is located, or the closest available location;
provided, however, a dispute relating to patents,
trademarks, trade dress, copyrights, trade secrets, false
advertising, false representation, unfair competition
and/or infringement of intellectual property rights shall
not be subject to this provision.  The parties further agree
that in any arbitration proceeding they may conduct
reasonable discovery pursuant to the arbitration rules,
that the law of the State of New York will be the
governing law, and any arbitration award will be
enforceable in state or federal court.

*Id*. at PageID.4780.  In turn, ICA ¶ 17 (Indemnification) provides in part:

Contractor hereby indemnifies and holds harmless
Hotel . . . against and from any and all . . .  [Claims],
arising out of or in any way connected with this
Agreement, a violation or breach of any of the terms and
conditions of this Agreement . . . .  In the event that any
Claim is made or any action or proceeding is brought
against the Indemnitees, or any of them, arising out of or
connected with this Agreement, any such Indemnitee
may, by notice to Contractor, require Contractor, at
Contractor's expense, to resist such Claim or take over
the defense of any such action or proceeding and employ
counsel for such purpose, such counsel to be subject to
the prior approval of such Indemnitee, which approval
shall be deemed to have been given hereby in the case of
counsel acting for the insurance underwriters of
Contractor engaged in such resistance or defense.

*Id*.

ICA ¶ 7 governs termination of the ICA (among other ways, by

mutual agreement or by either party with thirty days written notice), and includes a

clause providing for fees and costs recoverable by Hotel as follows: "Hotel shall be

entitled to recover its reasonable attorney's fees, costs and disbursements in any

4

action brought to enforce or interpret this Agreement."  ICA ¶ 7(g), *id*. at

PageID.4776.

And other miscellaneous terms, such as choice of law, modifications

to the ICA, and severance of invalid terms are covered under ICA ¶ 20

(Miscellaneous), which provides in part:

> All payment received hereunder by Contractor shall be
> reported by Contractor on its federal and state tax returns
> as consideration for Contractor's services hereunder as an
> independent contractor . . . . This Agreement, and the
> legal relations between the parties, shall be governed by
> and construed in accordance with the laws of the state
> where the Hotel is located.
>
> \*        \*        \*
>
> . . . . In the event of any conflict between the terms of this
> Agreement and the terms of . . . any other documents or
> correspondence, the terms of this Agreement shall
> prevail.  This Agreement may be modified only with a
> subsequent written instrument duly executed by both of
> the parties.
>
> \*        \*        \*
>
> Neither party hereto shall be deemed to be the
> drafter of this Agreement and, if this Agreement is
> construed in any court or arbitration proceeding, said
> court or arbitrator shall not construe this Agreement or
> any provision hereof against either party as the drafter
> hereof.  If any phrase, clause or provisions of this
> Agreement is declared invalid or unenforceable by a
> court or arbitrator of competent jurisdiction, such phrase,
> clause or provision shall be deemed severed from this
> Agreement, but will not affect any other provision of this
> Agreement, which shall otherwise remain in full force

and effect.  If any restriction or limitation in this
Agreement is deemed to be unreasonable, onerous or
unduly restrictive by a court or arbitrator of competent
jurisdiction, it shall not be stricken in its entirety and held
totally void and unenforceable, but shall remain effective
to the maximum extent permissible within reasonable
bounds.  Sections 5, 7, 10, 12, 13, 14, 16, 17, 18, 19 and
20 of this Agreement and any other provisions hereof
which expressly provide that they survive expiration or
termination or which must survive expiration or
termination in order to be fully operative shall survive the
expiration or termination of this Agreement.

*Id*. at PageID.4781.

**B.    Procedural Background**

On February 23, 2023, Laurie Bolos, on behalf of similarly-situated

individuals, filed a class and collective action complaint.  The currently-operative

complaint, the SAC, seeks relief for the following:

- Count I—Willful Misclassification of Employees (HRS § 387-12)

- Count II—Failure to Pay Minimum Wage and Overtime (HRS §§ 388-2, 388-3, 388-10 and 387-12)

- Count III—Late Payment of Wages/Failure to Reimburse

- Count IV—Failure to Provide Accurate and Specific Commission Agreements (HRS § 388-7(1))

- Count V—Unlawful Withholding of Wages and Deductions (HRS § 388-6)

- Count VI—Failure to Provide and Maintain Accurate Wages Statements (HRS § 388-10)

- Count VII—Failure to Provide Temporary Disability Insurance (HRS §§ 392-41, 392-47, 392-92)

- Count VIII—Failure to Provide Employment Security Benefits (HRS §§ 383-73, 383-142)

- Count IX—Failure to Provide Group Health Insurance (HRS §§ 393-11, 393-33)

- Count X—Failure to Provide Workers' Compensation Benefits

- Count XI—Failure to Pay Overtime and Minimum Wage (Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"))

- Count XII—Violation of Civil Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq.

- Count XIII—Violation of Hawaii RICO Act (HRS ch. 842)

- Count XIV—Unjust Enrichment and Restitution *Quantum Meruit*

- Count XV—Retaliation in violation of FLSA, 29 U.S.C. § 215(a)(3) and HRS § 378-62

- Count XVI—Detrimental Reliance on a Promise.

ECF No. 166.

The SAC includes the 21 Plaintiffs who signed an ICA containing an arbitration clause.[5] *Id.*

---

[5] The Arbitration Plaintiffs are Geri Misty Boteilho-Dougherty, Marina Alexeeva, Lindsey Baldrige, Heather Causey, Angela Guerra, Stephanie Haddad, Carly Heims, Joni Henkel, Torrey Hyman, Francine Johansen, Marilyn Marano, Kazuyo Matsunouchi, Amanda Mayers, Carla Moore, Manya Reinier, Jana Richardson, Christopher Ridge, Sienna Schubert, Jay-R Tagayuna, Amber Vaughn-Bal, and Zoe Wells. They are also referred to throughout this Order as "Plaintiffs."

On July 19, 2024, Defendants filed the instant Motion to Compel. ECF No. 170.  Plaintiffs filed an opposition on August 23, 2024.  ECF No. 181. On September 6, 2024, Defendants filed a reply.  ECF No. 194.  The court held a hearing on the Motion to Compel (and pending Motion to Dismiss, ECF No. 169) on October 22, 2024.  ECF No. 213.  At the hearing, the court ordered Defendants to file supplemental briefing, which they did on October 29, 2024.  ECF No. 215.

## III.  <u>STANDARD OF REVIEW</u>

A written arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable," except "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.[6]  Any party "aggrieved by the alleged . . . refusal of another to arbitrate" may petition a district court for an order compelling arbitration in the matter provided for in the agreement.  *Id.* § 4. "The FAA 'mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

A court must first determine whether a valid agreement to arbitrate exists.  *Norcia v. Samsung Telecommuns., LLC*, 845 F.3d 1279, 1283 (9th Cir.

---

[6] Here, the parties agree that the FAA applies to the arbitration agreements at issue.  *See* ECF No. 170 at PageID.4711 (Defendants' memorandum in support) and ECF No. 181 at PageID.5343 (Plaintiffs' memorandum in opposition).

2017).  The party seeking to compel arbitration bears the burden to prove the

existence of such a valid agreement by a preponderance of the evidence.  *Id*.[7]  And

to determine whether a valid agreement to arbitrate exists, courts apply "ordinary

state-law principles that govern the formation of contracts."  *Id*. (quoting *First*

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Generally, "in deciding whether to compel arbitration, a court must

determine two 'gateway' issues: (1) whether there is an agreement to arbitrate

between the parties; and (2) whether the agreement covers the dispute."  *Brennan*

*v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter*

*Reynolds, Inc*., 537 U.S. 79, 84 (2002)).

"Even though arbitration has a favored place, there still must be an

underlying agreement between the parties to arbitrate.  Without an agreement to

arbitrate, a court may not force parties to engage in arbitration."  *Siopes v. Kaiser*

*Found. Health Plan, Inc.*, 130 Haw. 437, 446, 312 P.3d 869, 878 (2013), *as*

*corrected* (Sept. 26, 2013) (quoting *Luke v. Gentry Realty, Ltd.*, 105 Haw. 241,

247, 96 P.3d 261, 267 (2004) (internal quotation marks omitted)).  And "[a]lthough

---

[7]  If there are genuine issues of fact as to whether the parties formed an arbitration agreement (applying the Federal Rule of Civil Procedure 56 standards), a court must proceed to trial on the issue of arbitrability.  *See Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 831 (9th Cir. 2022).  Here, neither party suggests that there is a genuine issue of material fact as to arbitrability, and the court finds none.

their terms are not identical, both the FAA and HRS ch. [658A[8]] interpose a

written and otherwise valid contract to arbitrate as a precondition to enforcement."

*Id*. at 446–47, 312 P.3d at 878–79 (quoting *Brown v. KFC Nat'l Mgmt. Co.*, 82

Haw. 226, 238, 921 P.2d 146, 158 (1996) (brackets in *Siopes*) (footnotes omitted).

*See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)

(noting the FAA "embodies the national policy favoring arbitration and places

arbitration agreements on equal footing with all other contracts.").

       The savings clause of 9 U.S.C. § 2 "permits agreements to arbitrate to

be invalidated by generally applicable contract defenses, such as fraud, duress, or

unconscionability, but not by defenses that apply only to arbitration or that derive

their meaning from the fact that an agreement to arbitrate is at issue." *Lim v.*

*TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Poublon v. C.H.*

*Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017)). "[T]he party opposing

arbitration bears the burden of proving any defense, such as unconscionability."

*Id.* (quoting *Poublon*, 846 F.3d at 1260); *see also Lowden v. T-Mobile USA, Inc.*,

512 F.3d 1213, 1217 (9th Cir. 2008) ("[Determining] whether . . . a valid

agreement to arbitrate exists . . . requires [a court] to consider what is

---

    [8] Hawaii's Revised Uniform Arbitration Act, adopted in 2001, is codified in HRS chapter 658A. It governs arbitration agreements "made on or after July 1, 2002, unless parties otherwise agree, but after June 30, 2004, this chapter governs an agreement to arbitrate whenever made.'" *Siopes*, 130 Haw. at 447 n.15, 312 P.3d at 879 n.15 (quoting HRS § 658A-3 (Supp. 2012) (brackets and internal quotation marks omitted)). All Arbitration Plaintiffs executed ICAs after June 30, 2004; thus, HRS chapter 658A would apply.

unconscionable and unenforceable under . . . state law.").  The savings clause "establishes an equal-treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

## IV.  <u>DISCUSSION</u>

The court first addresses whether the arbitration clause is valid and enforceable, then examines Plaintiffs' defenses to enforceability and whether provisions of the ICA warrant severing.  The court then addresses whether class or individual arbitration is appropriate under the arbitration clause and how to treat those ICAs executed by an entity not a party to this action.

## A.  **The Arbitration Clause Is Valid Under Hawaii Law**

Under Hawaii law, establishing the existence of a valid and enforceable arbitration agreement requires three elements: "(1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to arbitration; and (3) there must be bilateral consideration." *Douglass v. Pflueger Haw., Inc*., 110 Haw. 520, 531, 135 P.3d 129, 140 (2006). "With respect to the second requirement, 'there must be a mutual assent or a

meeting of the minds on all essential elements or terms to create a binding

contract.'" *Siopes*, 130 Haw. at 447, 312 P.3d at 879 (emphasis omitted) (quoting

*Douglass*, 110 Haw. at 531, 135 P.3d at 140).  "The existence of mutual assent or

intent to accept is determined by an objective standard . . . ."  *Id.*

  An arbitration agreement is supported by bilateral consideration when

both parties agree to arbitrate and forfeit their rights to litigate disputes in court.

*See Brown*, 82 Haw. at 239–40, 921 P.2d at 159–60; *Douglass*, 110 Haw. at 534–

35, 135 P.3d at 143–44; *Loftus v. H&R Block*, 2021 WL 4437491, at *2 (D. Haw.

Sept. 27, 2021) ("Under the third element, bilateral consideration exists where

there is mutual assent to arbitrate . . . .").[9]

  Here, all three elements are present.  First, each ICA containing the

arbitration clause is in writing and signed by the Arbitration Plaintiff and a Hotel

representative.  *E.g.*, ECF No. 170-5 at PageID.4782.  Second, the ICA evinces "a

mutual assent or a meeting of the minds on all essential elements or terms to create

a binding contract."  *Douglass*, 110 Haw. at 531, 135 P.3d at 140.  In other words,

the intent and agreement to submit disputes or controversies to arbitration is clear.

The arbitration clause indicates the parties' agreement that "any dispute in any way

arising out of or relating to this Agreement *will be resolved by arbitration*."  *E.g.*,

---

 [9] As stated in *Balogh v. Balogh*, 134 Haw. 29, 57, 332 P.3d 631, 659 (2014) (quoting *Shannon v. Waterhouse*, 58 Haw. 4. 7, 563 P.2d 391, 393 (1977)), "[f]orebearance to exercise a right is good consideration for a promise."

ECF No. 170-5 at PageID.4780 (ICA ¶ 18 (Arbitration)) (emphasis added); *Doyle v. Hawaiian Cement*, 2008 WL 2230734, at *5 (D. Haw. May 29, 2008) (finding language using contractual terms such as "any controversy," "shall be subject to," and "final and binding arbitration" unambiguously expresses an intent of the parties to submit all employment-related disputes to arbitration).

Plaintiffs argue that ICA ¶ 20 (Miscellaneous) ("This Agreement, and the legal relations between the parties . . .") and ICA ¶ 4 (No Employee Benefits) ("Even if Contractor . . . [is] determined or adjudged to be a common or statutory law employee . . . .") create ambiguities susceptible to more than one meaning: that disputes arising out of the ICA could potentially be resolved by litigation rather than arbitration. This ambiguity, according to Plaintiffs, renders the arbitration provision lacking in mutual assent and is, consequently, unenforceable. But the court finds no such ambiguity—the arbitration agreement "is manifestly unambiguous in its expressed intent that . . . disputes be arbitrated rather than resolved via resort to the federal or state court systems." *Brown*, 82 Haw. at 239, 921 P.2d at 159; *see also Siopes*, 130 Haw. at 447, 312 P.3d at 879 ("The existence of mutual assent or intent to accept is determined by an objective standard.") (quoting *Douglass*, 110 Haw. at 531, 135 P.3d at 140). Accordingly, the court disagrees with Plaintiffs that the phrase, "[t]he parties agree that . . . any dispute in any way arising out of or relating to this Agreement will be resolved by

arbitration," could be accorded any other interpretation. *E.g.*, ECF No. 170-5 at

PageID.4780; *see United Public Workers, AFSCME, Local 646, AFL-CIO v.*

*Dawson Int'l, Inc.*, 113 Haw. 127, 140, 149 P.3d 495, 508 (2006) ("[C]ontractual

terms should be interpreted according to their plain, ordinary meaning and

accepted use in common speech.") (quoting *State Farm Fire & Cas. Co. v. Pac.*

*Rent-All, Inc.*, 90 Haw. 315, 324, 978 P.2d 753, 762 (1999)).

       Finally, bilateral consideration exists.  That is, because *both* parties

agreed to submit to binding arbitration and forego their respective rights to a

judicial forum, the agreement is supported by bilateral consideration.[10]  See *Loftus*,

2021 WL 4437491, at *2 ("Under the third element, bilateral consideration exists

where there is mutual assent to arbitrate . . . .").[11]

---

[10] Citing *Khosravi-Babadi v. Hawaiian Telcom, Inc.*, 2018 WL 6729631 (D. Haw. Dec. 21, 2018), Plaintiffs claim that "Hawaii courts have held that at-will employment is insufficient consideration to support an arbitration agreement and continued employment can represent sufficient consideration where some other benefit is conferred upon the employee."  ECF No. 181 at PageID.5348.  But *Khosravi-Babadi* involved a unilateral agreement to arbitrate, not a bilateral one.  *See Khosravi-Babadi*, 2018 WL 6729631, at *7 ("[T]he plain meaning of the Arbitration Agreement is that Plaintiff—but not Defendant—agreed that Plaintiff would submit all of his claims 'arising out of or related to [his] employment' to 'final and binding arbitration.'").  And because there was no mutual agreement to arbitrate, the court examined the larger context (at-will employment) in which the arbitration agreement arose.  Here, unlike *Khosravi-Babadi*, *both* Hotel and the Spa workers agreed to give up their rights to litigate most disputes in court.

[11] Because the agreement to arbitrate contains sufficient bilateral consideration, Plaintiffs' argument—made for the first time during oral argument—that other provisions of the ICA, such as ¶ 17 (Indemnification), lack mutuality is properly reviewed as part of Plaintiffs' unconscionability argument.  That is, for purposes of consideration, "so long as the requirement of a bargained-for benefit or detriment is satisfied, the fact that the relative value or worth of the exchange is unequal is irrelevant . . . ."  3 Samuel Williston & Richard A. Lord, *A Treatise on the*
(continued . . . )

**B.     The Arbitration Clause Encompasses the Disputed Issue**

In determining whether an arbitration agreement encompasses the dispute at issue, courts must first examine the content of the arbitration clause and then review the nature of the dispute. *See Jackson v. Amazon.com, Inc*., 65 F.4th 1093, 1101 (9th Cir. 2023).

"[W]hen examining the scope of an arbitration agreement, '[a]s with any other contract dispute, [courts] first look to the express terms [of the parties' agreement].'" *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 796 (9th Cir. 2017) (quoting *Chiron Corp v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (some brackets added)). Here, the arbitration clause states that "any dispute in any way *arising out of or relating to* this Agreement will be resolved by arbitration . . . ." *E.g.*, ECF No. 170-5 at PageID.4780 (ICA ¶ 18 (Arbitration)) (emphasis added). The phrase "arising out of or relating to" is interpreted broadly.[12] *See, e.g., Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (concluding that when parties intend

---

*Law of Contracts* § 7:21 (4th ed. 2008); *see also* Restatement (Second) of Contracts § 79, comment c) (Am. L. Inst. 1981) ("Ordinarily . . . courts do not inquire into the adequacy of consideration . . . . Gross inadequacy of consideration may be relevant to issues of capacity, fraud and the like, but the requirement of consideration is not a safeguard against imprudent and improvident contracts except in cases where it appears that there is no bargain in fact.").

[12] Conversely, the sole phrase "arising under" in an arbitration agreement is interpreted narrowly. That is, the scope of arbitration of disputes "arising under" a contract is limited to the "interpretation and performance of the contract itself." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (quoting *Mediterranean Enters., Inc. v. Ssangyong Construction Co*., 708 F.2d 1458, 1464 (9th Cir. 1983)).

to include a broad arbitration provision, they provide for arbitration "arising out of or relating to" the agreement).  Even so, under such broad arbitration clauses, factual allegations must at least "'touch matters' covered by the contract containing the arbitration clause." *Jackson*, 65 F.4th at 1101 (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)); *see also WDCD, LLC v. iStar, Inc.*, 2017 WL 5505395, at *4 (D. Haw. Nov. 16, 2017) ("In [the Ninth] Circuit, where 'arising out of or relating to' language is present in an arbitration, a claim 'need only touch matters covered by the contract, in order for the court to resolve all doubts in favor of arbitration.'") (quoting *Simula*, 175 F.3d at 721).  In other words, the phrase "arising out of," "arising under," and/or "relating to" "means the arbitration agreement is not limited to disputes relating to the interpretation and performance of the contract itself." *Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 4108191, at *3 (N.D. Cal. June 20, 2023) (citing *Cape Flattery*, 647 F.3d at 921).

The nature of the dispute here falls squarely within the scope of the arbitration clause.  At its core, this matter arises out of the alleged misclassification of employees as independent contractors.  Plaintiffs assert that under this arrangement, the Spa workers have purportedly failed to receive certain benefits to which they would be entitled as employees, such as overtime pay, workers' compensation insurance, short-term disability insurance, retirement and social security benefits, unemployment insurance, health insurance, and employment

benefits that Defendants provide their employees.  The nature of these

allegations—that is, disputes covering contractor's services, employment or

termination, and relationship with the employer (Plaintiffs' description of the

dispute, ECF No. 181 at PageID.5366)—arise out of or are related to the ICA.  *See,*

*e.g., Khalatian v. Prime Time Shuttle, Inc*., 237 Cal. App. 4th 651, 659–60, 188

Cal. Rptr. 3d 113, 118–19 (2015) (holding that claims of drivers misclassified as

independent contractors were "arising out of or relating to" his contract and

reversing trial court's order denying petition to compel arbitration); *see also*

*Gabriel v. Island Pac. Acad., Inc*., 140 Haw. 325, 335, 400 P.3d 526, 536 (2017)

("At the federal and state level, there exists a strong policy in favor of arbitration,

such that any doubt concerning whether a dispute is covered by an arbitration

agreement should be resolved in favor of arbitrability.").  The arbitration clause

encompasses the disputes at issue.

**C.    The Arbitration Provision Is Not Unconscionable and Is Enforceable**

Under Hawaii law, "[t]he party seeking to compel arbitration carries

the initial burden of establishing that an arbitration agreement exists," and if met,

the burden then "shifts to the opposing party to present evidence on its defenses to

the arbitration agreement."  *Siopes*, 130 Haw. at 446, 312 P.3d at 878 (citations

omitted); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)

("[T]he party resisting arbitration bears the burden of proving that the claims at

issue are unsuitable for arbitration.").

    Hawaii law recognizes unconscionability as a defense to enforcement

of an arbitration agreement.  *See, e.g.*, *Gabriel*, 140 Haw. at 336–37, 400 P.3d at

537–38; *Siopes*, 130 Haw. at 459, 312 P. 3d at 891.  As a defense,

unconscionability

> has generally been recognized to include an absence of
> meaningful choice on the part of one of the parties
> together with contract terms which are unreasonably
> favorable to the other party.  Whether a meaningful
> choice is present in a particular case can only be
> determined by consideration of all the circumstances
> surrounding the transaction.

*Narayan v. The Ritz-Carlton Dev. Co., Inc.*, 140 Haw. 343, 350, 400 P.3d 544, 551

(2017).  "Unconscionability encompasses two principles: one-sidedness

(substantive unconscionability) and unfair surprise (procedural

unconscionability)."  *Gabriel*, 140 Haw. at 337, 400 P.3d at 538 (citing *Balogh v.*

*Balogh*, 134 Haw. 29, 41, 332 P.3d 631, 643 (2014)).  "Generally, both procedural

and substantive unconscionability must be present in order to make a contract

unconscionable; however, Hawaiʻi courts 'have recognized that, under certain

circumstances, an impermissibly one-sided agreement may be unconscionable even

if there is no unfair surprise.'"  *Narayan*, 140 Haw. at 350 n.5, 400 P.3d at 551 n.5

(quoting *Balogh*, 134 Haw. at 41, 332 P.3d at 643).

18

"Substantive unconscionability . . . focuses on the content of the
agreement and whether the terms are one-sided, oppressive, or 'unjustly
disproportionate.'"  *Id.* at 351, 400 P.3d at 552 (quoting *Balogh*, 134 Haw. at 41,
332 P.3d at 643).  That is, a contract is substantively unconscionable where it "is
the result of coercive bargaining between parties of unequal bargaining strength"
and "unfairly limits the obligations and liabilities of, or otherwise unfairly
advantages, the stronger party."  *Brown*, 82 Haw. at 247, 921 P.2d at 167.

Plaintiffs argue that the ICA and arbitration clause are unenforceable
as containing (1) an unconscionable waiver of right to jury trial,
(2) unconscionable judicial carveouts for Defendants, (3) an unconscionable
choice-of-law provision, and (4) unconscionable cost-sharing or fee-shifting.  The
court addresses these in turn.

### 1.    *Waiver of Right to Jury Trial*

Courts have "flatly rejected the claim that an arbitration agreement
must contain a provision expressly waiving the employee's right to a jury trial."
*Cooper v. MRM Inv. Co.*, 367 F.3d 493, 506 (6th Cir. 2004) (citing *Burden v.
Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001) ("As to the failure
of the arbitration clause to include a jury waiver provision, 'the loss of the right to
a jury trial is a necessary and fairly obvious consequence of an agreement to
arbitrate.'") (quoting *Sydnor v. Conseco Fin. Serv. Corp.*, 252 F.3d 302, 307 (4th

Cir. 2001))).  Furthermore, the Seventh Amendment does not confer the right to a jury trial per se, "but rather 'only the right to have a jury hear the case once it is determined that the litigation should proceed before a court.  If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes.'"  *Id*. (quoting *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 834 (S.D. Miss. 2001), *aff'd*, 34 F. App'x 964 (5th Cir. 2002)).

And under Hawaii law, "[t]he essential characteristic of binding arbitration is a waiver of a trial de *novo*."  *McAndrew v. Ass'n of Apartment Owners of Kuapa Isle*, 145 Haw. 139, 140, 446 P.3d 1056, 1057 (Ct. App. 2019) (unpub.) (citing *Kindred Nursing Ctrs., Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1427 (2017) ("[T]he primary characteristic of an arbitration agreement [is] a waiver of the right to go to court and receive a jury trial.")).  There is no substantive unconscionability in the waiver of a jury trial.

## 2. *Judicial Carveouts*

Plaintiffs argue that the ICA and the arbitration clause contain judicial carveouts for claims that would only be brought by Defendants, including intellectual property claims and claims for injunctive relief.  ECF No. 181 at PageID.5360–5365.  The court addresses each purported carveout in turn.

> a.    *Temporary and permanent injunctive relief*

Plaintiffs argue that ICA ¶ 16 (Remedies) provides an unconscionable, one-sided carveout for Defendants:

> Contractor acknowledges and agrees that *Hotel's* remedy at law for breach of *Contractor's* obligations hereunder would be inadequate and agrees and consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provisions of this Agreement without the necessity of proof of actual damage.

*E.g.*, ECF No. 170-5 at PageID.4780 (emphases added).  Although the exact scope of the provision is unclear, the court reads the provision as permitting Hotel to seek injunctive relief in arbitration, or in court for certain intellectual property carveouts, without having to prove actual damages.  But regardless of its scope, it is one-sided—only Hotel can seek injunctive relief without having to prove actual damages.  Defendants have not provided any business justification for this remedies provision and appear to suggest that its severance is appropriate.  *See* ECF No. 194 at PageID.5749; *see also Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1098 (9th Cir. 2024) (finding no business justification for carveout favoring defendant's ability to seek preliminary injunctive relief and concluding that it is substantively unconscionable); *cf. Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031 (9th Cir. 2016) (finding that a provision that "compelled arbitration of all employment-related claims, while permitting *both* parties to seek injunctive relief"

in a preliminary court proceeding was not unreasonably unconscionable even if the

employer was "practically speaking" more likely to seek the remedy of preliminary

injunctive relief) (emphasis added) (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal.

4th 1237, 1248 & n.4, 200 Cal. Rptr. 3d 7, 367 P.3d 6 (2016)).  The court thus

finds this provision is one-sided in favor of Defendants.

### b.    Intellectual property rights

Plaintiffs next argue that the arbitration clause's exemption for

infringement of intellectual property matters permits Defendants access to the

court while limiting Plaintiffs to a non-binding arbitral forum.  ECF No. 181 at

PageID.5361 & n.12.  But Plaintiffs fail to explain how or why such claims "would

only be brought by Defendants."  *Id*. at PageID.5361.  To reiterate, the intellectual

property exemption provides:

> The parties agree that, subject to the exclusion of . . .
> intellectual property matters as set forth below, any
> dispute in any way arising out of or relating to this
> Agreement will be resolved by arbitration before
> JAMS/ENDISPUTE(R) or the American Arbitration
> Association . . . ; provided, however, a dispute relating to
> patents, trademarks, trade dress, copyrights, trade secrets,
> false advertising, . . . and/or infringement of intellectual
> property rights shall not be subject to this provision.

*E.g.*, ECF No. 170-5 at PageID.4780.  This provision clearly allows either party

("*[t]he parties agree*") to seek the relief outside of arbitration.  In other words, it is

bilateral, not one-sided.  Other courts have found that an arbitration clause's

bilateral exemption of intellectual property claims does not make the provision

overly harsh or one-sided.  *See Tompkins*, 840 F.3d at 1031 (finding, under

California law, that bilateral intellectual property carveout was not

unconscionable); *Wisely v. Amazon.com, Inc.*, 709 F. App'x 862, 865 (9th Cir.

2017) (justifying fact that defendant is more likely to bring intellectual property

claims than its consumers because California law grants defendant "an extra

margin of safety based on legitimate business needs") (quoting *Tompkins*, 840 F.3d

at 1031) (internal quotation marks omitted).  Plaintiffs have failed to meet their

burden to show that the intellectual property carveout is substantively

unconscionable.

    c. *Rights of contractual indemnification*

   The arbitration clause has an explicit carveout for the indemnification

provision in paragraph 17.[13]  For the first time at the hearing, Plaintiffs claimed

that this indemnification provision is evidence of a lack of mutuality.  Because this

argument was raised for the first time during oral argument, it has been waived.[14]

---

[13]  The arbitration provision, ICA ¶ 18, states in part that "[t]he parties agree that, subject to the exclusion of Indemnitees' contractual rights of indemnification as set forth in Paragraph 17 herein . . . any dispute in any way arising out of or relating to this Agreement will be resolved by arbitration. . . ."

[14]  Plaintiffs also raised at the hearing the purportedly one-sided attorneys' fees provision in ICA ¶ 7(g) ("Hotel shall be entitled to recover its reasonable attorney's fees, costs and disbursements in any action brought to enforce or interpret this Agreement.").  ECF No. 214 at PageID.5954; ECF No. 170-5 at PageID.4776.  This claim, too, has been waived.  But even on
(continued . . . )

*See Carvalho v. Equifax Info Servs*., LLC, 629 F.3d 876, 888 (9th Cir. 2010) ("A plaintiff who makes a claim in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss has effectively abandoned his claim, and cannot raise it on appeal.") (citation and alterations omitted); *United States ex rel. Anita Silingo v. WellPoint, Inc*., 904 F.3d 667, 681 (9th Cir. 2018) (same) (citing *Carvalho*, 629 F.3d at 888); *Donna S. v. Hawaii*, 2012 WL 4017449, at *10 (D. Haw. Sept. 12, 2012) ("The court will not address arguments raised for the first time in a Reply, much less at a hearing."); *Banta v. Hayashi*, 2024 WL 1882784, at*13 (D. Haw. Apr. 30, 2024) ("In general, any argument raised for the first time at a hearing is waived.") (citing *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1075 n.4 (9th Cir. 2016)).  Regardless, the claim fails on the merits.

"Interpretation of the parties' intent begins with the language the parties use."  *Walgreen of Haw., LLC v. Lin's Props., LLC*, 2024 WL 4472038, at *5 (D. Haw. Feb. 9, 2024) (quoting *Kutkowski v. Princeville Prince Golf Course, LLC*, 129 Haw. 350, 357, 300 P.3d 1009, 1016 (2013)).  Although the

---

the merits, Plaintiffs' argument fails.  Contrary to Plaintiffs' argument, ¶ 7(g) pertains to termination of the ICA (as set forth in ¶ 7(a)–(f)) and not to enforcement of the arbitration provision.  *See Krause v. Expedia Grp., Inc.*, 2019 WL 4447317, at *4 (W.D. Wash. Sept. 17, 2019) ("A plaintiff seeking to invalidate an arbitration clause must be attacking the validity of the arbitration clause itself, separate and apart from the rest of the agreement.").  Thus, the court does not construe this provision as substantively unconscionable under these circumstances.  *See Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 630 (N.D. Cal. 2019) (declining to find fee-shifting provision unconscionable because it did not apply to plaintiff's claims arising under the Labor Code).  Finally, even if this provision could be viewed as broadly as Plaintiffs claim, severance would be appropriate.

24

indemnification provision, ICA ¶ 17, is quite wordy,[15] its intent is clear enough—

the requirement that "Contractor hereby indemnifies and holds harmless Hotel" for

---

[15]  ICA ¶ 17 (Indemnification) provides in full:

> Contractor hereby indemnifies and holds harmless Hotel, its
> Owner, HWI and each of their owners, partners, subsidiaries,
> affiliates, franchisees, and each of such persons' or entities'
> officers, directors, agents, contractors, subcontractors, suppliers,
> customers, guests, residents, visitors, licensees, invitees, permitees
> and employees (collectively referred to as the "Indemnitees"), and
> each of them, against and from any and all allegations, demands,
> claims, liabilities, damages, fines, penalties or costs of whatsoever
> nature (including reasonable attorney's fees), and whether by
> reason of death of or injury to any person or loss of or damage to
> any property or otherwise ("Claims"), arising out of or in any way
> connected with this Agreement, a violation or breach of any of the
> terms and conditions of this Agreement, including the obligation of
> compliance with applicable law, regulation, the Privacy Policy and
> any other privacy or other policy of Hotel or HWI applicable to its
> business with respect to any of the foregoing persons, firms or
> enterprises, the Services provided by Contractor or any
> subcontractors of Contractor hereunder or any related act or failure
> to act by Contractor or Contractor Parties, and whether or not
> occurring during the term hereof or occasioned or contributed to by
> the negligence of Hotel or any agent or employee of the
> Indemnitees, or any of them (except as and to the extent otherwise
> prohibited by applicable law), including without limitation any
> Claims related to violation of any privacy or data protection law,
> regulation or requirements, infringement by Contract or Parties of
> the rights of any person, including without limitation, copyright,
> patent, trade secret, trade mark, artist rights, droit moral, privacy,
> publicity or other intellectual property laws.  In the event that any
> Claim is made or any action or proceeding is brought against the
> Indemnitees, or any of them, arising out of or connected with this
> Agreement, any such Indemnitee may, by notice to Contractor,
> require Contractor, at Contractor's expense, to resist such Claim or
> take over the defense of any such action or proceeding and employ
> counsel for such purpose, such counsel to be subject to the prior
> approval of such Indemnitee, which approval shall be deemed to
> have been given hereby in the case of counsel acting for the
> insurance underwriters of Contractor engaged in such resistance or
> defense.

(continued . . . )

a variety of claims signifies the parties' intent to adopt a fairly standard indemnity

clause.  And an indemnity clause, which would apply to third-party claims, is not

an unconscionable judicial carveout.  In fact, "[i]t makes sense that indemnification

claims are not required to be arbitrated because they invariably arise out of third-

party claims which are often already in litigation . . . ." *Ticknor v. Choice Hotels,*

*Int'l, Inc.*, 265 F.3d 931, 943 n.6 (9th Cir. 2001) (Tashima, J., dissenting);

*Rodriguez v. JPay, Inc*., 2019 WL 11623936, at *5 (S.D. Fla. Oct. 17, 2019)

(rejecting plaintiffs' interpretation of the indemnity clause and claim of substantive

unconscionability because it requires indemnification against third-party claims

that arise as a result of Plaintiffs' use of defendant's services and breach of the

agreement), *report and recommendation adopted*, 2019 WL 11623933 (S.D. Fla.

Oct. 31, 2019); *Baugh v. A.H.D. Houston, Inc*., 2020 WL 2771251, at *6 (S.D.

Tex. May 28, 2020) (declining to apply indemnity provision between the parties in

---

> If for any reason the foregoing indemnifications are unavailable to
> the Indemnitee or insufficient to hold any of them harmless, then
> Contractor shall reimburse the Indemnitees for all amounts paid or
> payable by the Indemnitees as a result of such Claims, which shall
> include, for example, the costs of defending against any Claims
> because of Contractor's failure to provide the defense specified
> above.  The reimbursement, indemnity and contribution
> obligations of Contractor under this Section shall be in addition to
> any liability that Contractor may otherwise have, and shall extend
> upon the same terms and conditions to the Indemnitees.

*E.g.,* ECF No. 170-5 at PageID.4778.

the absence of language showing intent for it to apply to claims between the parties and finding no unconscionability).[16]

### 3. Choice-of-Law Provision

Although the arbitration provision, ICA ¶ 18, states that "the law of the state of New York will be the governing law," the ICA also states in ¶ 20 (Miscellaneous) that the ICA "shall be governed by and construed in accordance with the laws of the state where the Hotel is located." Plaintiffs argue that applying New York law to Spa workers with no connection to New York is unconscionable. ECF No. 181 at PageID.5362. Even if true, as set forth below, the court severs this provision and applies Hawaii law to the dispute.

### 4. Cost-Sharing or Fee-Splitting

In the absence of specific cost-sharing or fee-splitting language in the ICA or the arbitration clause, Plaintiffs argue that the "default allocation" would be "an equal share of the arbitration costs." ECF No. 181 at PageID.5365. Such allocation, Plaintiffs argue, renders the arbitration clause unenforceable because it would require them to shoulder "prohibitive costs far exceeding the costs they would bear in federal court." *Id.* But "whether cost-splitting in arbitration is unconscionable depends on the facts of each case." *Gabriel*, 140 Haw. at 337, 400

---

[16] To the extent Plaintiffs claim that the indemnification clause evidences a lack of bilateral consideration, the court rejects this argument for the same reasons as set forth above.

P.3d at 538 (declining to adopt a holding that a cost-splitting requirement in arbitration is per se unconscionable and, therefore, unenforceable); *McAllister v. Hertz Global Holdings Inc.*, 2018 WL 11536392, at *5 (D. Haw. Feb. 22, 2018) (same). In *Gabriel*, the parties provided arbitration cost estimates and the plaintiff furnished a declaration of her annual salary demonstrating the unconscionability of requiring her to pay up-front one-quarter to one-third of her former annual salary to access the arbitral process. 140 Haw. at 331, 337–38, 400 P.3d at 532, 538–39

Here, unlike in *Gabriel*, Plaintiffs have failed to provide *any* facts, much less evidence, to substantiate their claims of prohibitive arbitration costs, including potential hardship to any of the individual Spa workers. *See Green Tree*, 531 U.S. at 92 (holding that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs"). Absent any evidence, a mere allegation that cost-sharing would be prohibitively expensive is insufficient for Plaintiffs to satisfy their burden under *Gabriel*.[17]

---

[17]  To be clear, the court is only finding that Plaintiffs failed to present evidence, by way of declarations or otherwise, to meet their burden under *Gabriel*. If such evidence was available, Plaintiffs' counsel failed to present it to the court.

**5.** *Severability*

Defendants state that, should the court find that carveouts or other

provisions are unconscionable, the court should sever them as unenforceable.  ECF

No. 170 at PageID.4717–4718; ECF No. 194 at PageID.5749.  "[T]he general rule

is that severance of an illegal provision of a contract is warranted and the lawful

portion of the agreement is enforceable when the illegal provision is not central to

the parties' agreement." *Narayan*, 140 Haw. at 355, 400 P.3d at 556 (quoting

*Beneficial Haw., Inc. v. Kida*, 96 Haw. 289, 311, 30 P.3d 895, 917 (2001)).

Likewise,

> [i]f a contract or term thereof is unconscionable at the
> time the contract is made a court may refuse to enforce
> the contract, or may enforce the remainder of the contract
> without the unconscionable term, or may so limit the
> application of any unconscionable term as to avoid any
> unconscionable result.

*Gabriel*, 140 Haw. at 341, 400 P.3d at 542 (quoting Restatement (Second) of

Contracts § 208 (1981)).  Comment g to the Restatement elaborates, "[w]here a

term rather than the whole contract is unconscionable, the appropriate remedy is

ordinarily to deny effect to the unconscionable term." *Id*. (internal quotation marks

omitted).

However, where unconscionability so pervades the agreement, the

court may refuse to enforce the agreement as a whole.  *Narayan*, 140 Haw. at 355–

56, 400 P.3d at 556–57 (footnote omitted) (citing *Gandee v. LDL Freedom Enters.,*

*Inc.*, 293 P.3d 1197, 1199–1200 (Wash. 2013) ("Severance is the usual remedy for substantively unconscionable terms, but where such terms 'pervade' an arbitration agreement, we 'refuse to sever those provisions and declare the entire agreement void.'" (quoting *Adler v. Fred Lind Manor*, 103 P.3d 773, 788 (Wash. 2004))); *Cordova v. World Fin. Corp.*, 208 P.3d 901, 911 (N.M. 2009) ("[W]e must strike down the arbitration clause in its entirety to avoid a type of judicial surgery that inevitably would remove provisions that were central to the original mechanisms for resolving disputes between the parties.").

> ICA ¶ 20 (Miscellaneous) contains a severability provision:
>
> If any phrase, clause or provisions of this Agreement is declared invalid or unenforceable by a court or arbitrator of competent jurisdiction, such phrase, clause or provision shall be deemed severed from this Agreement, but will not affect any other provision of this Agreement, which shall otherwise remain in full force and effect.

*E.g.*, ECF No. 170-5 at PageID.4781. Here, the court finds (1) the unconscionable remedies provision at ICA ¶ 16 (Remedies), which confines the ability to seek temporary or injunctive relief only to Defendants, and (2) the reference to New York law in the arbitration clause are severable as "not central to the parties' agreement," *Narayan*, 140 Haw. at 355, 400 P.3d at 556, and under the severability provision of the ICA.[18]

---

[18] Further, as stated above, if the attorney fee provision in ¶ 7(g) is as broad as Plaintiffs claim, it too is not central to the parties' agreement and is severable.

In sum, Plaintiffs have not met their burden to show that the jury trial waiver, judicial carveouts for intellectual property rights and contractual indemnification, and cost-sharing or fee-shifting terms are substantively unconscionable. The carveout for temporary and permanent injunctive relief at ICA ¶ 16 (Remedies) and the reference to New York law in ICA ¶ 18 (Arbitration) are severable from the ICA.

Although there is certainly some level of procedural unconscionability (e.g., the ICAs were contracts of adhesion and apparently presented on a "take it or leave it" basis), the court need not examine the full scope of procedural unconscionability. Finding no substantive unconscionability, Plaintiffs have failed to meet their burden to show that the arbitration provision of the ICA is invalid as unconscionable. *Narayan*, 140 Haw. at 350 n.5 ("Generally, both procedural and substantive unconscionability must be present in order to make a contract unconscionable; however, Hawai'i courts 'have recognized that, under certain circumstances, an impermissibly one-sided agreement may be unconscionable even if there is no unfair surprise.'") (quoting *Balogh*, 134 Haw. at 41, 332 P.3d at 643).

## D.    Class Arbitration Versus Individual Arbitration

Plaintiffs claim that the ICA provides for classwide arbitration. ECF No. 181 at PageID.5369–5371. Defendants argue the opposite—each Spa worker

must arbitrate on an individual basis.  ECF No. 170 at PageID.4722–4723.  The

court agrees with Defendants.

       "Courts may not infer from an ambiguous agreement that parties have

consented to arbitrate on a classwide basis.  The doctrine of *contra proferentem*

cannot substitute for the requisite affirmative 'contractual basis for concluding that

the part[ies] *agreed* to [class arbitration].'"[19]  *Lamps Plus, Inc. v. Varela*, 587 U.S.

176, 189 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S.

662, 684 (2010) (holding that courts may not infer consent to participate in class

arbitration absent an affirmative "contractual basis for concluding that the party

*agreed* to do so.")).

       Here, the ICA has no explicit provision that would permit classwide

arbitration.  Instead, Plaintiffs claim that the language in ICA ¶ 4 (No Employee

Benefits), "adjudged to be a common or statutory employee," and ICA ¶ 20

(Miscellaneous), "the legal relations between the parties, shall be governed by and

construed in accordance with the laws of the state where the Hotel is located,"

coupled with the arbitration clause as suggesting consent to, or the potential for,

classwide arbitration.  ECF No. 181 at PageID.5370.  But *Lamps Plus* forecloses

this argument—agreeing with Plaintiffs would require the court to "infer from an

---

[19]  The *contra proferentem* doctrine requires an ambiguity in a contract to be construed against the drafter.  *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 186 (2019).

ambiguous agreement that the parties have consented to arbitrate on a classwide

basis." *Lamps Plus*, 587 U.S. at 189.  This the court cannot do.

## E.    The Arbitration Clause Is Enforceable as to Nonsignatories

Plaintiffs argue that Defendants cannot enforce the arbitration clause

as to ten of the 21 Arbitration Plaintiffs because ten of the ICAs were signed by

"an entity that is not a party to this action and did not own or manage the Hotel

during the relevant statute of limitations time period."  ECF No. 181 at

PageID.5343.  Defendants disagree, relying on the doctrine of equitable estoppel.

Again, the court agrees with Defendants.

"The United States Supreme Court has held that a litigant who is not a

party to an arbitration agreement may invoke arbitration under the FAA if the

relevant state contract law allows the litigant to enforce the agreement."  *Kramer v.*

*Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen*

*LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).  And under Hawaii law, "a

nonsignatory agent has standing to invoke an arbitration agreement if one of the

following two conditions is met":

> First, when the signatory to a written agreement
> containing an arbitration clause must rely on the terms of
> the written agreement in asserting its claims against the
> nonsignatory.  Second, when the signatory to the contract
> containing a arbitration clause raises allegations of
> substantially interdependent and concerted misconduct
> by both the nonsignatory and one or more of the
> signatories to the contract.

*Luke*, 105 Haw. at 248, 96 P.3d at 268 (quoting *Westmoreland v. Sadoux*, 299 F.3d

462, 467 (5th Cir. 2002)).  That is, "a signatory to an arbitration agreement is

estopped from refusing to arbitrate claims against a nonsignatory when the

signatory's claims are intertwined with, rather than independent of, the agreement

containing the arbitration clause . . . ." *Id*.  Thus, "[n]onsignatory successors . . .

are entitled to compel arbitration under clauses signed by the corporations whose

liability they are alleged to have assumed." *S. Glazer's Wine & Spirits*, 2017 WL

6417810, at *6 (quoting *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc*., 2016 WL

6082415, at *9 (N.D. Cal. Oct. 18, 2016)).

   Here, Plaintiffs assert that all ICAs executed prior to 2018 were

countersigned by GWR Wailea Property LLC and individuals who signed on

behalf of that entity, none of which is a party to the present action.  *See, e.g*., ECF

No. 170-19 (2013 ICA signed by Arbitration Plaintiff Marano; GWR Wailea

Property LLC d/b/a Grand Wailea Resort Hotel & Spa by Waldorf Astoria

Management, LLC, Manager; and Matthew Bailey, Managing Director).  GWR

Wailea Property LLC owned the Hotel until 2018, when Defendant BRE Iconic

GWR Owner LLC purchased it.  *See* ECF No. 170-2 at PageID.4738 (Declaration

of Scott Spurlock, Senior Vice President at BRE Hotels & Resorts).

   But it is clear, "looking at the relationship between the parties and

their connection to the alleged violations," *Franklin*, 998 F.3d at 875, that the ten

Arbitration Plaintiffs' claims against non-signatories Defendant BRE Iconic GWR

Owner LLC and Defendant John Paul Oliver (the present Managing Director)—

who represent Hotel and "whose liability they are alleged to have assumed," *S.*

*Glazer's Wine & Spirits*, 2017 WL 6417810, at *6—are "intertwined with, rather

than independent of, the agreement containing the arbitration clause." *Luke*, 105

Haw. at 248.

## F.    Stay of Proceedings as to the 21 Arbitration Plaintiffs

In finding that the ICA and arbitration clause are valid and

enforceable, the court is required to stay proceedings as to the applicable parties,

rather than dismiss them. "When a federal court finds that a dispute is subject to

arbitration, and a party has requested a stay of the court proceeding pending

arbitration, the court does not have discretion to dismiss the suit on the basis that

all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76

(2024). It is not entirely clear whether Defendants seek a stay of the entire matter.

*See* ECF No. 170 at PageID.4727 (arguing that "[all of] Plaintiffs' claims turn on

identical legal theories"). Nonetheless, the court exercises its discretion to stay

proceedings as to only the 21 Arbitration Plaintiffs. That is, this federal action will

proceed as to the remaining 100 Plaintiffs. "[F]ederal law *requires* piecemeal

resolution when necessary to give effect to an arbitration agreement. Under the

[FAA], an arbitration agreement must be enforced notwithstanding the presence of

other persons who are parties to the underlying dispute but not the arbitration agreement." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 20 (1983).

## V.  CONCLUSION

To summarize,

(1)    Defendants' Motion to Compel Arbitration, ECF No. 170, is GRANTED;

(2)    the carveout for temporary and permanent injunctive relief at ICA ¶ 16 (Remedies) and the reference to New York law in ICA ¶ 18 (Arbitration) are SEVERED from the Independent Contractor Agreement;

(3)    the action as to Arbitration Plaintiffs Geri Misty Boteilho-Dougherty, Marina Alexeeva, Lindsey Baldrige, Heather Causey, Angela Guerra, Stephanie Haddad, Carly Heims, Joni Henkel, Torrey Hyman, Francine Johansen, Marilyn Marano, Kazuyo Matsunouchi, Amanda Mayers, Carla Moore, Manya Reinier, Jana Richardson, Christopher Ridge, Sienna Schubert, Jay-R Tagayuna, Amber Vaughn-Bal, and Zoe Wells is STAYED pending arbitration.  The action will proceed as to the other 100 Plaintiffs.

\\\

\\\

\\\

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 22, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Bolos v. Waldorf Astoria Management LLC, et al.*, Civ. No. 23-00104 JMS-KJM, Order Granting Defendants' Motion to Compel Arbitration, ECF No. 170