IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURIE BOLOS, an individual, ET AL., | CIV. NO. 23-00104 JMS-KJM |
| Plaintiffs, | |
| | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS, ECF NO. 169; AND ORDER TO SHOW CAUSE REGARDING DEFENDANT FEDERER |
| v. | |
| WALDORF=ASTORIA MANAGEMENT LLC OPERATING AS GRAND WAILEA, a Waldorf Astoria Resort; ET AL., | |
| Defendants. | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS, ECF NO. 169; AND ORDER TO SHOW CAUSE REGARDING DEFENDANT FEDERER

## I. <u>INTRODUCTION</u>

Defendants Waldorf=Astoria Management LLC, GW Manager LLC,

BRE Iconic GW Owner LLC, BRE Hotels & Resorts LLC, John Paul Oliver,

Joseph Berger, and Bart Santiago (collectively "Defendants") move to dismiss 15

of the 16 Counts of the 83-page Corrected Second Amended Class and Collective

Action Complaint ("CSAC") in this action arising from allegedly wrongful

classification of certain workers at the Grand Wailea, a resort on Maui.[1]  *See* ECF
No. 169.  Based on the following, Defendants' Partial Motion to Dismiss
("Motion" or "Motion to Dismiss") is GRANTED in part and DENIED in part.

To summarize this lengthy Order, the court dismisses the wage and
overtime claims (Counts I, II, and XI) without prejudice and with leave to amend,
for a failure to plead sufficient facts to state plausible claims under *Twombly*/*Iqbal*.
*See Landers v. Quality Comm'cns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014) (holding
that "generalized allegations asserting violations of the minimum wage and
overtime provisions of the FLSA" are insufficient).  Plaintiffs, however, cannot
bring a claim under HRS § 387-3 in Count II—although they may seek such relief
in Count XI.  Count V remains, although it is dismissed with leave to amend as to
Defendants Santiago and BRE Hotels & Resorts LLC.  The court dismisses other
Hawaii-law claims (Counts III, IV, VI, VII, VIII, IX and X) which are based on
procedural-type violations (e.g., timing and recordkeeping requirements) as a
matter of law because the claims lack private causes of action, although some
aspects of Count III may be sought in Count V.  The court dismisses Counts XII

---

[1]  As explained later in this Order, Defendants Waldorf=Astoria Management LLC, GW
Manager LLC, and BRE Iconic GW Owner LLC, move to dismiss all but Count V of the CSAC.
But four of the Defendants (BRE Hotels & Resorts LLC, John Paul Oliver, Joseph Berger, and
Bart Santiago) move to dismiss all Counts of the CSAC alleged against them, including Count V
(although Berger is only named as to Counts XII and XIII).  The last Defendant (Allan Federer),
who has not been served, is not represented by counsel and has not appeared (and thus has not
filed a position or joined in the Motion to Dismiss).

and XIII—the federal and state-law civil RICO claims—with prejudice (and so

Defendant Berger is dismissed for lack of personal jurisdiction). The court

dismisses Count XV—the federal and state-law retaliation claims—with leave to

amend if the claims are not otherwise barred or subject to the court's prior

November 22, 2024 Order compelling arbitration (although the court dismisses the

state-law retaliation claim against the individual Defendants with prejudice). As to

the equitable claims, the court dismisses Count XIV (unjust enrichment) with leave

to amend, but allows Count XVI (promissory estoppel) to remain. Finally, as

further detailed with various Counts, some of the claims are dismissed with leave

to amend as to certain Plaintiffs on statute of limitations grounds.

## II. <u>BACKGROUND</u>

### A.    General Factual Background

This action was originally filed on February 23, 2023, *see* ECF No. 1,

and the Complaint was last amended on July 8, 2024, with the filing of the CSAC.

*See* ECF No. 166. As set forth in the CSAC, this action is a combined individual,

class action, and collective action brought on behalf of 122 named Plaintiffs and

other "Putative Class Members" who were "massage therapists, nail technicians,

estheticians, and hair stylists who worked at the Spa Grande located within the

Grand Wailea-Waldorf Astoria Resort, 3850 Wailea Ananui Drive, Wailea,

Hawaii, 96753." CSAC ¶ 1, ECF No. 166 at PageID.6112.[2] The CSAC and this Order often refer to the Spa Grande as "the Spa," and the Grand Wailea-Waldorf Astoria Resort as "the Grand Wailea" or "the Hotel."

The CSAC claims that "[a]t any given time during the statutorily relevant time period, Defendants employed more than ninety (90) massage therapists and more than twenty-five (25) nail technicians, estheticians, and hair stylists, as well as 'lead' technicians, to work at the Spa, each of whom Defendants willfully misclassified as independent contractors." CSAC ¶ 2, ECF No. 166 at PageID.6112. It further alleges that "[a]ccording to Defendants' records produced in this lawsuit, the number of workers for the Defendants who worked at the Grand Wailea and were classified by Defendants as independent contractors is at least one hundred and ninety (190) individuals." *Id.*

The CSAC is brought against "Defendants Waldorf=Astoria Management LLC operating as Grand Wailea, a Waldorf Astoria Resort; GW Manager LLC, dba Grand Wailea, a Waldorf Astoria Resort; BRE Iconic GWR Owner LLC; and BRE Hotels & Resorts LLC (collectively, the 'corporate

---

[2] "ECF No. 166 at PageID.6112" corresponds to page 6112 (on document 166) of the District of Hawaii's CM/ECF docket for this case. As was done with other orders, this Order often cites to the exact page number of the docket. The court is aware that due to an intervening malfunction with the CM/ECF system, the PageID numbers for the CSAC at ECF No. 166 have changed from the prior version. Accordingly, prior court orders now contain citation errors because those orders cited to that prior version of the CSAC. *See, e.g.*, ECF No. 173 at PageID.5282 (citing to "PageID.4454–4460" on ECF No. 166); ECF No. 219 at PageID.6072 (citing to "PageID.4413" on ECF No. 166). This Order cites to the new PageID numbers.

Defendants'), and John Paul Oliver; Allan Federer; Joseph Berger; and Bart

Santiago (collectively, the 'individual Defendants')." *Id.* ¶ 3, ECF No. 166 at

PageID.6112. The corporate Defendants are further distinguished as either

managers or owners. Based on the CSAC and discussions at oral argument on the

Motion, the court understands Defendants "Waldorf=Astoria Management LLC

operating as Grand Wailea, a Waldorf Astoria Resort; and GW Manager LLC, dba

Grand Wailea, a Waldorf Astoria Resort" are the corporate managers of the Hotel,

and "BRE Iconic GWR Owner LLC; and BRE Hotels & Resorts LLC" are

corporate owners of the Hotel who do not manage day-to-day operations of the

Hotel. The alleged roles of the individual Defendants are as follows: John Paul

Oliver is located on Maui and is the current general manager of the Hotel; Allan

Federer is the former general manager; Joseph Berger is the President and Chief

Executive of BRE Hotels & Resorts and is a resident of Florida; and Bart Santiago

is located on Maui and is the current day-to-day director of finance at the Hotel.

*See* ECF No. 166 at PageID.6128.

> As a general basis for its many causes of action, the CSAC alleges:
>
> By virtue of Defendants' misclassification, Plaintiffs and
> the Putative Class Members neither received mandatory
> benefits to which they are entitled under state and federal
> law, including but not limited to workers' compensation
> insurance, short-term disability insurance, retirement and
> social security benefits, unemployment insurance, and
> health insurance, nor employment benefits that
> Defendants provide to their W-2 employees. Further,

> Defendants failed to pay Plaintiffs and the Putative Class
> Members all wages owed, including the minimum and
> overtime wages to which they are entitled, and penalties
> for late wages under federal and state law.

CSAC ¶ 4, ECF No. 166 at PageID.6113.  Plaintiffs allege that the

misclassification as independent contractors (done through individual

"independent contractor agreements") was done willfully and fraudulently for the

purpose of depriving Plaintiffs of various benefits and amounts of wages.  The

CSAC also alleges that, after the initial filing of the action, Plaintiffs and the

Putative Class Members were retaliated against in violation of Hawaii and federal

law.  *Id.* ¶¶ 225–233, ECF No. 166 at PageID.6146–6151.

Given the CSAC's length, the court does not set forth all its salient

allegations here.  Instead, the court sets forth and discusses relevant allegations in

the discussion sections to follow when analyzing each of the CSAC's substantive

Counts.

**B.    Procedural Background**

Previously, on July 1, 2024, the court granted in part a motion to

dismiss for lack of personal jurisdiction brought by Berger.  *See* ECF No. 173 at

PageID.5299–5300; *Bolos v. Waldorf Astoria Mgmt. LLC*, 2024 WL 3594741 (D.

Haw. July 31, 2024).  The court determined that, applying Hawaii's long-arm

statute, specific jurisdiction was lacking over Berger under Federal Rule of Civil

Procedure 4(k)(1)(A).  But the court allowed a claim to remain as to Berger under

6

Rule 4(k)(1)(C) authorizing jurisdiction "when authorized by a federal statute" (in this case, nationwide service allowed under 18 U.S.C. § 1965(b)). That ruling, however, was subject to a substantive challenge to that claim, which is made in this Motion to Dismiss. That is, in part, this Order addresses an issue left open in that July 1, 2024 Order.

Also of particular importance, on November 22, 2024, the court granted a Motion to Compel Arbitration brought by Defendants as to 21 of the named Plaintiffs who were compelled to arbitrate this dispute based on arbitration provisions of their individual independent contractor agreements. *See* ECF No. 219 (Order Granting Defendants' Motion to Compel Arbitration); *Bolos v. Waldorf=Astoria Mgmt. LLC*, 2024 WL 4869754 (D. Haw. Nov. 22, 2024). The court subsequently severed those Plaintiffs from this action, and established individual civil cases for each of them for administrative reasons. *See* ECF No. 225.

Accordingly, this Order applies only to Plaintiffs remaining after those 21 plaintiffs were sent to arbitration. To be clear, this Order does not cover the following 21 Plaintiffs who have been compelled to arbitrate their claims: Geri Misty Boteilho-Dougherty, Marina Alexeeva, Lindsey Baldrige, Heather Causey, Angela Guerra, Stephanie Haddad, Carly Heims, Joni Henkel, Torrey Hyman, Francine Johansen, Marilyn Marano, Kazuyo Matsunouchi, Amanda Mayers, Carla

Moore, Manya Reinier, Jana Richardson, Christopher Ridge, Sienna Schubert, Jay-R Tagayuna, Amber Vaughn-Bal, and Zoe Wells.  This Order concerns the claims made by the 100 other named Plaintiffs in the CSAC.[3]

As discussed with the parties at oral argument, and as the record still indicates, Defendant Federer has not been served, has not appeared, and is not being represented by counsel for the other Defendants.  Nevertheless, because he largely stands on equal footing as with the other Defendants, the court's rulings as to the other Defendants apply equally to Federer even if he has not made an appearance.  *See, e.g.*, *Silverton*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants . . . ."); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008) ("As a legal matter, we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared.") (citation omitted).

---

[3]  Prior court orders stated that the CSAC was brought on behalf of 121 Plaintiffs, with 100 remaining after the November 22, 2024 Order Granting Defendants' Motion to Compel Arbitration as to 21 of them.  *See* ECF No. 122 at PageID.6071, 6106; ECF No. 225 at PageID.6215.  But after further review, the CSAC had 122 named Plaintiffs, with 101 remaining after the Order compelling arbitration.

Further, on January 6, 2025, Plaintiff Brooke Lee stipulated with Defendants to dismiss her claims with prejudice.  *See* ECF No. 227.

Further, as set forth in the Conclusion, Plaintiffs are ordered to

SHOW CAUSE why Federer should not otherwise be dismissed without prejudice

from this action for failure to serve him.  *See* Fed. R. Civ. P. 4(m) ("If a defendant

is not served within 90 days after the complaint is filed, the court—on motion or

on its own after notice to the plaintiff—must dismiss the action without prejudice

against that defendant or order that service be made within a specified time.").  As

set forth in the Conclusion, Plaintiffs must respond as to Federer by January 27,

2025.

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6)

dismissal is proper when there is either a "lack of a cognizable legal theory or the

absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Cap.*

*Partners*, LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica*

*Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  Rule 12 is read in conjunction

with Rule 8(a)(2), which "requires only 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)).

The pleading standard "does not require 'detailed factual allegations,'
but it demands more than an unadorned, the-defendant-unlawfully-harmed-me
accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.*).  To survive
a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must
offer "more than labels and conclusions," and instead contain "enough factual
matter" indicating "plausible" grounds for relief, not merely "conceivable" ones.
*Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1055–56 (9th Cir. 2019) (citing *Twombly*,
550 U.S. at 555–56).  And in a 12(b)(6) analysis, the court accepts as true the
material facts alleged in the complaint and construes them in the light most
favorable to the nonmovant.  *Steinle v. City & County of San Francisco*, 919 F.3d
1154, 1160 (9th Cir. 2019) (citation omitted).

## IV.  <u>DISCUSSION</u>

Plaintiffs' CSAC asserts 16 Counts—on individual, class action, and
collective action bases—against Defendants claiming violations of Hawaii and
federal law arising generally from alleged misclassifications of Plaintiffs as
independent contractors rather than employees of the Grand Wailea.  *See generally*
ECF No. 166.  In a kitchen-sink approach, the CSAC alleges the following Counts
(against different sets of Defendants, as detailed later):

- Count I: "Willful Misclassification of Employees in Violation of [Hawaii
Revised Statutes ("HRS")] § 387-12"

10

• Count II: "Failure to Pay All Wages, Minimum Wage and Overtime in Violation of [HRS] §§ 388-2, 388-3, 388-10 and 387-12"

• Count III: "Late Payment of Wages/Failure to Reimburse"

• Count IV: "Failure to Provide Accurate and Specific Commission Agreements in Violation of [HRS] § 388-7"

• Count V: "Unlawful Withholding of Wages and Paycheck Deductions in Violation of [HRS] § 388-6"

• Count VI: "Failure to Provide and Maintain Accurate Wages Statements in Violation of [HRS] § 388-10"

• Count VII: "Failure to Provide Temporary Disability Insurance in Violation of [HRS] §§ 392-41, 392-47, and 392-92"

• Count VIII: "Failure to Provide Employment Security Benefits in Violation of [HRS] §§ 383-73 and 383-142"

• Count IX: "Failure to Provide Prepaid Group Health Insurance for Employees in Violation of [HRS] §§ 393-11 and 393-33"

• Count X: "Failure to Provide Workers' Compensation Benefits"

• Count XI: "Failure to Pay Overtime and Minimum Wage in Violation of Fair Labor Standards Act [("FLSA")], 29 U.S.C. 201 et seq."

• Count XII: "Violation of Racketeer Influenced and Corrupt Organization (RICO) Act, 18 U.S.C. 1961 *et seq.*"

• Count XIII: "Violation of [HRS] § 842 (Hawaii RICO statute)"

• Count XIV: "Unjust Enrichment and Restitution *Quantum Meruit*"

• Count XV: "Retaliation in Violation of the FLSA (29 U.S.C. § 215(a)(3)) and [HRS] § 378-62"

• Count XVI: "Detrimental Reliance on a Promise"

Counts XI (FLSA), XII (civil RICO), and XV (FLSA retaliation) are based on federal law.  The other 13 Counts are Hawaii state-law claims based on alleged loss of particular benefits or rights set forth in various Hawaii employment statutes, or they are state-law claims that parallel the federal claims.  Defendants Waldorf=Astoria Management LLC, GW Manager LLC, and BRE Iconic GWR Owner LLC move to dismiss all Counts except Count V.  *See* ECF No. 169 at PageID.4656.  Thus, Count V remains as to those Defendants regardless of the rulings in this Order.  The individual Defendants (Oliver, Berger, and Santiago) and Defendant BRE Hotels & Resorts LLC move to dismiss all Counts of the CSAC against them (where Berger is only named as to Counts XII and XIII).  That is, Oliver, Santiago, and BRE Hotels & Resorts LLC also move to dismiss Count V.  The court analyzes the arguments on a count-by-count basis in numerical order.

## A.    Count I:  "Willful Misclassification of Employees in Violation of HRS § 387-12" (Alleged against all Defendants except Joseph Berger)

Count I alleges that Plaintiffs were "employees" as defined by Hawaii law, CSAC ¶ 242, ECF No. 166 at PageID.6154, and that "Defendants willfully misclassified the Plaintiffs and the Putative Class Members as purported 'independent contractors' throughout their employment," *id.* ¶ 243, ECF No. 166 at PageID.6154.  It alleges that "Defendants failed to classify the Plaintiffs as employees for fraudulent purposes, with the wrongful and deliberate intention of injuring the Plaintiffs and the Putative Class Members."  *Id.* ¶ 245; ECF No. 166 at

12

PageID.6154.  It thus seeks "punitive and exemplary damages."  *Id.* ¶ 246, ECF
No. 166 at PageID.6154.

       Count I is based on HRS § 387-12(b), which is a penalties provision
of HRS Chapter 387.  Chapter 387 is Hawaii's Wage and Hour Law that sets
minimum wages (HRS § 387-2) and maximum hours and overtime (HRS § 387-3)
for applicable employees.  *See* HRS § 387-12(b) ("Any employer who violates any
provision of sections 387-2 and 387-3 shall be liable to the employee or employees
affected in the amount of their unpaid minimum wages or unpaid overtime
compensation, *and in case of wilful violation in an additional equal amount as
liquidated damages*.") (emphasis added).

       The court reads Count I in conjunction with Count II, which alleges
that Defendants failed to pay wages and violated Hawaii minimum wage and
overtime provisions by "misclassif[ying] Spa workers through a commission
structure" that "frequently paid the Spa workers less than the legally mandated
minimum wage for all hours worked and never paid the Spa workers overtime as
required by law."  CSAC ¶ 250, ECF No. 166 at PageID.6155.  That is, when
considered together with Count II, Count I simply alleges that Defendants'
violations were "willful" for purposes of seeking liquidated damages, i.e., "an
additional equal amount" of any "unpaid minimum wages or unpaid overtime
compensation."  HRS § 387-12(b).

Defendants' Motion to Dismiss argues that Count I is not a
freestanding legal claim and, in any event, duplicates Count II.  Although those
arguments might be true, the parties agreed at oral argument on the Motion that
Counts I and II could be "merged" and considered as a single count.  *See* ECF No.
214 at PageID.5993.  Effectively, then, the Motion to Dismiss is DENIED as to
Count I itself, but subject to the following analysis regarding Count II.[4]

**B.    Count II:  "Failure to Pay All Wages, Minimum Wage and Overtime in Violation of [HRS] §§ 388-2, 388-3, 388-10 and 387-12" (Alleged against all Defendants except Joseph Berger)**

Although the details are sloppily-pled, Count II generally alleges
violations of Hawaii law for failure to "pay the Spa workers (1) wages for each
hour worked at or above the applicable state minimum wage, and (2) for all hours
worked in excess of forty (40) hours."  CSAC ¶ 249, ECF No. 166 at PageID.6155.
It explains how this underpayment occurred:

> Because Defendants compensated the misclassified Spa
> workers through a commission structure, the commission
> amount of which Defendants frequently reduced due to
> their own promotions and service giveaways, while at the
> same time requiring the Spa workers to be present and
> perform work for set shifts and according to a set
> schedule, Defendants frequently paid the Spa workers
> less than the legally mandated minimum wage for all

---

[4]  Given that the parties agreed to consider Counts I and II as a single count, any
amendment to Count II must incorporate Count I's willfulness allegation (if still appropriate).
That is, any further amended complaint must not split the Chapter 387 remedies into different
counts.

> hours worked and never paid the Spa workers overtime
> as required by law.

*Id.*  But before addressing the Motion to Dismiss as to Count II, the court must first

interpret Count II's confusing pleading.  In short, Count II blends relief under two

distinct chapters—HRS Chapters 387 and 388—which are both lengthy and

complex.  And although Count II's title seeks recovery for "all wages," it is

unclear whether Plaintiffs seek relief for unpaid wages *other* than just based on

minimum and overtime wage violations.

Initially, Count II improperly cites HRS §§ *388-2* and *388-3* for the

minimum wage and overtime claims, where §§ 387-2 and 387-3 are the

applicable provisions governing those rights.[5]  In contrast, §§ 388-2 and 388-3

concern procedural aspects of payment of wages and are not limited to minimum

---

[5]  Section 387-2 regarding "Minimum wages" provides in part:

> (a) Except as provided in section 387-9 and this section, every
> employer shall pay to each employee employed by the employer,
> wages at the rate of not less than:
>
> * * * *
>
> (6) $9.25 per hour beginning January 1, 2017;
> (7) $10.10 per hour beginning January 1, 2018;
> (8) $12.00 per hour beginning October 1, 2022;
> (9) $14.00 per hour beginning January 1, 2024;
> (10) $16.00 per hour beginning January 1, 2026; and
> (11) $18.00 per hour beginning January 1, 2028.

And § 387-3 regarding "Maximum hours" provides in part:

(continued . . . )

wage or overtime violations.[6]   Nevertheless, given the clear intent to make claims

for violations of minimum wage and overtime laws, the court construes Count II to

refer to §§ 387-2 and 387-3.  As set forth when discussing Count I, § 387-12(b)

specifies remedies that are available for certain Chapter 387 violations.  Further,

HRS § 387-12(c) provides in part that an "[a]ction to recover such liability [in

§§ 387-2 and 387-3] may be maintained in any court of competent jurisdiction by

any one or more employees for and in behalf of oneself or themselves and other

employees similarly situated . . . ."  And § 387-12(c) includes provisions for

attorney's fees and costs for prevailing plaintiffs.  Thus, § 387-12(c) allows

Plaintiffs to bring an action in court for unpaid wages based on minimum wage and

overtime violations.

---

(a)  No employer shall, except as otherwise provided in this
section, employ any employee for a workweek longer than forty
hours unless the employee receives overtime compensation for the
employee's employment in excess of the hours above specified at a
rate not less than one and one-half times the regular rate at which
the employee is employed.

[6] As a whole, Chapter 388 primarily deals with the timing and method of payment.  *See*
§ 388-2 (regarding a semimonthly payday), § 388-3 (regarding separation before a payday);
§ 388-4 (regarding payment to relatives of deceased employees); § 388-5 (regarding payment of
wages when a dispute arises); § 388-6 (regarding withholding of wages); and § 388-7 (regarding
notification and recordkeeping).  "[HRS] § 388-2(a) addresses only *when* wages are payable, not
*whether* they are payable."  *Morangelli v. Chemed*, 922 F. Supp. 2d 278, 287 (E.D.N.Y. 2013)
(internal quotation marks omitted).  "Indeed, Chapter 388 governs the *payment* of wages and
compensation, not what those wages should be."  *Id.*  Other Counts of the CSAC raise specific
claims under some of the sections of Chapter 388, as addressed later in this Order.

16

But Count II also cites to § 388-10(a) and § 388-11(c), which are provisions of Chapter 388 that authorize courts to impose penalties and award interest and attorney's fees for violations of Chapter 388.[7]  Further, HRS § 388-11(a) allows an employee to maintain an action "to recover unpaid wages."[8]  But

---

[7]  Section 388-10(a) provides in part:

> (a) Civil.  Any employer who fails to pay wages in accordance with this chapter without equitable justification or violates this chapter or the administrative rules adopted under this chapter shall be liable:

> (1) To the employee, in addition to the wages legally proven to be due, for a sum equal to the amount of unpaid wages and interest at a rate of six per cent per year from the date that the wages were due; and

> (2) For a penalty of not less than $500 or $100 for each violation, whichever is greater. The penalty shall be deposited into the labor law enforcement special fund.

And § 388-11(c) provides in part:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow interest of six per cent per year from the date the wages were due, costs of action, including costs of fees of any nature, and reasonable attorney's fees, to be paid by the defendant. . . .

[8]  Section 388-11(a) provides:

> Action by an employee to recover unpaid wages may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of oneself or themselves, or the employee or employees may designate an agent or representative to maintain the action.

A claim under § 388-11(a) is more general than claims for violations of Chapter 387, and appears to encompass unpaid wages under Chapter 388—not Chapter 387.  For example, in *Kyne v. Ritz-Carlton Hotel Co.*, 2011 WL 6030978, at *3 (D. Haw. Dec. 2, 2011), the court concluded

(continued . . . )

Count II only cites § 388-11(c), and—although some of the CSAC's allegations might be construed as seeking wages for work performed *besides* a violation of §§ 387-2 or 387-3—those allegations are vague.[9]  As pled, the court cannot construe Count II to include a claim under § 388-11(a) for other claims for *all* unpaid wages (i.e., wages not based on violations of minimum or overtime statutes provided in Chapter 387).

Accordingly, if Plaintiffs seek recovery for other unpaid wages, they must do so in a Second Amended Complaint that clarifies whether or not they (or *any* Plaintiffs) are seeking wages based *solely* on § 387-12(c) for minimum wage and overtime violations.  And, if so, a claim for wages under § 388-11(a) must be made in a separate Count.  That is, relief under Chapter 387 must be distinct from relief under Chapter 388.

Putting aside that confusion with Count II, Defendants challenge it (1) on factual grounds, arguing that it lacks plausibility, and (2) on legal grounds,

---

that "an employee may recover under H.R.S. §§ 388-6, 388-10, and 388-11, for the failure of a hotel to distribute service charges to employees . . . ."

[9]  For example, the CSAC alleges in its factual basis, in part, that Plaintiffs performed unpaid work such as cleaning and organizing workstations, laundering Defendants' linens and towels, taking inventory, drafting and posting job vacancies, interviewing candidates, and moving furniture.  CSAC ¶ 181, ECF No. 166 at PageID.6137.  It also alleges that Plaintiffs were required to work in the hotel's retail store, and "additional shifts in poolside tents and to staff a massage chair outside of the Spa."  *Id.* ¶ 185, ECF No. 166 at PageID.6138.  It is unclear whether a Plaintiff might be entitled to recover for nonpayment of wages for such work that might be compensable *regardless* of an overtime or minimum wage violation.

arguing that the FLSA precludes some of the relief sought under state law in Count II, where relief must be pursued under the FLSA rather than under state law. The court addresses these arguments in turn.

### 1. Plausibility

Defendants argue that Count II as pled fails under *Twombly/Iqbal* for lack of plausibility, pointing out that the CSAC fails to allege any specific instance where any particular Plaintiff was not paid a minimum wage or worked more than 40 hours a week without being paid overtime. They rely on *Landers v. Quality Communications, Inc.*, a Ninth Circuit case law interpreting the FLSA—the federal wage and hour law that is parallel to HRS Chapter 387. *See* 771 F.3d at 646. *Landers* established that "generalized allegations asserting violations of the minimum wage and overtime provisions of the FLSA" are insufficient. *Id.*[10] The complaint in *Landers* lacked "any detail regarding a given workweek when [plaintiff] worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages." *Id.* It explained that "[a]lthough plaintiffs in these types of cases cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer, they

---

[10] Like HRS § 387-3(a), the FLSA in 29 U.S.C. § 207(a) provides in part that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed."

should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* (citing *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)).

Of particular importance here in addressing Count II's state law claims, *Landers* addressed the pleading requirements for a complaint in federal court after the Supreme Court adopted the *Twombly*/*Iqbal* plausibility standard. *See Landers*, 771 F.3d at 640 ("This case presents an issue of first impression in this circuit. Post-*Twombly* and *Iqbal*, this court has not addressed the degree of specificity required to state a claim for failure to pay minimum wages or overtime wages under the FLSA."). *Landers* adopted a rule that "in order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Id.* at 644–45 (citations omitted). *Landers* explained that "[a] plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* at 645.

And because *Landers* was addressing the pleading standards after *Twombly* and *Iqbal*, the court agrees with Defendants that the opinion's

interpretation of the FLSA applies equally to pleading claims in federal court for the analogous provisions of Hawaii law in HRS §§ 387-2 and 387-3.[11] *See, e.g.,* *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016) ("Although *Landers* discussed FLSA claims, its reasoning applies to California Labor Code claims as well. . . . Plaintiffs give the Court no reason to depart from the well-reasoned logic of these other courts in extending *Landers* to various Labor Code claims.") (citation omitted); *Makaneole v. Solarworld Indus. Am. Inc.*, 2014 WL 8102530, at *10–11 (D. Or. Dec. 8, 2014) (concluding that *Landers* applies "with equal force" to the plaintiff's state law claims for failure to pay "overtime wages" and "wages due and owing," because *Landers* was "based on the pleading standard set forth in Federal Civil Procedure Rule 8 as construed by *Twombly* and *Iqbal*"), *report and recommendation adopted as modified*, 2015 WL 1021446 (D. Or. Mar. 9, 2015); *Harbaugh v. Pac. Cap. Enters. LLC*, 2020 WL 2840053, at *2 (D. Ariz. June 1, 2020) ("Although *Landers* did not address the pleading standards for comparable state-law wage claims, courts have found it 'instructive as to the pleading standard applicable to such claims.'") (citations omitted).

Applying *Landers* to the CSAC, Count II only generally alleges that because of being misclassified, "Defendants frequently paid the Spa workers less

---

[11] Defendants make a similar argument as to Count XI, analyzed later, which is a collective-action claim alleging violations of the FLSA for failure to pay overtime and minimum wages.

than the legally mandated minimum wage for all hours worked and never paid the

Spa workers overtime as required by law."  CSAC ¶ 250, ECF No. 166 at

PageID.6155.  No where does the CSAC alleges any instance where or when *any*

of the over-100 named Plaintiffs worked over 40 hours during any particular work

week, nor any specific instance where or when any Plaintiff was paid less than

minimum wage.  Such general allegations fail to comply with the pleading

requirement in *Landers*.  Similarly, the CSAC only generally alleges—without

identifying any specific instance or any named Plaintiff—that Defendants

"repeatedly require and direct Plaintiffs and the Putative Class Members to

perform complimentary and gratuitous services for Defendants' employees

attending trade show and other work functions," CSAC ¶ 204, ECF No. 166 at

PageID.4426, and that "Defendants require Plaintiffs and the Putative Class

Members to arrive to work thirty minutes to an hour before their shift to perform

uncompensated work," *id.* ¶ 209, ECF No. 166 at PageID.4427.  In short, applying

*Landers*, Count II is deficient.

       Nevertheless, the dismissal of Count II is without prejudice to allow

Plaintiffs to comply with *Landers*.[12]  Plaintiffs have filed a Declaration of lead

---

[12]  Defendants' Motion acknowledges that dismissal as to Counts II and XI should be without prejudice.  *See* ECF No. 169 at PageID.4656 (Defendants respectfully submit that dismissal should be with prejudice except as to Count II and XI."); *id.* at PageID.4689 ("[W]ith respect to all but Count II and XI, dismissal should be with prejudice.").

Plaintiff Laurie Bolos that indicates they are able to make such allegations in a further amendment.  *See* ECF No. 200 at PageID.5828–29.  Although Plaintiffs have filed at least two versions of the Complaint (having most recently filed a "corrected" second amended complaint), the court will grant further leave to amend and give Plaintiffs another opportunity to state a plausible claim under *Landers*.

### 2.   *Preclusion by the FLSA Claim*

Defendants also challenge Count II by arguing that state-law wage and overtime claims are precluded (at least partially) by provisions of the federal FLSA as claimed in Count XI.  They rely on *Morangelli*, 922 F. Supp. 2d at 287, and *In re Wal-Mart*, 490 F. Supp. 2d 1091, 1129 (D. Nev. 2007)—which both analyzed Hawaii law (among other states' laws, in multi-state or multi-district litigation).  Those cases concluded that HRS § 387-1 precludes certain state law claims in favor of federal claims under the FLSA.  "Under [HRS] § 387-1, an employee gets the benefit of either the FLSA or the Hawaii minimum wage and overtime provisions, whichever are better, but if they are the same, then the FLSA applies."  *Morangelli*, 922 F. Supp. 2d at 287; *see also In re Wal-Mart*, 490 F. Supp. 2d at 1129 (applying same principle).

The court agrees with the logic of those cases, and their reading of Hawaii law.  The analysis is based on specific language of § 387-1, which excludes

23

fourteen categories of individuals from the definition of a qualifying "employee,"

providing in relevant part:

> "Employee" [for purposes of Chapter 387] includes any individual employed by an employer, but shall *not* include any individual employed:
>
> \* \* \* \*
>
> (12)  In any capacity if by reason of the employee's employment, in such capacity and during the term thereof, the minimum wage which may be paid to the employee or maximum hours which the employee may work during any workweek without the payment of overtime, are prescribed by the federal Fair Labor Standards Act of 1938, as amended, or as the same may be further amended from time to time; *provided that if the minimum wage which may be paid to the employee under the Fair Labor Standards Act for any workweek is less than the minimum wage prescribed by section 387-2, then section 387-2 shall apply in respect to the employees for that workweek; provided further that if the maximum workweek established for the employee under the Fair Labor Standards Act for the purposes of overtime compensation is higher than the maximum workweek established under section 387-3, then section 387-3 shall apply* in respect to the employee for that workweek; except that the employee's regular rate in such an event shall be the employee's regular rate as determined under the Fair Labor Standards Act[.]

HRS § 387-1 (emphases added).

Under that language, "unless the FLSA sets a longer workweek than

Hawaii law, § 387-3 does not apply to an employee otherwise covered by the

FLSA."  *In re Wal-Mart*, 490 F. Supp. 2d at 1129.  And because § 387-3 sets forth

a maximum 40-hour work week (before a time-and-a-half rate applies)—which is

the *same* maximum (i.e., not longer) as under the FLSA in 29 U.S.C. § 207(a)(1)[13]

—then the FLSA applies in lieu of § 387-3 for any violations of overtime

requirements.  *See id.* (dismissing a claim under § 387-3 "[b]ecause § 387–3 does

not provide a shorter maximum work week, [and thus] the FLSA applies and

§ 387–3 does not"); *Morangelli*, 922 F. Supp. 2d at 287–88 (dismissing Hawaii

overtime claim given the FLSA claim because "both Hawaii law and the FLSA

have prescribed that overtime must be paid for workweeks in excess of 40 hours").

Under the same reading of § 387-1, however, Plaintiffs' claim for

deprivation of minimum wages under § 387-2 are *not* precluded by the FLSA.

Given that § 387-2 provides a *higher* minimum wage than federal law,[14] Plaintiffs

may maintain a Hawaii statutory cause of action seeking such wages under § 387-

---

[13] Section 207(a) provides:

(1)  Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, *for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.*

(Emphasis added).

[14] Title 29 U.S.C. § 206 currently sets a federal minimum wage of $7.25, while HRS § 387-2 has exceeded that amount since January 1, 2015, and currently provides a minimum wage of $14.00 per hour.

12(c).  *See Morangelli*, 922 F. Supp. 2d at 287 ("Under [HRS] § 387-1, an

employee gets the benefit of either the FLSA or the Hawaii minimum wage and

overtime provisions, whichever are better . . . .").

Accordingly, Count II is DISMISSED with leave to amend to allow

Plaintiffs to comply with *Landers*.  But such leave is granted only as to a claim

under § 387-2.  That is, the dismissal of a claim for allegedly missing overtime

under § 387-3 is with prejudice (although Plaintiffs may seek that missing

overtime under the FLSA in Count XI, as explained later in this Order).  In any

amendment, Plaintiffs must also clarify whether relief is sought for unpaid wages

under HRS § 388-11(a), aside from minimum wage and overtime violations.  If so,

the § 388-11(a) claim must not be made in Count II, but must be made in a

separate count, and also comply with the *Twombly*/*Iqbal* plausibility pleading

standards.[15]

---

[15]  Count II (as well as several other counts) is also subject to a challenge by three of the
Defendants (John Paul Oliver, Bart Santiago and BRE Hotels & Resorts LLC) on the ground that
they are not "employers" who are subject to liability under HRS Chapters 387 and 388, or under
the FLSA.  The court addresses this alternate ground when analyzing Count V, which only those
Defendants seek to dismiss.  In any further amendment to Count II (and any other applicable
Counts) Plaintiffs must also take into account the court's rulings on these alternate grounds as to
those particular Defendants and limit any amendment in accordance with those rulings.

**C.    Count III:  "Late Payment of Wages/Failure to Reimburse" (Alleged against all Defendants except Joseph Berger)**

Count III alleges various violations of HRS Chapter 388 regarding procedural aspects of payment of wages.  Specifically, it alleges that Defendants (1) failed to pay wages on a timely basis (citing HRS § 388-2(b)); (2) failed to furnish and retain wage statements (citing HRS § 388-7(4)); (3) failed to pay wages at least twice during each calendar month (citing HRS § 388-2(a)); and (4) "terminated one or more Plaintiffs . . . without timely providing all wages due" after discharge (citing HRS §§ 388-3(a) and 388-3(b)).  *See* CSAC ¶ 264, ECF No. 166 at PageID.6157–6158.  Count III also mentions HRS § 388-6 (regarding payment and retention of certain fees and deductions) although Plaintiffs also make claims for violations of § 388-6 in Count V.[16]  *See id.* at PageID.6156.

---

[16]  Section 388-6 regarding "Withholding of wages" provides in part that "No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee . . . ."

Apparently in that regard, Count III alleges in part:

> Finally, Defendants unlawfully deducted from Plaintiffs' and the Putative Class Members' paychecks for linen fees, gratuities to employees, discounts and memberships offered to clients, services provided to employees and comped services to clients.  Defendants also did not reimburse Plaintiffs and Putative Class Members for costs and expenses related to their employment, including but not limited to, expenses related to mileage, travel, meals, uniforms, and grooming and appearance standards.

CSAC ¶ 264, ECF No. 166 at PageID.6157–6158.

Except for § 388-6, Defendants argue that there is no private cause of action for violations of these statutory provisions. And to the extent a claim is made under § 388-6, Defendants seek to dismiss or to strike that aspect of Count III as duplicative of Count V (which Defendants Waldorf=Astoria Management LLC, GW Manager LLC, and BRE Iconic GWR Owner LLC do not otherwise seek to dismiss in this Motion).

Several provisions of Chapter 388 demonstrate that Plaintiffs indeed have no private cause of action to enforce these procedural rights in this case. Section 388-9(a) provides, in part that "[t]he [Hawaii] director of labor and industrial relations [("DLIR")] shall enforce and administer this chapter and the director or the director's authorized representatives may hold hearings and otherwise investigate charges of violations of this chapter and institute actions for penalties hereunder." HRS § 388-9(a). Section 388-9 also allows the *DLIR* to institute an action in a Hawaii Circuit Court to compel the employer to cease doing business if an employer has not paid a final judgment for wages obtained by the director under the chapter:

> If any judgment obtained *by the director* against an employer for nonpayment of wages remains unsatisfied for a period of thirty days after the time to appeal therefrom has expired and no appeal is pending or after such judgment has been finally affirmed on appeal, *the director may institute proceedings* in the name of the State in the circuit court in which the employer has the employer's principal place of business to compel the

28

> employer to cease doing any business until the judgment
> has been satisfied.

HRS § 388-9(c) (emphases added).  Further, as noted earlier, § 388-11(a) provides

a private cause of action to recover "unpaid wages," but—besides wages—Chapter

388 does not mention an action for violations of other timing and procedural

sections of Chapter 388, such as §§ 388-2, 388-3, and 388-7.

Interpreting these provisions, *In re Wal-Mart* concluded that no

private rights of action exists specifically for violations of §§ 388-2 and 388-7:

> Neither § 388-2 nor § 388-7 provide an explicit private
> cause of action.  Section 388-9 grants Chapter 388
> enforcement powers to the director of labor and industrial
> relations.  Section 388-10 provides a cause of action for
> employees to bring a civil action to collect the unpaid
> wages plus an amount equal to the unpaid wages plus
> interest.  The fact that Hawaii made specific provisions
> for private enforcement for the failure to pay wages but
> not for record keeping violations within the same chapter
> suggests Hawaii did not intend for an implied right of
> action under § 388-2 or § 388-7.  Rather, Hawaii vests
> enforcement authority for these provisions in the director
> of labor and industrial relations.

490 F. Supp. 2d at 1129–30; *see also Morangelli*, 922 F. Supp. 2d at 287 n.7

(agreeing with *In re Wal-Mart*).[17]  As *Morangelli* explained, "Chapter 388 governs

the *payment* of wages and compensation, not what those wages should be."  922 F.

---

[17]  Although those cases were directed specifically at claims under §§ 388-2 and 388-7,
the same logic applies equally to claims under § 388-3 regarding when wages are due for
"[e]mployees who are separated from the payroll before paydays."

Supp. 2d at 287.  And other case law supports such a reading.  *Cf. Larson v. Liberty Mut. Fire Ins. Co.*, 2010 WL 520630, at *7 (D. Haw. Feb. 11, 2010) (dismissing private claims regarding workers compensation because—similar to HRS § 388-9—HRS Chapter 386 provides that the DLIR "shall be in charge of all matters of administration pertaining to the operation and application" of Chapter 386 and that the director has "original jurisdiction over all controversies and disputes arising under" Chapter 386) (quoting HRS §§ 386-71 and 386-73)); *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1250 (D. Haw. 2019) (concluding that no private cause of action exists to enforce a provision of HRS Chapter 486 because, in part, "[t]he legislature's express identification of the entity conferred with the authority to enforce HRS Chapter 486, coupled with the absence of a provision authorizing a private cause of action . . . indicates that Plaintiff . . . may not avail himself of this statute").

In opposition, Plaintiffs cite, among other cases, *Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. 250, 865 P.2d 170 (App. 1994), for the proposition that Hawaii law allows a private cause of action for violations of Chapter 388.  But *Smith* actually supports *Defendants'* position that Hawaii law allows a private cause of action to seek amounts of improperly withheld wages or deductions in court under § 388-6, but *not* for other violations of procedural rights under Chapter 388.

*Smith* analyzed whether violations of Chapter 388 constituted a "public policy" for purposes of a common law *Parnar* claim[18]—a different context than whether a private cause of action exists for violations of the Chapter.  But, in answering that question in the affirmative, *Smith* reasoned that Chapter 388 created important rights that would support a *Parnar* claim if an employer retaliated against an employee for complaining about Chapter 388 violations.  It explained:

> Although HRS §§ 388-10 and -11 provide the employee with remedies for the employer's failure *to fully compensate the employee*, their terms do not provide relief for an employee discharged for attempting to assert his or her rights under the statute.  *Instead, the statute authorizes the [DLIR] to enforce Chapter 388 through (1) administrative investigations and hearings; or (2) specific actions for penalties or for an injunction to halt the employer's business operation until he satisfies any judgment for unpaid wages (§ 388-9).*  Further, the employer is civilly liable to the employee *for unpaid wages (§ 388-10(a))*; and may incur criminal penalties (§ 388-10(b)).  *An employee is authorized to sue for unpaid wages (§ 388-11(a))*; and certain categories of employees may assign their claims for unpaid wages to the Director for collection (§ 388-11(b)).

---

[18]  *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (1982), generally recognized that an employer's otherwise unfettered right to terminate an at-will employee may be subject to a narrow common law wrongful discharge exception for violations of "a clear mandate of public policy."  *Id.* at 380, 652 P.2d at 631.  A *Parnar* claim, however, is not recognized if "the statutory or regulatory provisions which evidence the public policy themselves provide a remedy for the wrongful discharge . . . ."  *Ross v. Stouffer Hotel Co.*, 76 Haw. 454, 464, 879 P.2d 1037, 1047 (1994) (quoting *Lapinad v. Pac. Oldsmobile-GMC, Inc.*, 679 F. Supp. 991, 993 (D. Haw. 1988)).

10 Haw. App. at 261, 865 P.2d at 175 (emphases added). *Smith* thus supports

Defendants' argument that the *DLIR* enforces timing and recordkeeping provisions

of Chapter 388, although an employee is otherwise authorized to sue under § 388-

11(a) for *amounts* of unpaid wages due, e.g., amounts improperly withheld under

§ 388-6.

Accordingly, the court GRANTS the Motion to Dismiss and

DISMISSES (without leave to amend) Count III's claims asserting that Defendants

(1) failed to pay wages on a timely basis under HRS § 388-2(b); (2) failed to

furnish wage statements under HRS § 388-7(4); (3) failed to pay wages at least

twice during a calendar month under HRS § 388-2(a); (4) "terminated one or more

Plaintiffs . . . without providing all wages due" after being discharged, under HRS

§ 388-3(a); and (5) failed to pay wages on a timely basis under HRS § 388-3(b). If

Plaintiffs have a valid reason to seek relief under those sections, Chapter 388

authorizes the DLIR to enforce those provisions.

To the extent Count III also asserts a claim for unpaid wages under

§ 388-6, the court STRIKES it as duplicative of Count V. Any factual allegations

presently pled in Count III that pertain only to § 388-6 may be re-alleged in Count

V as explained later. That is, any relief sought under § 388-6 must be sought in a

single count (Count V), not split among multiple counts.

D.    **Count IV:  "Failure to Provide Accurate and Specific Commission Agreements in Violation of [HRS] § 388-7" (Alleged against all Defendants except Joseph Berger)**

Like Count III, Count IV alleges a violation of a provision of Chapter 388, specifically that Defendants failed to provide "commission agreements" in compliance with HRS § 388-7(1).  Section 388-7(1) requires an employer to "[n]otify each employee in writing, at the time of hiring of the rate of pay, and of the day, hour, and place of payment."  The CSAC alleges that § 388-7(1) requires employers to provide notification of a commission agreement, if paid by commission, and that any agreements provided by Defendants did not include the statutory requirements.  CSAC ¶¶ 269, 272, ECF No. 166 at PageID.6158–6159. Based upon such a violation, Count IV seeks "administrative penalties, back pay, damages equal to the amount of unpaid wages and interest at a rate of six percent per year, and reasonable attorneys' fees and costs."  CSAC ¶ 274, ECF No. 166 at PageID.6159.

Count IV, however, fails for the same reason as Count III—there is no private cause of action to enforce alleged violations of § 388-7.  *See* HRS § 388-9(a) ("The [DLIR] shall enforce and administer this chapter . . . ."); *In re Wal-Mart*, 490 F. Supp. 2d at 1129–30 ("Neither § 388-2 nor § 388-7 provide an explicit private cause of action. . . . The fact that Hawaii made specific provisions for private enforcement for the failure to pay wages but not for record keeping

violations within the same chapter suggests Hawaii did not intend for an implied right of action under § 388-2 or § 388-7."); *Morangelli*, 922 F. Supp. 2d at 287 n.7 (agreeing with *In re Wal-Mart* that Hawaii did not intend to provide a right of action to enforce § 388-7) (citing *In re Wal-Mart*).  Count IV is DISMISSED without leave to amend.

**E.    Count V:  "Unlawful Withholding of Wages and Paycheck Deductions in Violation of [HRS] § 388-6" (Alleged against all Defendants except Joseph Berger)**

**1.    *Section 388-11(a) Allows Claims for "Unpaid Wages"***

Count V alleges violations of HRS § 388-6, which as partly noted earlier when analyzing Count III, provides in relevant part:

> No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee, provided that the following may not be so authorized, or required to be borne by the employee:
>
> * * * *
>
> (5)  Losses due to defective or faulty workmanship, lost or stolen property, damage to property, default of customer credit, *or nonpayment for goods or services received by customer if such losses are not attributable to*

> *employee's wilful or intentional disregard of employer's*
> *interest . . . .*

(Emphasis added).  Count V makes claims for amounts owed that allegedly fit

within § 388-6, including that italicized portion of § 388-6(5).  In particular, Count

V alleges:

> Defendants offered a wide array of discounts,
> promotional credits, and memberships to various
> clientele, including but not limited to Spa Club Members,
> Elite Members, Kamaʻaina (i.e., residents of Hawaiʻi),
> and employees.  Defendants also frequently discounted
> guest and client's Spa services through guest satisfaction
> discounts, spa club trial discounts, ohana special
> discounts, and other promotional discounts.  These
> discounts and credits were unilaterally applied by
> Defendants to reduce the Plaintiffs' and the Putative
> Class Members' commissions but were not applied to
> Defendants' portion of the revenues from services
> offered.

CSAC ¶ 278, ECF No. 166 at PageID.6160.  And it alleges:

> Defendants unlawfully deducted from Plaintiffs' and the
> Putative Class Members' paychecks for linen fees,
> gratuities to employees, and comped services to clients.
> From the 20% automatic gratuity paid to Plaintiffs and
> the Putative Class Members for services performed,
> Plaintiffs and the Putative Class Members received only
> 17%.  Defendants did not provide notice of this
> deduction from the gratuity amount within a commission
> agreement, nor did they inform guests and clients that
> Plaintiffs and the Putative Class Members did not receive
> all gratuities for the services they performed.

*Id.* ¶ 280, ECF No. 166 at PageID.6161.[19]

As mentioned earlier when analyzing Count III, HRS § 388-11(a) allows an individual to bring an action "for unpaid wages," which includes claims for wages allowed under § 388-6. *See, e.g.*, *Kyne v. Ritz-Carlton Hotel Co.*, 2011 WL 6030978, at *3 (D. Haw. Dec. 2, 2011) ("[A]n employee may recover under H.R.S. §§ 388-6, 388-10, and 388-11, for the failure of a hotel to distribute service charges to employees . . . ."); *Villon v. Marriott Hotel Servs., Inc.*, 130 Haw. 130, 135, 306 P.3d 175, 180 (2013) (same); *Misc. Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp.*, 661 F.2d 776, 783 & nn.18 & 19 (9th Cir. 1981) ("[Section 388-6] . . . provides for private actions by employees to 'recover unpaid wages.'").

Defendants Waldorf=Astoria Management LLC, GW Manager LLC, and BRE Iconic GW Owner LLC do not move to dismiss Count V. But individual

---

[19]  And as noted earlier, Count III alleges as to § 388-6 in part:

> Defendants unlawfully deducted from Plaintiffs' and the Putative Class Members' paychecks for linen fees, gratuities to employees, discounts and memberships offered to clients, services provided to employees and comped services to clients. Defendants also did not reimburse Plaintiffs and Putative Class Members for costs and expenses related to their employment, including but not limited to, expenses related to mileage, travel, meals, uniforms, and grooming and appearance standards.

CSAC ¶ 264, ECF No. 166 at PageID.6157–6158. Again, to the extent those allegations in Count III warrant recovery under § 388-6, Plaintiffs may re-allege them in Count V if relief is still being sought for those allegations.

Defendants Oliver and Santiago, as well as Defendant BRE Hotels & Resorts LLC, *do* seek to dismiss Count V. They argue that the CSAC does not allege enough to render them "employers" for purposes of § 388-6 (and other Counts), and thus they cannot be liable for any actionable violations. And BRE Hotels & Resorts LLC argues that it—as only an "asset manager"—likewise cannot be an employer.[20] The court agrees with these Defendants, but only in part.

### 2.    *Whether Defendants Are "Employers"*

Like other parts of Chapter 388, § 388-6 prohibits withholding of certain amounts by an "employer," and under HRS § 388-1, an "employer" is defined as:

> "Employer" includes any individual; partnership; association; joint-stock company; trust; corporation; the personal representative of the estate of a deceased individual or the receiver, trustee, or successor of any of the same; general contractor, for purposes of wages owed to the employees of a subcontractor, as those terms are defined in section 388-11.5; *employing any person*, but shall not include the State or any political subdivision thereof or the United States.

---

[20] These Defendants make the same argument as to Hawaii-law claims in Counts I, II, III, IV, and VI, and as to the FLSA claim in Count XI. But those Counts are dismissed on other grounds as to all Defendants. Any amendment to Counts II and XI, which are dismissed with leave to amend, must also take into account the analysis here as to these Defendants.

(Emphasis added.)  And the section defines "employ" to mean "to permit or suffer

to work."  HRS § 388-1.  These definitions are similar to the definition of

"employer" for purposes of the FLSA, which provides:

> "Employer" includes any person acting directly or
> indirectly in the interest of an employer in relation to an
> employee and includes a public agency, but does not
> include any labor organization (other than when acting as
> an employer) or anyone acting in the capacity of officer
> or agent of such labor organization.

29 U.S.C. § 203(d).[21]  And the FLSA also defines "employ" to mean "to suffer or

permit to work."  29 U.S.C. § 203(g).  Given these similarities, the court looks to

federal case law for guidance in interpreting § 388-1.  *See Davis v. Four Seasons*

*Hotel Ltd.*, 810 F. Supp. 2d 1145, 1158–59 (D. Haw. 2011) (looking to FLSA

definition in interpreting § 388-1); *Gurrobat v. HTH Corp.*, 133 Haw. 1, 19, 323

P.3d 792, 810 (2014) (same).

"[T]he definition of 'employer' under the FLSA is not limited by the

common law concept of 'employer,' but is to be given an expansive interpretation

in order to effectuate the FLSA's broad remedial purposes."  *Boucher v. Shaw*, 572

F.3d 1087, 1090 (9th Cir. 2009) (citations and quotation marks omitted).  "The

---

[21] This definition of "employer" in the FLSA does not apply to FLSA's antiretaliation
provision, 29 U.S.C. § 215(a)(3)—discussed in Count XV—which applies to "any person."  *See*
*Arias v. Raimondo*, 860 F.3d 1185, 1189 (9th Cir. 2017) ("Controversies under FLSA sections
206 and 207 that require a determination of primary workplace liability for wage and hour
responsibilities and violations, on one hand, and controversies arising from retaliation against
employees for asserting their legal rights, on the other, are as different as chalk is from cheese.").
Perhaps for that reason, these Defendants do not raise this argument as to Count XV.

determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'" *Id.* at 1091 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). "The touchstone is the 'economic reality' of the relationship." *Id.* (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). And so, *Boucher* concluded that "[w]here an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Id.* (quoting *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (en banc)). Courts consider "whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Myoungchul Shin v. Uni-Caps, LLC*, 2014 WL 12853912, at *2 (C.D. Cal. Dec. 17, 2014) (citing *Lambert*, 180 F.3d at 1001–02).

Applying that test, *Myoungchul Shin* dismissed FLSA claims against individuals because the complaint alleged only that each was an "agent, representative, and officer of [the company]." 2014 WL 12853912, at *3. "[M]erely alleging a defendant's status in an organization is wholly insufficient to demonstrate that the defendant qualified as an 'employer' within the meaning of

the FLSA." *Id.* (citations omitted).  In contrast, *Walsh v. SL One Global, Inc.*,
2022 WL 3327445, at *4–5 (E.D. Cal. Aug. 11, 2022), reasoned that—although
appearing to acknowledge that simply alleging that an individual defendant was an
"agent [that] acted directly or indirectly in the interests of the corporate defendants
in relation to their employees" would be insufficient—it was enough to allege
specifically that the individual was a "[g]eneral [m]anager" of the business who
fired, hired and disciplined employees.  *Walsh* reasoned that "the title 'General
Manager' connotes substantial authority, with responsibilities similar to those set
forth in *Lambert*.  *Id.* at *5.

Here, the CSAC alleges that "Bart Santiago is the Director of Finance
at Grand Wailea," and "John Paul Oliver is the Managing Director at Grand
Wailea."  CSAC ¶¶ 144–145, ECF No. 166 at PageID.6128.[22]  Elsewhere in the
CSAC (although in a section discussing "RICO Allegations"), Plaintiffs allege:

> Upon information and belief, the individual Defendants
> exerted control over the terms and conditions of the
> Plaintiffs' and the Putative Class Members' employment
> and acted as key decision-makers in knowingly and
> willfully misclassifying the Spa workers.  The individual
> Defendants also directly and personally profited from the
> Spa workers' misclassification by virtue of being top
> executives at corporations that were profiting at greater
> margins due to their unlawful employment practices.

---

[22]  It also alleges that "Allan Federer is the former Managing Director at Grand Wailea,"
CSAC ¶ 146, ECF No. 166 at PageID.6128, although, again, Federer has not been served and is
not a movant.

*Id.* ¶ 160, ECF No. 166 at PageID.6132.  Likewise, the CSAC further alleges that:

> Defendants drafted and offered the Plaintiffs and Putative
> Class Members the Contractor Agreement as a mandatory
> condition of employment and continued service that
> willfully misclassified the Spa workers as independent
> contractors and dictated the rates Defendants paid the
> Spa workers.

*Id.* ¶ 161, ECF No. 166 at PageID.6132–6133.  It specifies that "Defendants Oliver

and Federer personally executed each and every such Contractor Agreement on

behalf of Defendants during their respective tenures."  *Id.* ¶ 162, ECF No. 166 at

PageID.6133.  Finally, it alleges:

> Upon information and belief, Defendants Berger, Oliver,
> and Santiago currently make financial and personnel
> decisions for Grand Wailea, including the Spa.
> Formerly, Federer exercised the same degree of control
> as Oliver.

*Id.* ¶ 164, ECF No. 166 at PageID.6133.

The allegations as to Oliver are specific enough to meet the definition

of "employer."  He signed each of the Contractor Agreements at issue in this

action.  *Id.* ¶ 162, ECF No. 166 at PageID.6133; *see also, e.g.*, ECF No. 170-4 at

PageID.4759.  He is the Maui-based Managing Director of the Hotel.  *See Walsh*,

2022 WL 3327445, at *4–5 (finding allegations regarding a general manager

empowered to hire, fire, and discipline employees to be sufficient).  There are thus

enough factual details alleged to make a plausible claim that he could be an

"employer" for purposes of the Hawaii wage and hour claims (and under the
FLSA's wage claims).

But the allegations are insufficient as to Santiago. He is only alleged
to be a finance director. And there is nothing that necessarily makes a finance
director responsible for individual or overall employment-classification decisions.
The allegation in paragraph 161 of the CSAC that "Defendants drafted and offered
the Plaintiffs and Putative Class Members the Contractor Agreement" is too
general to implicate Santiago specifically—it's alleged against all Defendants. *See*
*Myoungchul Shin*, 2014 WL 12853912, at *3 ("[M]erely alleging a defendant's
status in an organization is wholly insufficient . . . ."). Likewise, the allegation in
paragraph 164 that "[u]pon information and belief, Defendants Berger, Oliver, and
Santiago currently make financial and personnel decisions for Grand Wailea" is
overly formulaic and is based only on "information and belief." As this court
explained in *Klohs v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 1253 (D. Haw.
2012):

> Here, it is insufficient merely to plead "upon information
> and belief" . . . . *See, e.g.*, *Solis v. City of Fresno*, 2012
> WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the
> post-*Twombly* and *Iqbal* era, pleading on information and
> belief, *without more*, is insufficient to survive a motion to
> dismiss for failure to state a claim.") (citing *Twombly*,
> 550 U.S. at 570) (emphasis added). That is, although
> allegations "upon information and belief" may state a
> claim after *Iqbal* and *Twombly*, a claim must still be
> based on factual content that makes liability plausible,

> and not be "formulaic recitations of the elements of a
> cause of action." *Long v. Yomes*, 2011 WL 4412847, at
> *4 (D. Haw. Sept. 20, 2011) (quoting *Twombly*, 550 U.S.
> at 555) (editorial mark omitted).

*Id.* at 1259 n.2.  Claims against Santiago are DISMISSED with leave to amend.

Finally, for similar reasons, the claims against BRE Hotels & Resorts LLC also fail.  The only factual mention of BRE Hotels & Resorts LLC in the CSAC is that it is "Blackstone Real Estate Advisors' U.S. hospitality portfolio company and currently is the registered owner of the Grand Wailea via BRE Iconic Holdings, LLC."  CSAC ¶ 143, ECF No. 166 at PageID.6128.  There are no allegations—other than the general assertion in paragraph 161 that "Defendants drafted and offered the Plaintiffs and Putative Class Members the Contractor Agreement"—that BRE Hotels & Resorts itself did anything, much less that it meets a definition of "employer" for purposes of this action under either state or federal law.  Thus, Count V (and other Counts of the CSAC) is DISMISSED as to BRE Hotels & Resorts LLC.

Although the dismissal of BRE Hotels & Resorts LLC is with leave to amend, Plaintiffs should carefully consider whether they have any basis to name BRE Hotels & Resorts LLC as a Defendant in any amended complaint, given Defendants' argument that they have repeatedly informed Plaintiffs (with evidence) that BRE Hotels & Resorts LLC is merely a company that manages hotel assets of a private equity fund with no involvement in the events of this action.

*See, e.g.*, ECF No. 170-2 at PageID.4739 (Senior Vice President of BRE Hotels & Resorts attesting that "BRE Hotels & Resorts LLC does not own or operate, and has not owned or operated, the Grand Wailea at any time in the time period relevant to this lawsuit"); ECF No. 86-2 at PageID.1428 (same).

In sum, the Motion is DENIED as to Oliver, but GRANTED (with leave to amend) as to Count V against Santiago and BRE Hotels & Resorts LLC. Count V otherwise remains as to the other Defendants who did not move to dismiss Count V.

## F.    Count VI:  "Failure to Provide and Maintain Accurate Wages Statements in Violation of [HRS] § 388-10" (Alleged against all Defendants except Joseph Berger)

Count VI alleges that Defendants "did not accurately provide and retain" statements which should have included, among other missing items: "(1) Total hours worked; (2) Overtime hours; (3) Straight-time compensation; (4) Overtime compensation; (5) Other compensation; (6) Total gross compensation; (7) Amount and purpose of each deduction; (8) Total net compensation; (9) Date of payment; and (10) Pay period covered."  CSAC ¶ 286, ECF No. 166 at PageID.6162.  Plaintiffs claim that "[a]s a result of Defendants' violations, the Plaintiffs and the Putative Class Members are required to undertake the task of attempting to reconstruct Defendants' incomplete and inaccurate time

and pay records to ensure that they are paid for all hours worked as required by
Hawaiʻi law." *Id.* ¶ 289, ECF No. 166 at PageID.6162–6163.

Like other sections of the CSAC, Count VI partly cites the wrong
statute.  The title of Count VI states that Defendants failed "to Provide and
Maintain Accurate Wage Statements in Violation of [HRS] § 388-10."  ECF No.
166 at PageID.6161.  But there are no wage-statement requirements in § 388-10.
Rather, Count VI later cites, and is based on, HRS § 387-6, which—in addition to
requiring employers to post notices explaining legal rights in conspicuous places
under § 387-6(b)—delineates numerous recordkeeping and wage statement or "pay
stub" requirements.  *See* HRS §§ 387-6(a) & (c).  In that regard, § 387-6 is similar
to § 388-7(4).  Count VI seeks penalties, fees, and costs "under all applicable
provisions of law, including but not limited to [HRS] § 387-12 and § 388-11(c)."
*Id.* ¶ 292, ECF No. 166 at PageID.6163.[23]

But, as with Counts III and IV, Plaintiffs lack a private right of action
to seek relief for violations of § 387-6.  *See* HRS § 387-5 ("The [DLIR] shall
enforce [Chapter 387] . . . .");  *cf. In re Wal-Mart*, 490 F. Supp. 2d at 1129–30
("The fact that Hawaii made specific provisions for private enforcement for the

---

[23]  Count VI also states that "Defendants are liable in an amount to be proven at trial, but
not less than a sum equal to the amount of unpaid wages and interest at a rate of six per cent per
year from the date that the wages were due."  CSAC ¶ 290, ECF No. 166 at PageID.6163.
Whether or not Defendants might be liable for unpaid wages, this does not appear to be a remedy
available for violations of § 387-6 (as opposed to a different statute).

failure to pay wages but not for record keeping violations within the same chapter

suggests Hawaii did not intend for an implied right of action" under § 387-6);

*Morangelli*, 922 F. Supp. 2d at 287 n.7 (citing *In re Wal-Mart*).  Although § 387-

12(c) provides a private right of action in court to recover for liability under

Chapter 387, such an action is limited to violations of §§ 387-2 or 387-3 for

"unpaid minimum wages or unpaid overtime compensation, and in case of wilful

violation in an additional equal amount as liquidated damages."  HRS § 387-12(b).

That is, Chapter 387 does not provide a private cause of action for a violation of

§ 387-6.

In short, Count VI is DISMISSED without leave to amend.

**G.     Counts VII, VIII, IX, and X:  "Failure to Provide (1) Temporary
         Disability Insurance, (2) Employment Security Benefits, (3) Prepaid
         Group Health Insurance, and (4) Workers' Compensation Benefits"
         (All Counts alleged against all Defendants except Joseph Berger)**

Next, aside from rights in HRS Chapter 388, Counts VII ("Failure to

Provide Temporary Disability Insurance"); VIII ("Failure to Provide Employment

Security Benefits"); IX ("Failure to Provide Prepaid Group Health Insurance for

Employees"); and X ("Failure to Provide Workers' Compensation Benefits"), all

fail for the same reasons that Counts III, IV, and VI fail—lack of a private cause of

action to enforce alleged violations.

Count VII's claim for deprivation of temporary disability insurance is

based on rights provided in HRS Chapter 392.  Plaintiffs cite a right provided in

HRS § 392-25, and they seek penalties and an injunction against Defendants as set forth in § 392-41.  *See* CSAC ¶ 298, ECF No. 166 at PageID.6164.  But § 392-21.5 provides that "[t]he [DLIR] shall have original jurisdiction over all controversies and disputes over employment and coverage under [Chapter 392]."  *See also* HRS § 392-91 ("The director shall enforce the provisions of this chapter.").  Plaintiffs have cited no provision of HRS Chapter 392 that authorizes an individual employee to bring a civil cause of action under that chapter in any court for a loss of such benefits (and the court has not found such a provision).  Plaintiffs have cited HRS § 392-41 as authority for the award of penalties and injunctive relief, but that section does not mention penalties or injunctive relief—although § 392-47 does.  However, § 392-47 authorizes such relief "to be recovered in an action brought in the discretion of the director," and states that an "action for injunction [is] to be prosecuted by the attorney general or any county attorney if so requested by the director."  In short, Count VII is DISMISSED without leave to amend for lack of a private cause of action enforceable in this court.  *See, e.g.*, *Larson*, 2010 WL 520630, at *7.

Likewise, Count VIII seeks penalties and delinquent contributions based on a failure of Defendants to pay employment benefits and contributions in violation of HRS Chapter 383.  For such rights, Plaintiffs cite HRS §§ 383-73 and 383-142.  *See* ECF No. 166 at PageID.6164–6165.  Neither section provides a

private cause of action. And the opposite is true—§ 383-71(a), regarding "civil

actions," provides "[if] any employer is in default in the payment of any

contributions required to be paid by the employer pursuant to [HRS Chapter 383],

the [DLIR] may . . . proceed to collect payment . . . ." *See also* HRS § 383-91(a)

("The [DLIR] . . . shall administer this chapter . . . pursuant to chapter 371."). No

provision is made for private enforcement of Chapter 383. Count VIII is

DISMISSED without leave to amend.[24]

---

[24] In their Opposition to dismissal of some of their statutory claims, Plaintiffs also make a strange argument that "the relevant statutes only apply to employees" and that they, as "misclassified independent contractors," would lack standing to file claims to enforce these statutes with the DLIR. ECF No. 198 at PageID.5782–5783. This double-edged argument fails; the premise of Plaintiffs' entire action is that they were employees entitled to rights under the FLSA, and sections of HRS Chapters 387 and 388, such as minimum wages and overtime. They cannot argue simultaneously that they were employees for some purposes but were independent contractors for others under the same statutes.

This argument might be directed to claims alleging, for example, that—because of the misclassification—they were deprived of the *opportunity* to seek unemployment benefits under HRS Chapter 383. At oral argument, Plaintiffs argued that some Plaintiffs sought unemployment benefits as instructed by Defendants, but the State of Hawaii denied benefits because they did not qualify as they were classified as independent contractors. But if that is the basis of such a claim for unemployment benefits or contributions, it is a poor fit under Chapter 383, which in any event does not provide a private cause of action.

In this regard, although Plaintiffs state in their Opposition that "[a]lternatively, Plaintiffs could amend their complaint, for example, to state a claim under ERISA and other federal laws," ECF No. 198 at PageID.5785, they have not actually sought further leave to amend to do so. Moreover, at this stage (after three versions of a complaint), the court will not grant leave to amend for Plaintiffs to add *new* legal causes of action—as opposed to granting leave to amend, where not clearly futile, to attempt to add *factual* allegations to support *existing* theories. *See R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1124 (9th Cir. 2011) ("[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark.") (quoting *Doe v. Howe Military Sch.*, 227 F.3d 981, 990 (7th Cir. 2000)).

Count IX fails for the same reason.  Count IX seeks health insurance benefits that Plaintiffs claim they lost because of the alleged misclassification. They seek benefits under HRS Chapter 393, citing §§ 393-11 and 393-33.  *See* CSAC ¶ 309, ECF No. 166 at PageID.6166.  But § 393-31 provides that "[e]xcept as otherwise provided in section 393-7, the *director* shall administer and enforce this chapter."  (Emphasis added.)[25]  And, although § 393-33 provides for penalties for failure to comply with certain sections of Chapter 393, it states that "[t]he penalty shall be assessed under rules and regulations promulgated pursuant to [HRS] chapter 91[26] and shall be collected by the director . . . ."  HRS § 393-33(a). In turn, Hawaii Administrative Rule § 12-12-76 provides:  "Penalties under section 393-33, HRS, shall be assessed by the director or a designated representative, after hearings held in accordance with chapter 91, HRS."  Further, like Chapter 392, an "action for injunction [is] to be prosecuted by the attorney general or any county attorney if so requested by the director."  HRS § 393-33(c).  As with most of the other state-law claims for certain rights, no provision is made for private enforcement of Chapter 393.  For this reason, Count IX is DISMISSED without leave to amend.

---

[25]  Section 393-7 does not provide a private cause of action.  Rather, it refers to a "prepaid health care advisory council" apparently because it shares in the administration of HRS Chapter 393.

[26]  HRS Chapter 91 is the Hawaii Administrative Procedures Act.

Finally, Count X, seeking relief for a "Failure to Provide Workers' Compensation Benefits," ECF No. 166 at PageID.6166, likewise plainly fails. "[T]he State of Hawaii Department of Labor and Industrial Relations has exclusive authority to determine workers' compensation matters . . . ." *Larson*, 2010 WL 520630, at *7; *see also Taylor v. Standard Ins. Co.*, 28 F. Supp. 2d 588, 590 (D. Haw. 1997) ("[A]ll matters regarding the entitlement of worker's compensation benefits are within the *exclusive* original jurisdiction of the DLIR."). Count X is DISMISSED without leave to amend for lack of a private cause of action.

## H.    Count XI:  "Failure to Pay Overtime and Minimum Wage in Violation of the [FLSA], 29 U.S.C. § 201 et seq."  (Alleged against all Defendants except Daniel Berger)

### 1.    *The Merits of Count XI*

Count XI is brought as a collective action under 29 U.S.C. § 216(b)[27] for violations of minimum wage and overtime provisions of "29 U.S.C. § 201 et

---

[27] In relevant part, § 216(b) provides:

(b)  Damages; right of action; attorney's fees and costs; termination of right of action.

Any employer who violates the provisions of section 206 or section 207 of this title [29 U.S.C. §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in

(continued . . . )

seq., including 29 U.S.C. § 207(a)."  CSAC ¶ 328, ECF No. 166 at PageID.6169.

Specifically, the CSAC alleges:

> Plaintiffs bring the FLSA collective claim described
> below on behalf of themselves and all other persons
> similarly situated pursuant to 29 U.S.C. §§ 207 and
> 216(b), specifically, on behalf of: all of Defendants'
> commissions paid staff who worked at the Spa within the
> three years preceding the filing of this action, up to the
> present and who Defendants misclassified as independent
> contractors and (1) failed to compensate for time worked
> over forty hours per week at the required overtime rate
> and/or (2) failed to pay the prevailing minimum wage for
> all hours worked . . . .

CSAC ¶ 321, ECF No. 166 at PageID.6168.  Plaintiffs also allege that the FLSA

violations were "willful" within the meaning of 29 U.S.C. § 255(a).  *Id.* ¶ 328, ECF

No. 166 at PageID.6169.  Alleging "willfulness" has the effect of lengthening the

statute of limitations for FLSA claims from two to three years.  *See Dent v. Cox

Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007) ("[A]n [FLSA]

action must be commenced 'within two years after the cause of action accrued,'

unless the cause of action arises 'out of a willful violation' . . . [in which case] the

limitations period is extended to three years.") (quoting 29 U.S.C. § 255(a)).  This

----

behalf of himself or themselves and other employees similarly
situated.  No employee shall be a party plaintiff to any such action
unless he gives his consent in writing to become such a party and
such consent is filed in the court in which such action is brought.
The court in such action shall, in addition to any judgment awarded
to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be
paid by the defendant, and costs of the action. . . .

three-year limitation period is reflected in paragraph 321 of the CSAC (alleging that the FLSA claim is "on behalf of . . . all of Defendants' commissions paid staff who worked at the Spa within the three years preceding the filing of this action, up to the present"). ECF No. 166 at PageID.6168.

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), explains some of the "terminology and procedures specific to . . . the collective action mechanism" under § 216(b). *See id.* at 1099–102. And, as *Campbell* discusses, Plaintiffs here have satisfied an initial requirement in § 216(b) to file statements affirmatively "opting in" and consenting in writing to this action. *See* CSAC ¶ 323, ECF No. 166 at PageID.6168; *see also* ECF Nos. 31, 191.

But Count XI's FLSA claim fails for the same lack of plausibility that the court extensively analyzed with Count II. As with Count II, Count XI fails to allege any specific instance where any particular Plaintiff was not paid a minimum wage or worked more than 40 hours a week without being paid overtime. *See Landers*, 771 F.3d at 645–46. In this regard, the court follows the same reasoning set forth earlier as to Count II. Count XI is DISMISSED without prejudice. And, as with Count II, the court will allow Plaintiffs to amend Count XI to attempt to

comply with *Landers* (as well as to meet other reasons identified for dismissal, such as those discussed next).[28]

### 2. The Statute of Limitations Bars Count XI as to 14 Plaintiffs

Defendants also partly challenge Count XI on statute-of-limitations grounds, pointing out numerous Plaintiffs who—by the plain allegations of the CSAC—last worked at the Hotel over three years ago. These Plaintiffs not only fail to meet the timeliness requirements of § 255(a), they fall outside the time period specifically alleged in Count XI, which is brought "on behalf of . . . all of Defendants' commissions paid staff who worked at the Spa within the three years preceding the filing of this action . . . ." CSAC ¶ 321, ECF No. 166 at PageID.6168.

"A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980)).

---

[28] As discussed when analyzing Count II, under Hawaii law, the FLSA's provisions preclude a claim for overtime wages under HRS § 387-3. *See Morangelli*, 922 F. Supp. 2d at 287 ("Under [HRS] § 387-1, an employee gets the benefit of either the FLSA or the Hawaii minimum wage and overtime provisions, whichever are better . . . ."). And under that logic, although an FLSA claim for minimum wages might still be possible, it makes sense for Plaintiffs to pursue relief for minimum wage violations under potentially more beneficial Hawaii law (§ 387-2) in Count II, rather than under the FLSA in Count XI. *See also* 29 U.S.C. § 218(a) ("No provision of [the FLSA] . . . shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under [the FLSA] . . . .").

Dismissal is proper "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (citation and quotation marks omitted).

Here, the Motion identifies 25 Plaintiffs who allege they last worked for the Hotel more than three years before February 23, 2023 (the date this case was first filed). *See* ECF No. 169 at PageID.4687 & nn.9–10. These 25 Plaintiffs are: Geri Misty Boteilho-Dougherty, Gail DeCoite, Stephanie Haddad, Carly Heims, Joni Henkel, Torrey Hyman, Francine Johansen, Kalena Kaili-Thomas, Brooke Lee, Leslie McGuire, Jean Muldoon, Maria Norwood, Firmiana Ovando, Barbara Timo, Amber Vaughn-Bal, James Walsh, Marina Alexeeva, Heather Causey, Laura Gleason, Marilyn Marano, Carla Moore, Lisa Lujan Shaw, Jay-R Tagayuna, Julie Taketa, and Tara Walsh.[29] *See id.*; *see also* ECF No. 166 at PageID.6116–6126.

Of these 25 Plaintiffs, however, 10 of them—Marina Alexeeva, Geri Misty Boteilho-Dougherty, Heather Causey, Carly Heims, Joni Henkel, Torrey Hyman, Francine Johansen, Marilyn Marano, Jay-R Tagayuna, and Amber Vaughn-Bal—have already been compelled to arbitrate their claims. *See* ECF No.

---

[29] As noted earlier, on January 6, 2025, Plaintiff Brooke Lee stipulated with Defendants to dismiss her claims with prejudice. *See* ECF No. 227.

219 at PageID.6106.  On December 11, 2024, their claims were severed from this action, and they have been dismissed in favor of individual civil actions.  *See* ECF No. 225.  And, as mentioned earlier, nothing in this Order, including the court's rulings on statute-of-limitations grounds, necessarily applies to these 10 Plaintiffs.

Thus, this aspect of the Motion is now directed at the FLSA claims of the following 14 Plaintiffs (not including Brooke Lee):  Gail DeCoite, Stephanie Haddad, Kalena Kaili-Thomas, Leslie McGuire, Jean Muldoon, Maria Norwood, Firmiana Ovando, Barbara Timo, James Walsh, Laura Gleason, Carla Moore, Lisa Lujan Shaw, Julie Taketa, and Tara Walsh.

"Section 255 of Title 29 of the United States Code supplies the statute of limitations for actions to enforce any cause of action for compensation due under the FLSA."  *Dent*, 502 F.3d at 1144.  "In the case of a willful violation, the limitations period is extended to three years."  *Id.*  "A new cause of action accrues at each payday immediately following the work period for which compensation is owed."  *Id.* (citing *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1113 (9th Cir. 2006)).

Given that accrual definition, the FLSA claims of the 14 Plaintiffs are all time-barred because the claims were brought more than three years after their last "payday immediately following the work period for which compensation is owed."  *Duarte v. MZR Inc.*, 2010 WL 11586755, at *5 (N.D. Cal. July 8, 2010) ("Plaintiff's claim is timely only for unpaid overtime wages owed for pay periods

in the three-year period beginning on February 3, 2006—three years prior to filing

her Complaint."); *Batiz v. Am. Com. Sec. Servs*., 776 F. Supp. 2d 1087, 1098 (C.D.

Cal. 2011) ("[U]nder the FLSA's three-year statute of limitations, Narayan's

claims must have accrued no later than January 18, 2005. . . .  As Defendants did

not employ Narayan after 2004, any claims accrued more than three years before

Narayan joined the action and are, accordingly, barred.").  They also do not fit

within the very class of Plaintiffs that the CSAC defines in Count XI.  *See* CSAC

¶ 321, ECF No. 166 at PageID.6168 (alleging that XI is "on behalf of . . . staff who

worked at the Spa within the three years preceding the filing of this action, up to

the present").

In opposition, Plaintiffs argue that their claims are not barred by virtue

of the discovery rule in HRS § 657-7.  *See* ECF No. 198 at PageID.5801.

"Pursuant to the 'discovery rule,' a cause of action 'accrues under section 657-7

and the statute of limitations commences, when a plaintiff has actual or imputed

knowledge of: (1) his injury; (2) the defendant's negligence or breach of legal duty

and (3) the causal connection between the two.'" *Dural v. City & County of*

*Honolulu*, 658 F. Supp. 3d 855, 866 (D. Haw. 2023) (quoting *In re Hawaii Federal*

*Asbestos Cases*, 854 F. Supp. 702, 706 (D. Haw. 1994)).

But § 657-7 applies to certain tort actions under Hawaii common law,

not to federal claims under the FLSA.  *See Navaja v. Honolulu Acad. of Arts*, 2016

WL 1559566, at *4 (D. Haw. Apr. 18, 2016) (rejecting the discovery rule for

FLSA claims).  As *Navaja* reasoned:

> Plaintiff argues that his FLSA claims were timely
> because they did not accrue until he discovered them
> around April 10, 2014. . . .  Plaintiff is incorrect.  The
> Ninth Circuit has stated that a new FLSA claim "accrues
> at each payday immediately following the work period
> for which compensation is owed."

*Id.* (quoting *Dent*, 502 F.3d at 1144).  The court thus rejects this argument based on

Hawaii's discovery rule.

Plaintiffs have also argued that their claims are subject to fraudulent

concealment, i.e., equitable tolling.  *See* ECF No. 198 at PageID.5801 (citing

*Cunha v. Ward Foods, Inc*., 501 F Supp. 830, 837 (D. Haw. 1980) ("Under the

federal equitable tolling doctrine, active concealment of fraudulent conduct or

reasonable lack of discovery absent active concealment tolls the statute of

limitations. . . .") (citations omitted)).  But, as Defendants point out, fraudulent

concealment must be affirmatively pled, *see, e.g.*, *389 Orange St. Partners v.

Arnold*, 179 F.3d 656, 662 (9th Cir. 1999), and the CSAC lacks such pleading.

What's more, where the basis of equitable tolling is fraudulent concealment, it

must be pled with particularity under Rule 9(b).  As the Ninth Circuit has held:

> [F]raudulent concealment . . . halts the statute of
> limitations when there is active conduct by a defendant,
> above and beyond the wrongdoing upon which the
> plaintiff's claim is filed, to prevent the plaintiff from
> suing in time.  The plaintiff must demonstrate that he

57

> relied on the defendant's misconduct in failing to file in a
> timely manner and must plead with particularity the facts
> which give rise to the claim of fraudulent concealment.

*Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006) (citations and quotation marks omitted).

Here, although no facts demonstrating fraudulent concealment are pled with particularity, the court cannot say at this stage that a claim would be futile. Accordingly, the court DISMISSES the FLSA claims of the 14 identified Plaintiffs[30] without prejudice and with leave to amend to otherwise state plausible FLSA wage claims that are not time-barred. *See, e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (granting leave to amend complaint dismissed on statute-of-limitations grounds where it was not clear that complaint could not be amended to plead facts related to fraudulent concealment).

## I.    Count XII: "Violation of Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. 1961 et seq." (Alleged against Defendants Oliver, Federer, Santiago and Berger)

Next, Plaintiffs allege in Count XII "on behalf of themselves and similarly situated individuals, as a class action, pursuant to Fed. R. Civ. P. 23," that the individual Defendants (Oliver, Federer, Santiago and Berger) are liable for

---

[30]  Again, they are Gail DeCoite, Stephanie Haddad, Kalena Kaili-Thomas, Leslie McGuire, Jean Muldoon, Maria Norwood, Firmiana Ovando, Barbara Timo, James Walsh, Laura Gleason, Carla Moore, Lisa Lujan Shaw, Julie Taketa, and Tara Walsh.

violations of the federal RICO Act, 18 U.S.C. §§ 1961–1968.  *See* ECF No. 166 at

PageID.6170.  They allege that "[t]he Individual Defendants engaged in a pattern

of racketeering activity—specifically, performing the repeated and continuous

predicate acts of mail and wire fraud, from October 2021 to the present . . . ."

CSAC ¶ 336, ECF No. 166 at PageID.6171.  The mail and wire fraud allegedly

occurred:

> by virtue of their willful misrepresentations and
> misclassifications of each and every Plaintiff and
> Putative Class Members as an independent contractor in
> order to escape legally-mandated payment obligations
> towards worker's compensation benefits, disability
> benefits, health insurance, social security and retirement
> benefits, and employer tax contributions pursuant to the
> Federal Insurance Contributions Act (FICA) by
> fraudulently denying these benefits to which the Spa
> workers are and were lawfully entitled as statutory and
> common law employees.

*Id.*  "The Individual Defendants formed a conspiracy to defraud, and unjustly

profited from the misclassification scheme . . . ."  *Id.*

### 1.    *Civil RICO Legal Principles*

"Broadly speaking, there are two parts to a civil RICO claim [which

are] [t]he civil RICO violation . . . defined under 18 U.S.C. § 1962 [and] 'RICO

standing' . . . defined under 18 U.S.C. § 1964(c)."  *Painters & Allied Trades Dist.*

*Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1248 (9th

Cir. 2019).  A civil RICO violation consists of four elements: "a defendant must

participate in (1) the conduct of (2) an enterprise that affects interstate commerce

(3) through a pattern (4) of racketeering activity or collection of unlawful debt."

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir.

2014)) (citing 18 U.S.C. § 1962(c)).  And to establish "RICO standing" "a plaintiff

must show: (1) that his alleged harm qualifies as injury to his business or property;

and (2) that his harm was 'by reason of' the RICO violation."  *Painters*, 943 F.3d

at 1248 (quoting *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir.

2008)).[31]

   Among those elements, a "pattern . . . requires at least two acts of

racketeering activity" committed within 10 years of each other.  *Wieck v. CIT Grp.,*

*Inc.*, 308 F. Supp. 3d 1093, 1125 (D. Haw. 2018) (citing 18 U.S.C. § 1961(5)).

And "[r]acketeering activity is any act indictable under various provisions of 18

U.S.C. § 1961 and includes the predicate acts alleged in this case of mail fraud and

wire fraud under 18 U.S.C. §§ 1341 and 1343."  *Id.* (quoting *Forsyth v. Humana,*

*Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997), *overruled on other grounds by Lacey v.*

*Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc)).

---

[31] Courts sometime refer to the "by reason of" requirement as a fifth element of a RICO violation (proximate cause).  *See Eclectic Props.*, 997 F.3d at 997 ("In addition, the conduct must be (5) the proximate cause of harm to the victims."); *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1086 (9th Cir. 2002) (explaining that "additionally [a RICO plaintiff] must establish that (5) the defendant caused injury to plaintiff's business or property").

"In turn, 'wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud.'" *Id.* (quoting *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (brackets omitted)).  And "although 'the elements of knowledge and intent may be averred generally; the factual circumstances of the fraud itself require particularized allegations.'" *Id.* at 1126 (quoting *Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1158 (D. Haw. 2013)).  "In the absence of direct evidence of intent, the party asserting fraud must first prove the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and then, by examining the scheme itself the court may infer a defendant's specific intent to defraud." *Eclectic Props.*, 751 F.3d at 997 (citation and internal quotation mark omitted).  "Plaintiffs may establish that intent by showing the existence of a plausible fraudulent scheme." *Id.*  "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Wieck*, 308 F. Supp. 3d at 1127 (citation and internal quotation marks omitted).

"[Federal Rule of Civil Procedure] 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate

their allegations when suing more than one defendant and inform each defendant

separately of the allegations surrounding his alleged participation in the fraud." *Id.*

at 1126 (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 997–98 (9th Cir.

2011)). "In the context of a fraud suit involving multiple defendants, a plaintiff

must, at a minimum identify the role of each defendant in the alleged fraudulent

scheme." *Id.* (quoting *Corinthian Colls.*, 655 F.3d at 998). A complaint that

provides no "detail as to the nature of . . . [i]ndividual [d]efendants' involvement in

the fraudulent acts, but simply attributes wholesale all of the allegations against [a

corporation] to the [i]ndividual [d]efendants" is insufficient under Rule 9(b).

*Corinthian Colls.*, 655 F.3d at 998.

### 2. *Plaintiffs Fail to State a Plausible RICO Claim*

The individual Defendants argue that the fraud-based

misrepresentation claims lack plausibility because—in the same context as here,

with wage claims based on improper classification of workers as independent

contractors—the Ninth Circuit has held that RICO claims fail because such fraud

"cannot be predicated upon misrepresentations as to matters of law or

misrepresentations as to matters of law." *Miller v. Yokohama Tire Corp.*, 358 F.3d

616, 620–21 (9th Cir. 2004).

*Miller* is similar in all material respects to the case at bar. The

plaintiff in *Miller* based a civil RICO claim on allegations that "he [was] a victim

of a mail fraud scheme by [his employer] and its managers, who misrepresented
his entitlement to overtime pay and consequently underpaid him." *Id.* at 618.  He
alleged that over 11 years of employment, he was not paid for working overtime
because his managers "falsely represented to him and other employees that they
were not entitled to overtime pay because they were salaried." *Id.*  And he
contended that "every time [his] Managers sent him or other employees a paycheck
or W-2 amounted to a predicate act of mail or wire fraud," arguing "that taken
together the thousands of mailings amounted to a pattern of racketeering activity."
*Id.* at 620.   The plaintiff's theory in *Miller*—that his employer "falsely represented
to him and other employees that they were not entitled to overtime pay because
they were salaried," *id.* at 618—is no different than the theory here that the
individual Defendants falsely represented to Plaintiffs that they were not entitled to
overtime or minimum wages because they were independent contractors.

　　　　*Miller* rejected that theory of fraud for purposes of a RICO claim
given a "well settled" rule that actionable fraud cannot be predicated upon
misrepresentations of law.  *Id.* at 621.  "Statements of domestic law are normally
regarded as expressions of opinion which are generally not actionable in fraud
even if they are false."  *Id.*  In *Miller*, the managers' representations that plaintiff
and others "were not entitled to overtime pay because they were salaried" was not
actionable in fraud because the managers' "statements did not include express or

63

implied misrepresentations of fact." *Id.* The Ninth Circuit thus rejected the
plaintiff's "effort to transform a California state law wage and hour claim into a
federal RICO claim under 18 U.S.C. § 1962(c) and (d)." *Id.* at 618. It "decline[d]
to expand RICO's reach to transform the federal courts into a general venue for
ordinary state wage disputes" under RICO. *Id.*

Despite Plaintiffs' argument that "*Miller* is a twenty-year-old case that
has been extensively clarified by more recent persuasive and pertinent Ninth
Circuit precedent," ECF No. 198 at PageID.5776, *Miller* remains binding on this
court. Indeed, Plaintiffs did not cite *any* post-*Miller* appellate precedent—only
(distinguishable) district court decisions. Moreover, in the last 20 years, courts
have routinely followed *Miller* on exactly this point, both in the RICO context and
more generally in fraud cases alleging entitlement to wages based on
misclassification of workers' status. *See, e.g.*, *Albers v. Yarbrough*, 2020 WL
2218964, at *5 (N.D. Cal. May 7, 2020) (dismissing RICO claim premised on
"purported acts of mail and wire fraud involving [defendants'] employers' alleged
misrepresentations about their employment classification" as a misrepresentation
of law) (relying on *Miller*);[32] *Cruz v. Dollar Tree Stores, Inc.*, 2007 WL 2729214,

---

[32] *Albers* also explained that "[i]n determining whether or not a misrepresentation is legal
or factual, the question is not to *whom* the misrepresentation was made, but rather *what* the
contents of the misrepresentation are." 2020 WL 2218964, at *5. Thus, it did not matter
whether the employers misrepresented the workers' status as independent contractors (rather
than employees) to third-parties or to the workers themselves. *See id.* ("This is a distinction
without a difference.").

at *2 (N.D. Cal. Sept. 18, 2007) (applying *Miller* to bar fraud claim alleging that

misrepresentation of employee status resulting in failure to pay overtime);

*Tronsgard v. FBL Fin. Grp., Inc.*, 312 F. Supp. 3d 982, 991–94 (D. Kan. 2018)

(dismissing RICO claim because defendants' misrepresentations to workers that

they were independent contractors and not employees was not actionable)

(applying *Miller*); *Bernal v. FedEx Ground Package Sys., Inc.*, 2015 WL 4273034,

at *3 (C.D. Cal. July 14, 2015) (dismissing fraud claim because the alleged

misrepresentations that plaintiffs were independent contractors were

misrepresentations of law, not fact) (citing *Miller*, 358 F.3d at 621).

   Here, the CSAC alleges that the fraud occurred by individual

Defendants' "willful misrepresentations and misclassifications of each and every

Plaintiff and Putative Class Members as an independent contractor."  CSAC ¶ 336,

ECF No. 166 at PageID.6171; *see also id.* ¶ 159, ECF No. 166 at PageID.6132

("Spa workers were willfully misclassified as 'independent contractors.'"); *id.*

¶ 161, ECF No. 166 at PageID.6132–6133 (alleging that the contractor agreement

"willfully misclassified the Spa workers as independent contractors").  The CSAC

bases its RICO fraud theory on misrepresentations of the *status* of Plaintiffs.  The

theory is based on a legal representation, which is not an actionable theory of

fraud.  *See Miller*, 358 F.3d at 621.[33]

        In opposition, Plaintiffs attempt to distinguish *Miller* by arguing that

their theory is based on misrepresentations of fact, not law.  They rely heavily on

*Stickle v. SCI Western Market Support Center, L.P.*, 2008 WL 4446539 (D. Ariz.

Sept. 30, 2008), which, among many other rulings, denied a motion seeking to

dismiss a RICO claim in an FLSA context.  But—even if the court were inclined to

follow *Stickle* here—*Stickle* reasoned that

> the dispute here is not over a legal question of whether
> Plaintiffs should be categorized as hourly or non-hourly
> employees.  Rather, the dispute is over how much pay
> these hourly employees should have received.  This is a
> question of fact.  Thus, the issue in *Miller* is
> distinguishable from the issue here.

---

[33] *Miller* also discussed exceptions to the rule that misrepresentations of law are not
actionable as fraud, where:

> the party making the misrepresentation 1) purports to have special
> knowledge; 2) stands in a fiduciary or similar relation of trust and
> confidence to the recipient; 3) has successfully endeavored to
> secure the confidence of the recipient; or 4) has some other special
> reason to expect that the recipient will rely on his opinion . . . .

*Miller*, 358 F.3d at 621.  Plaintiffs' Opposition simply notes these exceptions, and makes no
effort to argue that they apply here.  *See* ECF No. 198 at PageID.5780 n.6.  In any event,
Plaintiffs' broad and general claim that "they represent a class of unsophisticated, uneducated
and largely non-English proficient workers" does not suffice to establish an exception.  *See
Albers*, 2020 WL 2218964 at *5 n.4 ("None of these exceptions appear to be present here and
Plaintiff does not argue that one is present.").

*Id*. at *19.  In contrast, in the present case (unlike how *Stickle* viewed that

complaint) the fraud issue is clearly based on an alleged misrepresentation of how

Plaintiffs should be categorized.[34]  Although they have sought unpaid wages in

other Counts, Plaintiffs' *RICO* fraud theory is not based on a pattern of criminal

activity of being deprived of pay or commissions (i.e., how much pay they were

due); it is based on an allegation that the individual Defendants knew that Plaintiffs

were employees but fraudulently misrepresented to them (and maybe to others)

that they were independent contractors.[35]  It is based on an allegation that

individual Defendants committed a pattern of fraud by misrepresenting Plaintiffs'

employment *status*.  It is thus based on a misrepresentation of law—which is not

actionable in RICO under *Miller*.  *See, e.g.*, *Albers*, 2020 WL 2218964, at *5

("Plaintiff's allegation that Defendants misrepresented his . . . employment status

is a misrepresentation of law."); *Bernal*, 2015 WL 4273034, at *3 ("A statement

that an individual is a contractor, vendor, or an employee of a contractor, is a

statement of law.") (*citing Harris v. Vector Mktg. Corp.*, 656 F. Supp. 2d 1128,

---

[34]  Plaintiffs also cite *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437 (E.D. Va. 2006)—an out-of-Circuit district court decision that does not mention *Miller*—which, too, is distinguishable because it fundamentally involved a dispute about miscalculations of overtime pay, not misrepresentations as to status.  *Id.* at 443–44.  And even if the court were persuaded by *Choimbol*, the court nevertheless is bound by *Miller*.

[35]  Although the fact-based inquiry whether Plaintiffs actually were "employees" or "independent contractors" might become relevant, the RICO claims are based on a theory that individual Defendants fraudulently misrepresented Plaintiffs' *status*, which is a legal question under *Miller*.

1136 (N.D. Cal. 2009) (stating that under federal and state law, the legal

conclusion of whether workers are employees or independent contractors is a

question of law)).

What's more, the CSAC also fails to allege with particularity the role

of each individual Defendant in the enterprise. A fraud-based RICO claim "does

not allow a complaint to merely lump multiple defendants together." *Corinthian*

*Colls*., 655 F.3d at 997. With multiple defendants, "a plaintiff must, at a minimum

identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 998.

"A RICO complaint must 'detail with particularity the time, place, and manner of

each act of fraud, plus the role of each defendant in the scheme.'" *Wieck*, 308 F.

Supp. 3d at 1126 (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist*.,

940 F.2d 397, 405 (9th Cir. 1991)).

Here, the CSAC alleges generally that "Persons or entities of

Defendants with decision-making authority formed an 'enterprise' for purposes of

[RICO]," and that "One or more of these persons committed mail fraud, wire

fraud, and/or conspiracy to defraud, in a repeated and continuing pattern . . . ."

CSAC ¶¶ 165–66, ECF No. 166 at PageID.6133. The allegations of a mail and

wire fraud scheme "are based on information and belief and are likely to have

evidentiary support after a reasonable opportunity for investigation and discovery."

*Id.* ¶ 167, ECF No. 166 at PageID.6133–6134. Such allegations lack particularity.

68

The CSAC alleges that "Defendants drafted and offered the Plaintiffs and Putative Class Members the Contractor Agreement as a mandatory condition of employment and continued service that willfully misclassified the Spa workers as independent contractors," *id.* ¶ 161, ECF No. 166 at PageID.6132–6133, but it does not specify the identity of the "Defendants." The CSAC does not establish a RICO enterprise even if it alleges that "Defendants Oliver and Federer" executed each Contractor Agreement, and that "Upon information and belief, Defendants Berger, Oliver, and Santiago currently make financial and personnel decisions for Grand Wailea." *Id.* ¶¶ 162, 164, ECF No. 166 at PageID.6133.

And as the court emphasized at oral argument, the court gives no weight to the allegation that Berger, in his corporate capacity, signed a prior settlement agreement for a dispute that might have arisen out of similar allegations as are made in this action. *See* CSAC ¶¶ 163, 169, 342, ECF No. 166 at PageID.6133, 6134 & 6172. The court has absolutely no information regarding the prior dispute, nor its merits, and nothing indicating that any prior allegations—whatever they were—were actually or potentially true. There certainly is nothing to indicate that a prior dispute led any individual Defendant to believe that the subject scheme involved criminal racketeering activity for purposes of 18 U.S.C. § 1961.

69

In sum, the federal RICO claim lacks plausibility, and it fails under

Rule 9.[36]  *See Twombly*, 550 U.S. at 555–56; *Wieck*, 308 F. Supp. 3d at 1126.

Count XII is DISMISSED without leave to amend.[37]

And because the CSAC fails to state a federal RICO claim, the court

lacks personal jurisdiction over Berger.  *See* ECF No. 173 at PageID.5298 (prior

order denying Berger's motion to dismiss for lack of personal jurisdiction without

prejudice in part, but recognizing that if the RICO claim fails then the court

necessarily lacks personal jurisdiction over Berger under 18 U.S.C. § 1965(b)).

**J.    Count XIII:  "Violation of [HRS] § 842 (Hawaii RICO statute)"
       (Alleged against Defendants Oliver, Federer, Santiago and Berger)**

Count XIII alleges violations of HRS Chapter 842 (titled "organized

crime")—Hawaii's state law RICO Act, which is parallel to the federal RICO Act.

---

[36] The statute of limitations for a civil RICO claim is four years.  *See Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).  Like Count XI, Defendants argue in the alternative that Count XII is time-barred as to certain Plaintiffs who, according to the CSAC, last worked for the Hotel over four years ago.  ECF No. 169 at PageID.4686.  Unlike with Count XI, however, civil RICO claims accrue when a plaintiff knows or should know of the injury that underlies his cause of action.  *See Grimmett*, 75 F.3d at 510; *Rotella v. Wood*, 528 U.S. 549, 555 (2000).  Because the court otherwise dismisses Count XII with prejudice, the court does not reach whether the civil RICO claims of any Plaintiffs had accrued within four years of the filing of this action.

[37] To be clear, *Miller* precludes a RICO claim as a matter of law and would be a sufficient ground for dismissal on its own.  *See Miller*, 358 F.3d at 621 ("[F]raud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law.") (citation omitted).  The court thus need not consider whether to grant leave to amend to allow Plaintiffs to attempt to plead a RICO claim with more particularity or to specify the particular roles that each Defendant had in an "enterprise."  *Miller*, standing alone, is an impenetrable obstacle to stating a RICO claim.

It alleges violations of HRS § 842-2 based on the same factual allegations

regarding the federal RICO Act.

> The language in Section 842-2(3) of Hawaii RICO "is
> virtually identical to that of 18 U.S.C. § 1962(c)." *State
> v. Ontai*, 929 P.2d 69, 74 (1996); *State v. Bates*, 933 P.2d
> 48, 59 (Haw. 1997) ("[Hawaii RICO] incorporated
> provisions of 18 U.S.C. § 1962[]").  As a result, the
> Hawaii Supreme Court looks to "federal case law for
> guidance" in applying Hawaii RICO because "the most
> useful source in interpreting [Section] 842-2(3) is federal
> law." *Ontai*, 929 P.2d at 74; *Bates*, 933 P.2d at 59.

*Agena v. Cleaver-Brooks, Inc.*, 2019 WL 11248590, at *14 (D. Haw. Oct. 31,

2019) (footnote omitted).[38]  Thus, because Hawaii looks to federal precedent for

guidance, Count XIII fails for the same reason that Count XII fails—a lack of a

plausible theory of actionable fraud under *Miller*, and the failure to plead with

particularity.[39]  Count XIII is DISMISSED with prejudice.

---

[38] *Ontai* recognized that "[t]he only material differences between the two statutes are the
references to 'interstate or foreign commerce' and a 'pattern of racketeering activity.'"  84 Haw.
at 61, 929 P.2d at 74.  It noted that "the federal statute requires at least two acts of racketeering
activity . . . [whereas] [t]he Hawaii statute only requires one act."  *Id.* at 61 n.8, 929 P.2d at 74
n.8.

[39] The individual Defendants first seek dismissal by pointing out that Count XIII alleges
mail and wire fraud as predicate acts, *see* CSAC ¶ 351, ECF No. 166 at PageID.6174, even
though Hawaii's RICO statute does not list mail or wire fraud as among the crimes constituting
"racketeering activity."  *See* HRS § 842-1.  Nevertheless, § 842-1 does include "theft" as a
predicate act.  And HRS § 708-830(4) criminalizes "Theft by deception," which is equivalent to
the mail and wire fraud alleged in the CSAC.  Thus, Count XIII does not fail just because it
alleges "mail and wire fraud" as predicate acts.  Rather, it fails for the same reasons that Count
XII fails.

**K.**    **Count XIV:  "Unjust Enrichment and Restitution *Quantum Meruit*" (Alleged against all Defendants except Joseph Berger)**

Next, the CSAC brings, as a class action "on behalf of themselves and similarly situated individuals," a Hawaii common law equitable claim for unjust enrichment alleging that Defendants were "conferred a benefit" because Plaintiffs "paid the Defendants' portion of FICA taxes on their income, [and] worked (including overtime hours) without compensation, and forfeited health insurance, short-term disability insurance, and other benefits that Defendants owed to them." CSAC ¶¶ 357, 360, ECF No. 166 at PageID.6176–6177.  Plaintiffs claim damages sustained "[a]s a direct and proximate result of Defendants' wrongful and willful nonpayment of overtime and minimum wage, withholding of FICA and Federal Unemployment Compensation Act ('FUCA') tax contributions, and refusal to furnish the Plaintiffs and Putative Class Members with all benefits and insurance owed under state and federal law." *Id.* ¶ 361, ECF No. 166 at PageID.6177.

Defendants seek dismissal of Count XIV, arguing that an equitable claim under Hawaii law cannot stand where an adequate remedy at law otherwise exists.  *See* ECF No. 169 at PageID.4684 (citing *Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084 (D. Haw. 2014)).  *Soule* dismissed an unjust enrichment claim without prejudice, applying the following principles:

> Claims for unjust enrichment and quantum meruit derive from principles of equity and quasi-contract.  *See Porter v. Hu*, 116 Hawai'i 42, 169 P.3d 994, 1007 (Haw. 2007);

> *Hiraga v. Baldonado*, 96 Hawai'i 365, 31 P.3d 222, 229
> (Haw. Ct. App. 2001).  Hawai'i law has approved "the
> principle, long-invoked in the federal courts, that 'equity
> has always acted only when legal remedies were
> inadequate.'"  *Porter*, 169 P.3d at 1007 (quoting *Beacon
> Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959).
> The absence of an adequate remedy at law, therefore, is
> the "necessary prerequisite" to maintaining equitable
> claims.  *Id.* (quoting *Bd. of Dirs. of the Ass'n of Apt.
> Owners of Regency Tower Condo. Project v. Regency
> Tower Venture*, 2 Haw. App. 506, 635 P.2d 244, 249
> (Haw. Ct. App. 1981)).

1 F. Supp. 3d at 1102 (quoting *Swartz v. City Mortg., Inc.*, 911 F. Supp. 2d 916,

938 (D. Haw. 2012)).  Defendants argue that Hawaii law and the FLSA (asserted in

other Counts of the CSAC) provide adequate remedies at law for "any claims

regarding overtime, minimum wage, and benefits."  ECF No. 169 at PageID.4685

(citing *Davis v. Four Seasons Hotel Ltd.*, 2011 WL 5025521, at *6 (D. Haw. Oct.

20, 2011) (granting summary judgment on an unjust enrichment claim seeking

unpaid wages—unpaid portions of service charges—because the plaintiffs had "an

adequate remedy in the form of a claim for unpaid wages under HRS § 388-6,"

which precludes the assertion of an unjust enrichment claim seeking the same

damages)).  They also argue that Plaintiffs have an adequate remedy at law for a

refund of self-employment taxes under IRS regulations—an administrative claim

under 26 U.S.C. § 6511(a), or a suit under 28 U.S.C. § 1346.  *See* ECF No. 169 at

PageID.4685 (citing *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 65 (3d Cir.

2008) (holding that IRS regulations preempt state-law claims for unjust enrichment

based on misclassification as independent contractors, and dismissing unjust

enrichment claim for FICA taxes)).[40]

   The court agrees that a claim in equity fails if a plaintiff has an

adequate remedy at law based on the same facts.  It is true that a plaintiff may not

obtain "double recovery" by an award in equity for damages also obtained at law.

And it is also true that if a plaintiff fails to state a viable statutory legal claim, that

plaintiff may not pursue the same remedy under an equitable theory.  The court

thus agrees that Count XIV fails as currently pled, but the court will allow

Plaintiffs to amend this Count to attempt to plead how they do not have an

"adequate remedy at law," and thus explain how they should be "entitled to pursue

alternative theories."  *SSFM Int'l, Inc. v. HNTB Corp.*, 2023 WL 6037975, at *3

(D. Haw. Sept. 15, 2023) (quoting *Marisco, Ltd. v. Eng'g & Constr. Pte., Ltd.*,

2020 WL 3492572, at *8 (D. Haw. June 26, 2020)); *see also N.K. Collins, LLC v.*

*William Grants & Sons, Inc.*, 472 F. Supp. 3d 806, 831 (D. Haw. 2020) (explaining

---

  [40] Defendants' argument is limited to the principle under Hawaii law that state law
equitable claims fail if adequate remedies at law otherwise exist.  They have not clearly made a
related argument that the FLSA itself preempts common law claims seeking benefits that might
otherwise be available under the FLSA.  *Compare Anderson v. Sara Lee Corp.*, 508 F.3d 181,
194 (4th Cir. 2007) (concluding, with numerous citations, that the FLSA's enforcement scheme
precluded hourly workers' contract, negligence, and fraud claims), *with Williamson v. Gen.*
*Dynamics Corp.*, 208 F.3d 1144, 1151–52 (9th Cir. 2000) (relying in part on a savings clause in
29 U.S.C. § 218(a) to conclude that the FLSA's anti-retaliation provision did not preempt
common law fraud claims).  The court thus does not address in this Order whether the FLSA
could otherwise preclude equitable claims for wages or other benefits.

that "cases dismissing unjust enrichment claims based on an inadequate remedy at

law involve differing claims for the same remedy.") (citations omitted).

**L.    Count XV:  "Retaliation in Violation of the FLSA (29 U.S.C. § 215(a)(3) and [HRS] § 378-62)" (Alleged against all Defendants except Federer and Berger)**

Count XV of the CSAC alleges that Defendants (except Federer and

Berger) retaliated against Plaintiffs on a class action basis after they instituted this

action.  It alleges that

> As set forth in paragraphs 225 to 233 above, Defendants
> engaged in threats of retaliation and retaliatory actions
> against the Retaliation Subclass Members in violation of
> the FLSA (29 U.S.C. § 215(a)(3)), and [HRS] § 378-62,
> and such actions negatively impacted their compensation,
> terms, conditions, location and privileges of employment.
> Defendants took such retaliatory actions because the
> Retaliation Subclass Members had previously engaged in
> protected activity by participating as a named Plaintiff
> and/or Putative Class Member in this lawsuit.

CSAC ¶ 370, ECF No. 166 at PageID.6179.

In turn, paragraphs 225 to 233 of the CSAC describe allegedly

adverse actions to "Plaintiffs and the Putative Class Members"[41] "due to ongoing

construction."  CSAC ¶ 225, ECF No. 166 at PageID.6146.  They "have been

required to move furniture, supplies, and equipment furnished by Defendants to

various locations on the massive Grand Wailea property to accommodate

---

[41]  The "Plaintiffs and Putative Class Members" are also called the "Retaliation Subclass Members."  *See* CSAC ¶ 137, ECF No. 166 at PageID.6126.

remodeling and construction over the past year since the original Complaint was

filed," and were "placed . . . at risk of injury from moving heavy materials,

furniture, and equipment without the assistance of trained professionals." *Id.*  They

were "relocated numerous times," in September 2023 to "outdoor makeshift tents

which endure unbearable heat, wind, and rain and do not have access to running

water," and "which routinely are exposed to bird and gecko excrement and which

have partially collapsed on multiple occasions." *Id.* ¶ 226, ECF No. 166 at

PageID.6146–6147.

   In November 2023, nine months after this action was filed (although it

was and still is ongoing), the Defendants "effectively transition[ed] the Retaliation

Subclass Members' jobs from independent contractors to W-2 employees," by

announcing that the Hotel "planned to terminate all of their employment contracts

with the hotel, and they would be required to apply for positions as employees at

the hotel's newly constructed Spa, 'Kilolani Spa.'" *Id.* ¶ 228, ECF No. 166 at

PageID.6147–6148.  This transition was apparently made in response to this

action's overall claim that the workers had been wrongfully classified as

independent contractors rather than as employees.  But the CSAC alleges that it

"was a tacit admission by Defendants that the Plaintiffs and Putative Class

Members were misclassified all along, and Defendants' actions were designed to

stop amassing considerable liability resulting from their unlawful employment

practices and misclassification of the Plaintiffs and Putative Class Members." *Id.*,
ECF No. 166 at PageID.6148.

The CSAC further alleges "instead of simply reclassifying the
Retaliation Subclass Members from independent contractors to employees,
Defendants performed a mass layoff of all these workers, and provided them only
with the opportunity to apply and compete for positions, while also opening the
application process to the public as well." *Id.* ¶ 229, ECF No. 166 at PageID.6148.
Some of the Retaliation Subclass Members did not apply for employment,
although "[i]n late January and early February 2024, the Grand Wailea made offers
to most of the Retaliation Subclass Members." *Id.* ¶¶ 230–231, ECF No. 166 at
PageID.6148–6149.  In so doing, however, the Retaliation Subclass Members'
total compensation as employees was less than what they were making as
independent contractors, as they were "essentially pa[id] . . . minimum wage under
Hawaiʻi law for hours worked, along with a 'piece rate' for booked treatment
sessions with guests." *Id.* ¶ 231, ECF No. 166 at PageID.6149.  In the process,
some of the Retaliation Subclass Members lost seniority.  *Id.*

And the CSAC alleges that the job offers provided to the Retaliation
Subclass were conditioned upon agreeing to arbitration clauses, which included
language requiring arbitration for "past claims." *Id.* ¶ 232, ECF No. 166 at
PageID.6149–6150.  As alleged, however, Defendants agreed that the arbitration

language applied to future claims, and did not apply to the current action. *Id.*

Nevertheless, the CSAC alleges that:

> Defendants' surreptitious actions in terminating the Retaliation Subclass Members' employment contracts and conditioning their ability to be rehired as employees (i.e., their ability to preserve their jobs, livelihood and the status quo) on their execution of a prejudicial arbitration agreement which purported to require individual arbitration of the claims underlying this lawsuit are believed to be further evidence of retaliation against the economically disadvantaged Retaliation Subclass Members, who are dependent on their income from Defendants.

*Id.* Lastly, the CSAC alleges as retaliation that:

> Over the last several years while the Spa underwent massive reconstruction and up to the last three months, Defendants induced Plaintiffs and Retaliation Subclass Members to continue working at the Grand Wailea despite the downturn in business and poor working conditions by repeatedly promising Plaintiffs and the Retaliation Subclass Members that they would retain their seniority when the new Spa opened in February 2024. Plaintiffs and Retaliation Subclass Members detrimentally relied on Defendants' hollow promises, which Defendants have reneged to further retaliate against the workers.

*Id.* ¶ 233, ECF No. 166 at PageID.6150–6151.

### 1. *Merits of the Retaliation Claims*

"To prevail [for retaliation] under the FLSA, [a plaintiff] must first make a prima facie showing that: (1) she engaged in activity protected by the FLSA; (2) [a defendant] took an adverse employment action; and (3) there was a

causal link between the protected activity and the adverse action." *Lono v. Hawaii*

*Pac. Univ.*, 2024 WL 1117109, at *9 (D. Haw. Mar. 13, 2024) (citation omitted).[42]

Likewise,

> [a Hawaii Whistleblower Protection Act ("HWPA")]
> claim under § 378–62 has three requirements. First, an
> employee must have "engaged in protected conduct" as
> defined by HRS § 378-62(1). Second, the employer must
> take some "adverse action" against the employee. And
> third, there must be "a causal connection between the
> alleged retaliation and the 'whistleblowing.'"

*Tagupa v. VIPdesk, Inc.*, 125 F. Supp. 3d 1108, 1119 (D. Haw. 2015) (quoting

*Griffin v. JTSI, Inc.*, 654 F. Supp. 2d 1122, 1131 (D. Haw. 2008)).

  Here, as to both the FLSA and HWPA, the CSAC sufficiently alleges

"protected activity" in the filing of this action (and its continuing litigation) by

Plaintiffs. The claims fail, however, because—as demonstrated by the detailed

allegations set forth from paragraphs 225 to 233 of the CSAC—the conditions that

Plaintiffs complain about applied broadly to *all* Hotel spa workers, whether or not

they participated in the protected activity. That is, the Defendants' allegedly

retaliatory working conditions (which, according to the CSAC, resulted from

"ongoing construction at the hotel") applied to all Hotel spa workers, not just the

---

[42] Unlike a disparate treatment claim, "[a]n allegedly retaliatory action is subject to challenge so long as the plaintiff can show that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting [protected activity such as] a charge of discrimination.'" *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Plaintiffs.  They were not singled out, individually or as a subgroup, as there are no

allegations that other similarly-situated workers were not "retaliated" against.  *See*

*Martin v. Gates*, 2008 WL 4657807, at *6 (D. Haw. Oct. 20, 2008) ("An

employment change that similarly impacts all like situated employees—as opposed

to targeting one particular employee—is not an adverse employment action.")

(citing *Weger v. City of Ladue*, 500 F.3d 710, 726–28 (8th Cir. 2008)).

      As this court in *Martin* explained, "*Weger* found that directives issued

to all communications officers 'were not materially adverse because they were

issued to the Department as a whole, resulted in only minor changes in workplace

procedure, and impacted Plaintiffs in the same way as all other communications

workers.'" *Id.* (quoting *Weger*, 500 F.3d at 726).  "It simply does not follow that

an employer's announcement of a new policy that affects all or substantially all of

its employees in the same manner would so adversely affect the Plaintiffs' lives

that it would have dissuaded them from [the protected activity]." *Id.* (quoting

*Weger*, 500 F.3d at 727).

      Many other retaliation decisions follow this principle.  *See, e.g.*, *Carr*

*v. N.Y.C. Transit Authority*, 76 F.4th 172, 180 (2d Cir. 2023) (affirming dismissal

of retaliation claim because "the allegedly retaliatory actions were not materially

adverse," where they "were the result of generally applicable workplace policies

and [plaintiff] has not adduced evidence that these polices were applied to her and

not others"). *Carr* explained that "a reasonable employee would not be dissuaded

from taking protected action simply because they are subject to *the same policies*

*as other employees*." *Id.* (citation omitted) (emphasis added). Likewise, the

Second Circuit recently upheld a dismissal of retaliation claims under the

Americans with Disabilities Act on this ground (and for lack of causation) where

the challenged action "applied to all employees regardless of whether they had

engaged in protected activity." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th

159, 171 (2d Cir. 2024). *Sharikov* reiterated that "allegations of adverse actions

that occur as a 'result of generally applicable workplace policies' fail to state a

retaliation claim . . . ." *Id.* (quoting *Carr*, 76 F.4th at 180); *see also Siam v. Potter*,

2005 WL 8166268, at *17 (N.D. Cal. May 17, 2005) (granting summary judgment

on retaliation claim, rejecting an argument of pretext, reasoning that "for the

overtime and backpay programs, plaintiff has not provided any evidence that her

exclusion was based on anything more than general policy decisions affecting all

employees equally").

       Accordingly, as pled, Count XV fails to state a plausible claim for

retaliation. As pleaded, the alleged retaliatory actions applied to everyone (i.e., all

spa workers). It is unclear, however, whether Plaintiffs can allege retaliation

directed only to spa workers who engaged in protected activity (not based on

Hotel-wide changes or conditions applicable to all classes of workers).  Count XV

is DISMISSED with leave to amend.

>    **2.    *Statutes of Limitations Bar Many Plaintiffs' Claims***

Additionally—as discussed in detail when analyzing Count XI—given

that the FLSA's statute of limitations is three years for allegedly willful violations

(29 U.S.C. § 255(a)), the FLSA retaliation claims brought by the 14 Plaintiffs

discussed in Count XI are also barred by the FLSA's limitation period.  These

Plaintiffs are: Gail DeCoite, Stephanie Haddad, Kalena Kaili-Thomas, Leslie

McGuire, Jean Muldoon, Maria Norwood, Firmiana Ovando, Barbara Timo, James

Walsh, Laura Gleason, Carla Moore, Lisa Lujan Shaw, Julie Taketa, and Tara

Walsh.  *See* § IV.H.2 of this Order.  By the CSAC's allegations, the purported

retaliation occurred in September or November of 2023.  *See* ECF No. 166 at

PageID.4431.  Any Plaintiff who last worked at the Hotel more than three years

ago would thus be barred from making HWPA claims.  Nevertheless, as with

Count XI, the court grants leave to amend to allow these Plaintiffs to attempt to

allege a basis for fraudulent concealment or to otherwise state non-time-barred

claims under the FLSA.

These 14 Plaintiffs—along with several others—are also barred under

Hawaii law from asserting claims under the HWPA, which has a two-year

limitations period.  *See* HRS § 378-63(a) ("A person who alleges a violation of this

part may bring a civil action for appropriate injunctive relief, or actual damages, or both within two years after the occurrence of the alleged violation of this part.").  Claims accrue upon the "last adverse action" taken against a plaintiff.  *See, e.g.*, *Lalau v. City & County of Honolulu*, 938 F. Supp. 2d 1000, 1021 (D. Haw. 2013).  As with the FLSA retaliation claims, by the CSAC's allegations, the purported retaliation occurred in September or November of 2023.  Any Plaintiff who last worked at the Hotel more than two years before the action was filed would be barred from making HWPA claims.

Defendants identify six other Plaintiffs, besides those 14, who—as alleged in the CSAC—last worked for the Hotel more than two years ago.  They are Bo Blinski, Betsy Jo Kallenbach, April Lamparelli, Dayna Pacheco, Manya Reinier, and Christopher Ridge.  *See* ECF No. 169 at PageID.4687 & n.11; *see also* CSAC ¶¶ 23, 67, 73, 103, 108, 112, ECF No. 166 at PageID.6116–6124.  But the court has compelled Manya Reinier and Christopher Ridge's claims to be arbitrated.  *See* ECF No. 219, and thus any rulings in this Order do not apply to them.  And so, the HWPA claims of the other four—Bo Blinski, Betsy Jo Kallenback, April Lamparelli, and Dayna Pacheco—are time-barred by a two-year limitations period under HRS § 378-63(a).

Nevertheless, as with Count XI, the court grants leave to amend to allow these Plaintiffs to attempt to allege a basis for fraudulent concealment or to otherwise state non time-barred claims under the FLSA or HWPA.

But, in any event, claims against individuals (Oliver, Santiago, and Federer) under the HWPA fail as a matter of law because "an HWPA claim cannot be brought against an individual." *Christensen v. County of Kauai*, 2024 WL 4528209, at *10 (D. Haw. Oct. 18, 2024) (citing numerous cases). Any amended HWPA retaliation claim must not include individuals as Defendants.

## M.    Count XVI: "Detrimental Reliance on a Promise" (Brought against all Defendants except Berger and Federer)

Lastly, the CSAC alleges as a class action on behalf of the Retaliation Subclass an equitable claim of detrimental reliance (i.e., promissory estoppel) based on a loss of seniority and other benefits caused when they reapplied for employee jobs at the Hotel in November 2023. Plaintiffs claim that

> Throughout the pandemic and years of construction on Defendants' new Spa, Defendants repeatedly made oral promises and written representations to the Retaliation Subclass Members promising that the Retaliation Subclass Members would maintain their years of seniority at the newly constructed Spa slated to open in February 2024.

CSAC ¶ 373, ECF No. 166 at PageID.6180. They further claim that:

> The Retaliation Subclass Members reasonably relied on these promises, believing that if they temporarily stuck it out through the economic downturn, severe decline in

84

> client volume, and substandard working conditions, they
> would eventually be rewarded when the new Spa opened
> by maintaining their seniority benefits, including higher
> wages, priority shift selection, and more time off.

*Id.* ¶ 374, ECF No. 166 at PageID.6180.  And they claim that

> Without warning or explanation, in November 2023, the
> Retaliation Subclass Members were told that their years
> of service would not be honored at the new Spa, and they
> would have to reapply to their same job positions as if
> they were first day employees of Defendants.  Grand
> Wailea provides substantial benefits to long-term
> employees, including increased days off and discounted
> travel benefits for life.  These Retaliation Subclass
> Members have been denied such benefits because their
> years of service were not honored by the Defendants as
> they had promised.

*Id.* ¶ 376, ECF No. 166 at PageID.6180–6181.

Under Hawaii law, "[t]he elements of a promissory estoppel claim

are: '(1) There must be a promise; (2) The promisor must, at the time he or she

made the promise, foresee that the promisee would rely upon the promise

(foreseeability); (3) The promisee does in fact rely upon the promisor's promise;

and (4) Enforcement of the promise is necessary to avoid injustice.'"  *Clemmons v.

Haw. Med. Servs. Ass'n*, 836 F. Supp. 2d 1126, 1144 (D. Haw. 2011) (quoting *In

re Herrick*, 922 P.2d 942, 950–51 (Haw. 1996)).

Defendants argue that Count XVI fails to satisfy those elements and

thus fails to state a claim.  But the court concludes that the CSAC adequately

alleges the element of promissory estoppel.  Count XVI alleges that a promise was

85

made (loss of seniority) that was foreseeably relied upon, and that some Plaintiffs were denied benefits based upon a broken promise. Although it is unclear whether this Count is meant to duplicate or supplement Plaintiffs' retaliation allegations, it nevertheless alleges the elements of a "detrimental reliance" claim based on promissory estoppel. The Motion to Dismiss is DENIED as to Count XVI.

## V.  CONCLUSION

For the foregoing reasons,

(1) Counts I and II are merged, and Count II is DISMISSED with leave to amend, except for a claim under HRS § 387-3, which dismissal is without leave to amend given relief available under the FLSA. That is, any amendment to Count II may be based on HRS § 387-2.

(2) Any amendment must clarify whether relief is also sought for unpaid wages under HRS § 388-11(a), aside from minimum wage and overtime violations under HRS §§ 387-2. If so, the § 388-11(a) claim must not be made in Count II, but must be made in a separate count (and must also comply with the *Twombly/Iqbal* plausibility standards).

(3) Count III is DISMISSED without leave to amend, but Plaintiffs may seek relief for violations of HRS § 388-6 in Count V. That is, all relief under § 388-6 must be sought in a single Count.

(4) Counts IV, VI, VII, VIII, IX, and X are DISMISSED without leave to amend;

(5) Count V remains as to Defendants Waldorf=Astoria Management LLC, GW Manager LLC, BRE Iconic GW Owner LLC, and Oliver, although it is DISMISSED with leave to amend as to Santiago and BRE Hotels & Resorts LLC. Plaintiffs may also amend Count V to seek additional recovery currently alleged in Count III for alleged violations of HRS § 388-6, so that all violations of § 388-6 are alleged in a single Count.

(6) Count XI is DISMISSED with leave to amend.

(7) Counts XII and XIII are DISMISSED without leave to amend (therefore no claims remain against Berger, and he is DISMISSED for lack of personal jurisdiction).

(8) Count XIV is DISMISSED with leave to amend.

(9) Count XV is DISMISSED with leave to amend, except as to Hawaii statutory whistleblower claims against the individual Defendants, which are DISMISSED without leave to amend; and

(10) Count XVI remains.

To be clear, Plaintiffs must carefully review this Order's details, and any Third Amended Complaint may *only* amend as discussed and permitted by this Order. New causes of action are not permitted. New factual allegations—unless

addressing deficiencies analyzed in this Order—are also not permitted.  A Third

Amended Complaint must not re-plead claims that have been dismissed without

leave to amend, even if merely to preserve them for appeal.  *See Lacey v.*

*Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (holding that claims

dismissed with prejudice and without leave to amend are not required to be "repled

in a subsequent amended complaint to preserve them for appeal").

A Third Amended Complaint that complies with the details set forth

in this Order is due by **February 14, 2025**.

Additionally, Plaintiffs are ordered to SHOW CAUSE why Allan

Federer should not otherwise be dismissed without prejudice from this action for

failure to serve him.  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within

90 days after the complaint is filed, the court—on motion or on its own after notice

to the plaintiff—must dismiss the action without prejudice against that defendant

or order that service be made within a specified time.").  Plaintiffs must respond as

to Federer by **January 27, 2025**.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 13, 2025.



 /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge