IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURIE BOLOS, ET AL., on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALDORF=ASTORIA MANAGEMENT LLC OPERATING AS GRAND WAILEA, a Waldorf Astoria Resort; ET AL.,<br><br>Defendants. | CIV. NO. 23-00104 JMS-KJM<br><br>ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS, ECF NO. 264 |

## ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS, ECF NO. 264

## I. INTRODUCTION

On March 31, 2025, Defendants Waldorf=Astoria Management LLC, GW Manager LLC, BRE Iconic GWR Owner LLC, and John Paul Oliver (collectively "Defendants") filed a Partial Motion to Dismiss, challenging three of the seven Counts of the Fourth Amended Class and Collective Action Complaint ("4AC") in this action arising from alleged wrongful classification of certain workers as independent contractors rather than employees at the Grand Wailea, a luxury resort on Maui. ECF No. 264. Based on the following, Defendants' Partial Motion to Dismiss ("Motion" or "Motion to Dismiss") is DENIED.

## II. **BACKGROUND**

This action was brought as a combined individual, class, and

collective action alleging Hawaii and Federal statutory wage and hour violations[1]

(and related causes of action) on behalf of numerous "massage therapists, nail

technicians, estheticians, and hair stylists who worked at the Spa Grande located

within the Grand Wailea-Waldorf Astoria Resort, 3850 Wailea [Alanui] Drive,

Wailea, Hawaiʻi, 96753." ECF No. 256 at PageID.6478. On January 13, 2025, the

court issued a comprehensive Order ("the January 2025 Order") granting in part

and denying in part a prior motion to dismiss. *See* ECF No. 233; *Bolos v.*

*Waldorf=Astoria Mgmt. LLC*, 762 F. Supp. 3d 975 (D. Haw. Jan. 13, 2025). The

January 2025 Order details and explains Plaintiffs' basic allegations as set forth in

a prior 77-page, 16-Count, version of the Complaint. That Order dismissed some

claims without prejudice and with leave to amend.

In response to the January 2025 Order, Plaintiffs filed their 87-page,

seven-Count 4AC, which amended certain claims to attempt to address pleading

deficiencies. *See* ECF No. 256. Defendants have responded to the 4AC with the

current Motion to Dismiss, contesting the sufficiency of (or parts of) the

allegations in Count II ("Unpaid Wages"), Count V ("Unjust Enrichment and

---

[1] *E.g.*, violations of Hawaii Revised Statutes ("HRS") Chapters 387 and 388, and the
Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.

Restitution"), and Count VI (unlawful retaliation under both federal and state law). Thus, the Motion to Dismiss follows naturally from the prior proceedings and—given the comprehensive nature of the January 2025 Order—the court proceeds directly to the parties' arguments without repeating the factual background and detailed allegations of the dispute.  Plaintiffs filed their Opposition to the Motion on April 7, 2025, ECF No. 267, and Defendants filed their Reply on May 9, 2025, ECF No. 272.  The court decides the Motion without a hearing under Local Rule 7.1(c).

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Cap. Partners*, LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  Rule 12 is read in conjunction with Rule 8(a)(2), which "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.*). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must offer "more than labels and conclusions," and instead contain "enough factual matter" indicating "plausible" grounds for relief, not merely "conceivable" ones. *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1055–56 (9th Cir. 2019) (citing *Twombly*, 550 U.S. at 555–56). And in a Rule 12(b)(6) analysis, the court accepts as true the material facts alleged in the complaint and construes them in the light most favorable to the nonmovant. *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted).

## IV. DISCUSSION

### A. Count V—Unjust Enrichment and Restitution

Defendants first challenge Plaintiffs' revised Hawaii common law claim for equitable relief in Count V (titled "Unjust Enrichment and Restitution *Quantum Meruit* Brought Against All Defendants as a Class Action by Plaintiffs and All Similarly Situated Individuals," ECF No. 256 at PageID.6552). The claim alleges in part that, due to Defendants' wrongful and willful misclassification of Plaintiffs as independent contractors rather than employees:

> Plaintiffs and the Putative Class Members conferred a
> benefit upon Defendants, insofar as they paid the
> Defendants' portion of FICA taxes on their income,
> worked (including overtime hours) without
> compensation, and forfeited health insurance, short-term
> disability insurance, and other benefits that Defendants
> owed to them. This improved Defendants' bottom line
> and profitability to the direct detriment of the Plaintiffs
> and the Putative Class Members.

*Id.* at PageID.6553. Further, after setting forth various Hawaii laws providing

benefits to employees, Count V alleges:

> In addition, Plaintiffs and the Putative Class Members
> were entitled to receive all employment benefits that
> Defendants offered to their W2 employees, including but
> not limited to: meals, travel, mileage, uniforms, linens,
> and other expense reimbursements; employee discounts
> for Grand Wailea services; paid time off; paid sick leave;
> family and parental leave; Go Hilton travel discount
> program; mental health resources; Daily Pay program;
> debt-free education program; employee stock purchase
> program; matching 401(k) plan; and health savings
> accounts.

*Id.* at PageID.6555. And it alleges:

> Because Plaintiffs lack a private right of action under
> Hawaii's Prepaid Group Health Insurance Law (HRS
> Chapter 393), Short-Term Disability Law (HRS Chapter
> 392), Employment Security Act (Chapter 383), and
> workers' compensation laws, Plaintiffs lack an adequate
> remedy at law for Defendants' failure to provide these
> statutory benefits as misclassified independent
> contractors. Furthermore, Defendants failed to provide
> Plaintiffs and the Putative Class Members with
> employment benefits that they provided to their W-2
> employees and failed to contribute to the employers'
> portion of their FICA taxes. Due to Defendants'

5

> intentional misclassification of Plaintiffs and the Putative
> Class Members, Defendants were unjustly enriched, and
> Plaintiffs and the Putative Class Members' unjust
> enrichment claim should proceed due to the lack of an
> adequate legal remedy to recover these damages.

*Id.* at PageID.6555–6556.[2]

"It is well settled under Hawaii law that claims for quantum meruit

. . . and unjust enrichment, deriving from equity and quasi-contract, lie 'only when

legal remedies are inadequate.'" *SSFM Int'l, Inc. v. HNTB Corp.*, 2023 WL

6037975, at *3 (D. Haw. Sept. 15, 2023) (quoting *Sunday's Child, LLC v. Irongate*

*AZREP BW LLC*, 2017 WL 561338, at *6 (D. Haw. Feb. 10, 2017) (brackets

omitted)); *see also, e.g.*, *Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084, 1102

(D. Haw. 2014) ("The absence of an adequate remedy at law . . . is the 'necessary

prerequisite' to maintaining equitable claims.") (quoting *Porter v. Hu*, 116 Haw.

42, 55, 169 P.3d 994, 1007 (Haw. Ct. App. 2007)).  It is also well settled that "[a]t

the pleadings stage, a plaintiff is entitled to pursue alternative theories of

recovery." *SSFM*, 2023 WL 6037975, at *1; *see also, e.g.*, *In re Light Cigarettes*

*Marketing Sales Practices*, 751 F. Supp. 2d 183, 191 (D. Me. 2010) ("In general, a

party is allowed to 'state as many separate claims or defenses as it has, regardless

of consistency.'") (quoting Fed. R. Civ. P. 8(d)(3)).

---

[2]  The January 2025 Order dismissed various Hawaii statutory claims for benefits,
concluding that the statutes did not provide a private cause of action to enforce the statutes.  *See*
*Bolos,* 762 F. Supp. 3d at 998–1000, 1003–07.

Defendants seek to dismiss Count V, arguing that the equitable claim fails because Plaintiffs have adequate remedies at law, such as making administrative claims for benefits or penalties with the Hawaii Department of Labor and Industrial Relations ("DLIR"), or with the Internal Revenue Service ("IRS") for a refund of self-employment taxes they may have paid.  *See* ECF No. 264 at PageID.6882–6883, 6885.  They make a related argument that Plaintiffs may not make a claim in equity based on a statutory violation if that statute lacks a private cause of action.  *See id.* at PageID.6884.

The January 2025 Order dismissed this equitable claim with leave to amend because Plaintiff had not pled "how they do not have an adequate remedy at law" nor did they "explain how they should be 'entitled to pursue alternative theories.'"  *Bolos*, 762 F. Supp. 3d at 1017 (quoting *SSFM*, 2023 WL 6037975, at *3).  The 4AC, however, now sufficiently alleges a plausible claim for equitable relief.  It explains the type of benefits they claim they were deprived of by Defendants' allegedly wrongful misclassification, and it alleges that existing remedies are inadequate.  *See* ECF No. 256 at PageID.6555–56.  And Plaintiffs' Opposition sufficiently questions whether the remedies identified by Defendants (administrative complaints with the Hawaii DLIR, claims or actions for refunds with the IRS, or wage claims under Hawaii law and the FLSA) would be adequate to preclude equitable claims.  *See* ECF No. 271 at PageID.7275–7280 (arguing, for

example, that statutory "reimbursement" would not fully compensate Plaintiffs, would not provide a disgorgement remedy, and could not compensate them for other damages resulting from lost benefits improperly withheld).

That is, at this pleading stage, "the [c]ourt cannot determine whether . . . an adequate legal remedy exists." *SSFM*, 2023 WL 6037975, at *3 (denying motion to dismiss because "such dismissals do not generally occur at this [pleading] point in the litigation," where "a plaintiff is generally entitled to pursue alternative theories"). As other federal courts have explained when addressing whether equitable claims are barred by an adequate remedy at law, "[i]n general, courts cannot determine the adequacy of a legal remedy from the pleadings." *In re Light Cigarettes*, 751 F. Supp. 2d at 191 (citation omitted); *In re Wal-Mart Wage & Hour Employment Practices*, 490 F. Supp. 2d 1091, 1121 (D. Nev. 2007) ("Because Plaintiffs have alleged intentional wrongdoing on Defendants' part, the Court will not dismiss Plaintiff's unjust enrichment claim, at least at this [motion-to-dismiss] stage of the proceedings, without further inquiry into whether, based on the facts at issue, the wage and hour statute provides a complete, adequate remedy at law . . . .") (applying Hawaii statutes).

Defendants also contend that Count V's equitable claim fails because the court determined in the January 2025 Order that there is no private cause of action to enforce Hawaii statutes requiring certain procedures or benefits (e.g.,

8

health insurance benefits under HRS Chapter 393, employment taxes under HRS

Chapter 383, and disability insurance under HRS Chapter 392).  *See, e.g.*, *Lil' Man*

*in the Boat, Inc. v. City & County of San Francisco*, 2018 WL 4207260, at *4

(N.D. Cal. Sept. 4, 2018) ("When a plaintiff lacks a private right of action under a

particular statute, she cannot argue around that limitation by bootstrapping her

cause of action onto an unjust enrichment or declaratory relief claim based on the

same statute.") (citations omitted); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187,

203 (2d Cir. 2005) (explaining, under New York law, that "[w]hen a plaintiff 'does

not possess a private right of action under' a particular statute, and 'does not allege

any actions independent of the requirements of that statute,' a 'claim for . . . unjust

enrichment is properly dismissed as an effort to circumvent the legislative

preclusion of private lawsuits for violation of the statute'") (quoting *Han v. Hertz*

*Corp.*, 784 N.Y.S. 2d 106, 107 (1st Dep't 2004) (brackets omitted)).  Such cases

also analyze whether a common law claim "existed independently" of the statute,

either by fact or law.  *See Lil' Man in the Boat*, 2018 WL 4207260, at *4; *Han*, 784

N.Y.S. 2d at 107.

But even if a Hawaii statute does not provide a private cause of action,

it does not *necessarily* follow that the statute precludes common law remedies—

rather, preclusion is a matter of legislative intent.  "[U]nder Hawaii law, 'a

statutory remedy is, as a rule, merely cumulative and does not abolish an existing

9

common law remedy unless so declared in express terms or by necessary implication." *In re Wal-Mart*, 490 F. Supp. 2d at 1121 (quoting *Watson v. Brown*, 67 Haw. 252, 256, 686 P.2d 12, 15 (1994)); *see also Lee v. Puamana Cmty. Ass'n*, 109 Haw. 561, 575 n.13, 128 P.3d 874, 888 n.13 (2006) ("It is well settled that, in the absence of legislative intent to supersede the common law, such common law principles apply.") (citations omitted); *cf. Lopresti v. Haseko (Hawaii), Inc*., 155 Haw. 89, 90, 556 P.3d 435, 436 (App. 2024) ("[N]othing in the statutory language or history of HRS §§ 480–2 and –13 expresses a legislative intent to make statutory remedies exclusive or to otherwise preclude an unjust enrichment claim and related remedy in appropriate circumstances."); *id.* ("[T]he mere availability of some figure of tort damages does not by itself preclude an award founded on unjust enrichment.  As Palmer notes in his treatise on restitution, '[t]he objectives of the two remedies are different, however: in the damage action the plaintiff seeks to recover for the harm done to him, whereas in the restitution action he seeks to recover the gain acquired by the defendant through the wrongful act.'") (quoting 1 George E. Palmer, The Law of Restitution § 2.1, at 51 (1978)).

For example, in denying a motion to dismiss an unjust enrichment claim in lieu of an "adequate remedy at law," *In re Light Cigarettes* followed this principle, reasoning that "[a]bsent specific legislative intent to the contrary, legislatures are deemed to draft legislation against the backdrop of the common

10

law and state statutes are interpreted *not* to displace state common law causes of action." 751 F. Supp. 2d at 193 (citations and internal editorial marks omitted). And indeed, in examining some of the very Hawaii wage and hour statutes at issue in this litigation—and allowing an unjust enrichment claim despite HRS § 387-12 specifically providing a statutory remedy—*In re Wal-Mart* reasoned that "[t]he legislative history does not show an intent to preclude common law remedies." 490 F. Supp. 2d at 1121 (citing Hawaii legislative history). The court allowed an equitable claim to remain because "Hawaii expressed no intent to limit employees' remedies to the statutory penalties." *Id.*[3]

At minimum, it is unclear at this pleading stage whether Hawaii's statutory scheme precludes equitable remedies. Given the established principle that a plaintiff may plead alternative remedies, it is appropriate to allow the unjust enrichment/quantum merit claim to proceed past the pleading stage. *See, e.g.*, *In re Light Cigarettes*, 751 F. Supp. 2d at 192 ("Even in this context, however, courts deny motions to dismiss when there is a question whether the exclusive remedy applies."); *In re Wal-Mart*, 490 F. Supp. 2d at 1121 (permitting unjust enrichment

---

[3] Allowing an equitable claim despite the availability of statutory damages would be consistent with the theory that the objective of an unjust enrichment remedy is disgorgement of "the gain acquired by the defendant through the wrongful act." *N.K. Collins, LLC v. William Gran & Sons, Inc.*, 472 F. Supp. 3d 806, 831 (D. Haw. 2020) (quoting *Porter v. Hu*, 116 Haw. 42, 56, 169 P.3d 994, 1008 (App. 2007)). "In contrast, cases dismissing unjust enrichment claims based on an adequate remedy at law involve differing claims for the same remedy." *Id.* (citations omitted). Depending on the situation, "unjust enrichment may plausibly fill in that gap" resulting from "insufficient damages." *Id.* at 830.

claim to proceed given uncertainty of whether Hawaii statutes provide an adequate remedy); *SSFM*, 2023 WL 6037975. at *3 ("[S]uch dismissals do not generally occur at this [pleading] point in the litigation," where "a plaintiff is generally entitled to pursue alternative theories."); *Massachusetts v. Mylan Laboratories*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (denying motion to dismiss unjust enrichment claim when legal remedy was available, on grounds that "[Plaintiff] may have to elect only one theory of recovery eventually, and [the Court] will not force Plaintiff to choose its remedy at this stage of the litigation").

## B.    Count VI—State and Federal Retaliation Claims

Defendants next seek to dismiss Count VI's claim for retaliation under both federal and state law.  As set forth in the January 2025 Order:

> To prevail for retaliation under the FLSA, [a plaintiff] must first make a prima facie showing that: (1) she engaged in activity protected by the FLSA; (2) a defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action."  *Lono v. Hawaii Pac. Univ.*, 2024 WL 1117109, at *9 (D. Haw. Mar. 13, 2024) (citation omitted).

*Bolos*, 762 F. Supp. 3d at 1019 (brackets omitted).  Similarly, under state law,

> a Hawaii Whistleblower Protection Act ("HWPA") claim under [HRS] § 378–62 has three requirements.  First, an employee must have "engaged in protected conduct" as defined by HRS § 378-62(1).  Second, the employer must take some "adverse action" against the employee.  And third, there must be "a causal connection between the alleged retaliation and the 'whistleblowing.'"

*Id.* (quoting *Tagupa v. VIPdesk, Inc.*, 125 F. Supp. 3d 1108, 1119 (D. Haw. 2015)).  Defendants challenge both the second (adverse action) and third (causation) elements.

### 1.    *Adverse Action*

The January 2025 Order determined that "as to both the FLSA and HWPA, the [prior operative Complaint] sufficiently alleges 'protected activity' in the filing of this action (and its continuing litigation) by Plaintiffs," *id.*, but dismissed the claim because:

> the conditions that Plaintiffs complain about applied broadly to *all* Hotel spa workers, whether or not they participated in the protected activity.  That is, the Defendants' allegedly retaliatory working conditions (which, according to the [prior operative Complaint] resulted from "ongoing construction at the hotel") applied to all Hotel spa workers, not just the Plaintiffs. They were not singled out, individually or as a subgroup, as there are no allegations that other similarly-situated workers were not "retaliated" against.

*Id.* at 1019–1020.

Defendants again seek to dismiss this Count, arguing that the 4AC re-alleges "the exact same generally applicable retaliation theories that the Court previously rejected."  ECF No. 264 at PageID.6889.  But Plaintiffs have now pled sufficient facts to make it plausible that any alleged adverse actions were not simply company-wide, and generally-applicable, policy changes, but rather were retaliatory actions based on "participation" in this litigation.  *See* ECF No. 256 at

PageID.6507–6508; *id.* at PageID.6511 ("Defendants clearly directed their retaliatory conduct *only* to named Plaintiffs in this lawsuit, who comprise the Retaliation Subclass."). The 4AC now alleges that, after initial filing of this action, at least one individual besides the Plaintiffs was a former independent contractor who did not participate in this litigation and was not subject to adverse actions. For example, the 4AC now alleges:

> To clarify, the only independent contractor [Chaka Ra] of Defendants who did not engage in protected activity was promoted to a managerial position before the new Spa opened in February 2024, whereas all other Spa workers employed by Defendants during this timeframe . . . were subjected to worse treatment and retaliation.

*Id.* at PageID.6509–6510. It further explains:

> None of the Retaliation Subclass Members were promoted. This disparity in treatment in promoting certain individuals who did not engage in protected activity is highly suggestive of retaliatory motive toward Retaliation Subclass Members.

*Id.* at PageID.6510.[4]

Defendants also again argue that the 4AC's allegations of alleged harmful acts do not constitute "adverse actions" as a matter of law. Both the prior version of the Complaint and the 4AC allege a variety of actions Defendants took

---

[4] The court does not consider the 4AC to be making a new claim based on a failure-to-promote theory, as Defendants argue. *See* ECF No. 264 at PageID.6891. Thus, Defendants' argument challenging such a theory is not relevant.

against the "Retaliation Subclass," such as requiring Plaintiffs to relocate to undesirable or unsanitary locations on the Grand Wailea's premises, to move heavy equipment and furniture without assistance, terminating jobs from independent-contractor status, and transitioning from independent contractor to employee status but with loss of seniority. *See Bolos*, 762 F. Supp. 3d at 1017–19; ECF No. 256 at PageID.6506–6511. Defendants contend that such "minor annoyances" are not cognizable actions for retaliation purposes. *See* ECF No. 264 at PageID.6891 n.6.

Both Hawaii and federal law recognize that any action that is "reasonably likely to deter employees from engaging in protected activity" is sufficient for retaliation purposes. *See Chan v. Wells Fargo Advisors, LLC*, 124 F. Supp. 3d 1045, 1056 (D. Haw. 2015) (reiterating that "the Ninth Circuit's test for adverse employment actions" applies to an HWPA claim) (citing *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)). *Ray* held that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." 217 F.3d at 1243. *Ray* explained that the Ninth Circuit "take[s] an expansive view of the type of actions that can be considered adverse employment actions" and noted that "lateral transfers, unfavorable job references, and changes in work schedules" are all likely to deter employees from engaging in protected activity." *Id.* at 1241, 1243; *see also*

15

*Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (stating

that an adverse employment action is one in which a reasonable employee would

have found might well "have dissuaded a reasonable worker from making or

supporting a charge of discrimination") (internal quotation omitted)

And, under Hawaii law, "[i]n *Crosby v. State Department of Budget &*

*Finance*, 76 Haw. 332, 341, 876 P.2d 1300, 1309 (1994), the Hawaii Supreme

Court noted that the [Hawaii] legislature did not define 'compensation, terms,

conditions, location, or privileges of employment' as used in [HRS] § 378–62."

*Chan*, 124 F. Supp. 3d at 1055. The Hawaii Supreme Court "stated that a 'broad

reading of the term "condition" in the HWPA is in accord with legislative intent,'

which the court noted was to provide protection to employees who report

suspected violations of law from "any form of retaliation by their employers." *Id.*

at 1055–56 (quoting *Crosby*, 76 Haw. at 341, 876 P.2d at 1309).

Given the "expansive view" and "broad reading" of the term "adverse

action" in this retaliation context, the court concludes that the 4AC sufficiently

alleges actions that could be adverse. *See Ray*, 217 F.3d at 1241; *Crosby*, 76 Haw

at 341, 876 P.2d at 1309. At this stage, the court will not parse every type of

allegation purported to be adverse, but in context, the 4AC meets Plaintiffs' burden

of demonstrating a plausible case of materially adverse actions resulting from

protected activity. *See, e.g.*, *Yonemoto v. McDonald*, 114 F. Supp, 3d. 1067, 1103–

1105 (D. Haw. 2015) (explaining that "'[c]ontext matters,' and '[a]n adverse

employment action may include, for example, transfers of job duties, negative

performance reviews, actions that affect an employee's compensation, and warning

letters," and finding that a move from a private office to a semi-public cubicle was

sufficiently adverse) (citations omitted).

## 2.    *Causation*

Next, Defendants again contend that some adverse actions occurred

over nine months after the lawsuit was filed, thus rendering them unactionable

because they could not have been caused by this lawsuit.  *See* ECF No. 264 at

PageID.6894.  The January 2025 Order already implicitly rejected—albeit without

much analysis—this timing argument.  *See Bolos*, 762 F. Supp. 3d at 1019 (stating

that "as to both the FLSA and HWPA, the [prior operative Complaint] sufficiently

alleges 'protected activity' in the filing of this action *(and its continuing litigation)*

by Plaintiffs") (emphasis added).  But, to explain, the court is not convinced that

the retaliation claims can be dismissed at this pleading stage based solely on the

alleged timing of the actions in relation to the litigation.

As the court recently explained in *Ho v. Kiewit Building Group, Inc.*,

2025 WL 776860 (D. Haw. Mar. 11, 2025), a lack of causation based on the length

of time between protected activity and adverse actions often depends on context.

In *Ho*, as with Defendants here,

17

Defendants [relied] on a series of cases analyzing whether temporal proximity between protected activity and adverse action is sufficient to establish a causal connection. *See, e.g.*, *Kama* [*v. Mayorkas*], 107 F.4th [1054,] 1061 [9th Cir. 2024]) (upholding determination that a 56-day gap between protected activity and termination was not enough by itself to establish retaliation); *You v. Longs Drugs Stores Cal., LLC*, 937 F. Supp. 2d 1237, 1258 (D. Haw. 2013) ("Causation may be inferred when an adverse employment action occurred 'fairly soon after the employee's protected expression.'") (quoting *Villiarimo* [*v. Aloha Island Air, Inc.*], 281 F.3d [1054,] 1065 [9th Cir. 2002)]); *Bassett* [*v. Hawaii Disability Rights Ctr.*], 2020 WL 7351113, at *13 [D. Haw. Nov. 20, 2020]] ("[W]hen the time lag between the protected activity and adverse employment action is too great, courts have 'found the absence of a causal link as a matter of law.'") (quoting *Pratt v. Haw. Dep't of Pub. Safety*, 308 F. Supp. 3d 1131, 1147 (D. Haw. 2018)). "As this court has noted, a 'temporal distance of several months makes a causal link more difficult to prove; a distance of five years severely undermines it.'" *You*, 937 F. Supp. 2d at 1258 (quoting *Stucky v. State of Haw., Dep't of Educ.*, 2007 WL 602105, at *5 (D. Haw. Feb. 15, 2007)).

2025 WL 776860, at *14.  But this court explained that such analysis is fact-specific, especially where Plaintiffs are not attempting to *establish* causation solely by a short period of time between protected activity and adverse action, but instead Defendants are attempting to *disprove* causation by a long period.  The court repeats its analysis at length here:

Nevertheless, "the Ninth Circuit has cautioned courts against engaging in a 'mechanical inquiry into the amount of time between the speech and alleged retaliatory action.'" *Id.* (quoting *Anthoine v. N. Central*

*Counties Consortium*, 605 F.3d 740, 751 (9th Cir. 2010)).
"There is no 'bright line' rule providing that any particular period is always too long or always short enough to support an inference." *Id.* (citing *Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003)). Whether an adverse employment action is intended to be retaliatory

> is a question of fact that must be decided in the light of the timing and the surrounding circumstances.  In some cases, the totality of the facts may form such a clear picture that a district court would be justified in granting summary judgment, either for or against a plaintiff, on the issue of retaliatory motive; but the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment.

*Coszalter*, 320 F.3d at 978.  This is because "if [courts] establish a per se rule that a specified time period is too long to support an inference of causation, well-advised retaliators will simply wait until that period has passed [and then] retaliate with impunity." *Id.*  Rather, "the inquiry is fact-specific and depends on both the degree of proximity and what, if any, other evidence supports an inference of [causation]." *Kama*, 107 F.4th at 1059–60 (citing *Coszalter*, 320 F.3d at 978).  As the Seventh Circuit has reasoned:

> [T]he fact that a year passed between [plaintiff's] protected expression and her termination does not mean that she cannot prove that retaliation caused her discharge; instead, it means that the timing of her discharge, in itself, does not support an inference of retaliation, and she must come forward with other evidence.

19

> *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th
> Cir. 2000) (citations omitted).

*Ho*, 2025 WL 776860, at *14.

And so, given that at least some of the alleged retaliation occurred in the midst of ongoing litigation—such as making employment offers to only some of the Retaliation Subclass, or depriving some of seniority in 2024, ECF No. 256 at PageID.6509—the court is not convinced that the claim fails for lack of causation (especially at this motion to dismiss stage, where *Ho* concluded similarly at a summary judgment stage).

Similarly, the court rejects at this stage Defendants' argument that certain Plaintiffs cannot prove causation because they were not added to the operative Complaint until after the alleged adverse action occurred (thus contending that the "protected activity" of filing suit could not have caused the prior alleged adverse action).  *See* ECF No. 264 at PageID.6895 (arguing that "the retaliation claims of certain Retaliation Subclass members fail for the additional reason that they cannot establish a causal nexus because they did not join this lawsuit until after" February 2024); *id.* n.10 (specifying those particular Plaintiffs).

In this regard, the 4AC defines the "Retaliation Subclass Members" as:

> all named Plaintiffs who continued to work for
> Defendants after this lawsuit was filed and were
> threatened with retaliation and/or subjected to retaliation

20

> by Defendants, as described in more detail below, for
> their participation and engagement in protected activities,
> including their participation in this lawsuit as named
> Plaintiffs, leading up to and during Defendants [sic]
> conversion of their job classifications from independent
> contractors to W-2 employees on or around February 2,
> 2024.

ECF No. 256 at PageID.6490. Although the 4AC might otherwise be read to limit

these Plaintiffs to those who were actually named as Plaintiffs prior to alleged

retaliatory acts, *see id*. at PageID.6511, the 4AC nevertheless sufficiently (if not

ambiguously) alleges that even those current Plaintiffs who were not *initially*

named in prior versions of the Complaint, could have been retaliated against for

prior "participation" in the litigation, e.g., before actually joining as named

Plaintiffs. *See id*. at PageID.6490. Challenges to any particular Plaintiff could be a

matter for summary judgment if evidence of causation is lacking, but at this stage,

plausible claims are stated.[5]

## C.    Count II—Unpaid Wages in Violation of HRS §§ 388-10(a), 388-11(a)

Lastly, Defendants challenge Count II of the 4AC, which alleges more

generic claims for unpaid wages—that is, distinct from overtime and minimum

---

[5] Plaintiffs' Opposition argues—consistent with the lengthy procedural history of this case—that certain Plaintiffs had been identified and were known to Defendants much earlier than when the Complaint was actually amended to add them (and these Plaintiffs were added after a stay of litigation during which the parties were mediating the dispute). *See* ECF No. 271 at PageID.7285. Although the 4AC does not plead such precise details of the procedural history as to these Plaintiffs, such Plaintiffs could still be "participating" in this lawsuit even before actually being named. In this regard, the 4AC is sufficient to proceed past the pleading stage.

wage statutory violations.  It includes claims under HRS §§ 388-10(a) and 388-11(a), which authorize a private action for amounts of unpaid wages, as well as interest on those amounts.  It alleges that Defendants "failed to pay Plaintiffs and the Putative Class Members for all hours worked and all commissions earned on the work they performed," and that Plaintiffs frequently worked "off-the-clock" due to the misclassification scheme.  ECF No. 256 at PageID.6532.

Defendants primarily seek dismissal in reliance on *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014) (holding that "generalized allegations asserting violations of the minimum wage and overtime provisions of the FLSA" are insufficient).  The January 2025 Order applied *Landers* and dismissed the wage and overtime claims without prejudice for lack of specificity.  *See Bolos*, 762 F. Supp. 3d at 984–85.  *Landers* requires that "a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week," 771 F.3d at 645, and that a plaintiff "should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* at 646.

But it is not clear that *Landers* (and its requirement for situations of "at least one workweek in which [a plaintiff] worked in excess of forty hours")

22

applies outside the minimum wage and overtime context, to more general claims of

unpaid wages.  Rather, the 4AC sufficiently alleges that the intentional

misclassification of Plaintiffs led to hours worked for which Plaintiffs were not

paid (even if no overtime or minimum wage violations occurred), lost commissions

due to Grand Wailea discounts, and "comped" clients' bills by the Grand Wailea.

*See* ECF No. 256 at PageID.6531–32.  Given the detailed allegations of how the

misclassification occurred, there is a plausible claim that Plaintiffs were not paid

wages or benefits for hours that were worked.  Under *Twombly* and *Iqbal*, it is

generally sufficient if a complaint "contain[s] sufficient allegations of underlying

facts to give fair notice and to enable the opposing party to defend itself

effectively," where "the factual allegations that are taken as true . . . plausibly

suggest an entitlement to relief, such that it is not unfair to require the opposing

party to be subjected to the expense of discovery and continued litigation."  *Starr

v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

And, because Count II can include claims for wages not paid for all

hours worked—but are not otherwise violations of overtime or minimum wage

laws—the court will not strike Count II as duplicative, as Defendants seek in the

alternative.  *See* ECF No. 264 at PageID.6898.  Computation of estimation of hours

worked without being paid, or classification of any such hours as overtime or

minimum wage violations, would likely be matters of proof or accounting—but are not suited for adjudication at this motion-to-dismiss stage.

## V. **CONCLUSION**

For the foregoing reasons, Defendants' Partial Motion to Dismiss, ECF No. 264, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 16, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge