JONES DAY
Michael J. Gray (*pro hac vice*)
mjgray@jonesday.com
Brent D. Knight (*pro hac vice*)
bdknight@jonesday.com
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone:  +1.312.782.3939
Facsimile:   +1.312.782.8585

LITTLER MENDELSON P.C.
Judy M. Iriye, Bar No. 10569
jiriye@littler.com.com
500 Ala Moana Blvd.
Suite 7400, PMB #404
Honolulu, HI 96813
Telephone:  +1. 808.650.6064
Facsimile:   +1.310.553.5583

*Additional Defense Counsel Listed on Next Page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURIE BOLOS, et al., on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Waldorf=Astoria Management LLC operating as Grand Wailea, A Waldorf Astoria Resort; GW Manager LLC dba Grand Wailea, A Waldorf Astoria Resort; BRE Iconic GWR Owner LLC; John Paul Oliver, an individual; and DOES 1-25,<br><br>Defendants. | Civil No. 1:23-cv-00104-JMS-KJM<br><br>**DEFENDANTS WALDORF=ASTORIA MANAGEMENT LLC'S, GW MANAGER LLC'S, BRE ICONIC GWR OWNER LLC'S, AND JOHN PAUL OLIVER'S NOTICE OF MOTION AND SECOND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>The Hon. J. Michael Seabright<br>Hearing Date: TBD<br>Hearing Time: TBD<br>Trial Date: November 12, 2025 |

JONES DAY
Liat L. Yamini (*pro hac vice*)
lyamini@jonesday.com
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071.2452
Telephone: +1.213.489.3939
Facsimile: +1.213.243.2539

*Attorneys for Defendants*,
 Waldorf=Astoria Management LLC;
 GW Manager LLC; BRE Iconic GWR
 Owner LLC; and John Paul Oliver

## DEFENDANTS' SECOND
## MOTION FOR SUMMARY JUDGMENT

Defendants Waldorf=Astoria Management LLC, GW Manager LLC, BRE Iconic GWR Owner LLC, and John Paul Oliver, by and through their undersigned counsel, hereby move this Court for summary judgment on Plaintiffs' retaliation claims under the Fair Labor Standards Act ("FLSA") and the Hawaii Whistleblower Protection Act ("HWPA") (Count VI).

This Motion is made pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, District of Hawaii Local Rules 7.1-7.5, 7.8, and 56.1, and this Court's July 10, 2025 Order (ECF No. 316). It is supported by the attached Memorandum, the Second Separate and Concise Statement of Facts ("SSMF") with exhibits attached thereto, the record before this Court, and such arguments as may be presented at any hearing. Pursuant to Local Rule 7.1(c), Defendants respectfully request that the Court hold a hearing on Defendants' Second Motion for Summary Judgment.

Dated:  July 15, 2025

Respectfully submitted,

JONES DAY


By: */s/ Michael J. Gray*
    Michael J. Gray

*Attorney for Defendants*,
Waldorf=Astoria Management LLC;
GW Manager LLC; BRE Iconic GWR
Owner LLC; and John Paul Oliver

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................1

II.  FACTUAL BACKGROUND .................................................1

III.  LEGAL STANDARD .........................................................6

IV.  ARGUMENT ......................................................................7

    A.  Five Retaliation Plaintiffs Admit They Have No Claims..........7

    B.  No Retaliation Plaintiff Makes Out a Prima Facie Case ..........8

    C.  No Reasonable Jury Could Find That Defendants'
        Legitimate Reasons Were Pretext for Unlawful
        Retaliation ...............................................................14

V.  CONCLUSION ...................................................................16

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Bolos v. Waldorf=Astoria Mgmt. LLC*,
762 F. Supp. 3d 975 (D. Haw. 2025)...................................................12

*Clark Cty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001)......................................................................10

*Dunbar v. Twentieth Century Fox Television*,
2024 WL 2107712 (C.D. Cal. Mar. 8, 2024)......................................10

*Finazzo v. Haw. Airlines*,
2007 WL 2668711 (D. Haw. Sept. 7, 2007)........................................8

*Grilho v. Pioneer Hi-Bred Int'l, Inc.*,
2020 WL 2086486 (D. Haw. Apr. 30, 2020).................................9, 10

*Hall v. IBEW Plus Credit Union, Inc.*,
538 F. App'x 747 ..........................................................................11

*In re Barboza*,
545 F.3d 702 (9th Cir. 2008) ...........................................................6

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...........................................................6

*Lo v. Verizon Wireless LLC*,
2015 WL 3603726 (D. Nev. Jun. 8, 2015) ........................................12

*Lono v. Haw. Pac. Univ.*,
2024 WL 1117109 (D. Haw. Mar. 13, 2024) .................................7, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
475 U.S. 574 (1986).......................................................................6

## TABLE OF AUTHORITIES
### (continued)

**Page**

*O'Connell v. Potter*,

    2006 WL 8451516 (D. Haw. Mar. 29, 2006) ......................................................10

*Rahman v. Am. Tire Distributor, Inc.*,

    2014 WL 6451296 (W.D. Wash. Nov. 17, 2014)...............................................12

*Vaentich v. United States*,

    194 F. Supp. 3d 1033 (E.D. Cal. Jul. 8, 2016)....................................................8

## SECOND MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

This Court should grant summary judgment on the Fair Labor Standards Act ("FLSA") and Hawaii Whistleblower Protection Act ("HWPA") retaliation claims brought by 47 Plaintiffs.  These Plaintiffs all allege that they suffered adverse actions as a result of their participation in this lawsuit.  None, however, makes out a *prima facie* case.  Some Plaintiffs affirmatively conceded that they lack retaliation claims.  Causation is lacking for many Plaintiffs' claims because it is undisputed that Defendants had no notice of their participation in this lawsuit until *after* the alleged adverse actions.  And no Plaintiff can identify an actionable adverse action because the actions on which they rely equally impacted spa contractors who had and had not yet engaged in protected activity at the time of the alleged adverse action.  Even if Plaintiffs could establish a *prima facie* case, no reasonable jury could find that Defendants' legitimate reason for these actions—its construction of a new spa with a new business model—was pretext for unlawful retaliation.  For any and all of these reasons, Defendants' Second Motion for Summary Judgment should be granted.

## II.     FACTUAL BACKGROUND

In their Fourth Amended Complaint, 47 Plaintiffs (the "Retaliation Plaintiffs") assert retaliation claims under the FLSA and the HWPA, alleging that they "were threatened with retaliation and/or subjected to retaliation by Defendants . . . for their participation and engagement in protected activities, including their

participation in this lawsuit as named Plaintiffs, leading up to and during Defendants [sic] conversion of their job classifications from independent contractors to W-2 employees on or around February 2, 2024." *See* ECF No. 256 at ¶¶ 114, 275.[1]  In particular, the Retaliation Plaintiffs allege that they all equally suffered the following adverse actions as a result of joining this lawsuit: (i) they were required to work in poor conditions *(Id.* at ¶ 184); (ii) they were required to move equipment to accommodate remodeling and construction at the Hotel (*id.*); (iii) they were relocated numerous times to "inappropriate and hazardous areas of the hotel" (*id.* at ¶ 185); (iv) they had their independent contractor agreements terminated and were invited to apply for positions as employees at the new spa (*id.* at ¶ 187); and (v) they lost their "seniority" (*id.* at ¶ 188).

Many of the facts relevant to these claims are set out in Defendants' initial summary judgment motion.  But as particularly relevant here, the Grand Wailea

---

[1] These Plaintiffs are: (1) Adriana Xavier Maguire; (2) Ana Cristina Malaguti Miranda; (3) Meta Barbara Smith; (4) Beverly Helm; (5) Carey Carroll; (6) Carol Kato; (7) Chelsea Wood; (8) Cheryl Bouillon; (9) Chihiro MacKnight; (10) Chimiko Fukui; (11) Danielle Olson; (12) Dawn Boucher; (13) Elysia Semmerling; (14) Emiko Reiss; (15) Gabrielle Kater; (16) Heavenly Quintero; (17) Hiroko Kawachi; (18) Inge Brodehl; (19) Jacqueline Bui; (20) Jovanee Alviedo; (21) Kaori Iwatake-Williams; (22) Karen Brandon; (23) Karen Stavash; (24) Kari Lawrence; (25) Kathleen Blaser; (26) Laurie Bolos; (27) Laurie Noble; (28) Marisela Bracho; (29) Melanie Friske; (30) Melea Moir; (31) Michael Painchaud; (32) Misty Hudspeth; (33) Molly Brooke; (34) Nancy Lawrence; (35) Nancy Vandervoort; (36) Olga Gorina; (37) Pamela Gist; (38) Robin Bolos; (39) Sri Marlina Caminos; (40) Stacy Nalani Zane; (41) Susan Olmsted; (42) Tiffany Tea; (43) Tina Ecklar; (44) Tina Nguyen; (45) Tsuyoshi Saito; (46) Wendie Lindsay; and (47) Yuliya Labrosse.

initiated a "very lengthy, more than two-year construction of a new spa" in or around 2021. SSMF ¶ 1. The new spa eventually opened as the Kilolani Spa in or around February 2024. *Id.* During the extensive renovations, the Hotel relocated spa workers into temporary locations to provide services. SSMF ¶ 2. Initially, in or around June 2021, the spa was relocated to a wing of the Hotel where treatments were performed in approximately 20 Hotel rooms. SSMF ¶ 3. Then, in or around October 2022—when former Spa Director Daniel Silva was onboarded and before the filing of this lawsuit—the Hotel developed a plan, which Mr. Silva was involved in implementing, for spa workers to perform services in an outdoor space. *Id.* ¶ 4.

Throughout this time period, the Hotel developed a new business model with a new concept for the Kilolani Spa, and Hotel management ultimately made the decision to use an employee model, rather than independent-contractor model, for spa service providers. SSMF ¶ 5. Hotel management made this decision because it wanted "greater control" over service providers and "needed to have employees that [it] could subsequently train and engage with and [that would] understand [the Hotel's] core values." SSMF ¶ 6. The filing of this lawsuit played no part in that decision. SSMF ¶ 7.

In October 2023, the Grand Wailea hired a new Spa Director, David Erlich, to manage the Kilolani Spa under the new employee model. SSMF ¶ 8. In November 2023, in accordance with the new model, the Grand Wailea informed all

spa independent contractors that the Kilolani Spa was scheduled to open in February 2024 and invited them to apply for positions that would be posted.  SSMF ¶ 9.  Upon the opening of the Kilolani Spa, the Grand Wailea terminated all Independent Contractor Agreements.  SSMF ¶ 10.

Laurie Bolos, one of the 47 Retaliation Plaintiffs, initiated this lawsuit on February 23, 2023.  *See* ECF No. 1; SSMF ¶ 14.  A First Amended Complaint, which added 17 of the 47 Retaliation Plaintiffs, was filed on May 19, 2023.[2]  *See* ECF No. 30; SSMF ¶ 15.  Neither the original nor the First Amended Complaint asserted retaliation claims.   On September 8, 2023, Plaintiffs' counsel first informed Defendants' counsel that their "clients in the Salon [] informed [Plaintiffs' counsel] of hazardous working conditions" including that "[P]laintiffs have been moved outside to temporary make-shift treatment rooms which are unable to withstand the omnipresent Maui trade winds."  SSMF ¶ 16.  Plaintiffs considered these conditions "to be retaliation."  *Id.*  At this time, 29 of the 47 Plaintiffs had yet to join this lawsuit. *See* SSMF ¶¶ 17-20.

On September 28, 2023, Plaintiffs' counsel shared a draft Second Amended Complaint with Defendants' counsel, which, among other things, proposed adding

---

[2] Those Plaintiffs include: Beverly Helm, Carey Carroll, Carol Kato, Cheryl Bouillon, Gabrielle Kater, Heavenly Quintero, Jacqueline Bui, Karen Brandon, Karen Stavash, Melea Moir, Nancy Vandervoort, Pamela Gist, Robin Bolos, Stacy Zane, Tina Nguyen, Wendie Lindsay, and Yuliya Labrosse.

20 additional Retaliation Plaintiffs to the lawsuit.  *See* SSMF ¶ 17.[3]  On October 19, 2023, Plaintiffs' counsel shared another draft Second Amended Complaint with Defendants' counsel, which proposed adding 3 more Retaliation Plaintiffs.[4]  *See* SSMF ¶ 18.  On November 24, 2023, Plaintiffs' counsel shared another draft Second Amended Complaint with Defendants' counsel, which proposed adding another 3 Retaliation Plaintiffs.[5]  *See* SSMF ¶ 19.  On January 30, 2024, Plaintiffs' counsel shared that 2 more Retaliation Plaintiffs wished to join the lawsuit in a Second Amended Complaint.[6]  *See* SSMF ¶ 20.  On February 19, 2024, Plaintiffs filed a proposed Second Amended Complaint seeking to add an additional Retaliation Plaintiff, Chelsea Wood.  *See* SSMF ¶ 21.  On June 20, 2024, Plaintiffs filed a Second Amended Complaint adding the 29 Retaliation Plaintiffs who were not named in the First Amended Complaint.  *See* ECF No. 156.

---

[3] Those Plaintiffs include: Jovanee Alviedo; Marisela Bracho; Inge Brodehl; Molly Brooke; Tina Ecklar; Melanie Friske; Olga Gorina; Misty Hudspeth; Kaori Iwatake-Williams; Hiroko Kawachi; Chihiro MacKnight; Adriana Xavier Maguire; Laurie Noble; Susan Olmsted; Danielle Olson; Michael Painchaud; Emiko Reiss; Tsuyoshi Saito; Elysia Semmerling; and Tiffany Tea.

[4] Those Plaintiffs include: Kathleen Blaser, Dawn Boucher, and Kari Lawrence.

[5] Those Plaintiffs include: Chimiko Fukui, Nancy Lawrence, and Ana Cristina Malaguti Miranda.

[6] Those Plaintiffs include: Sri Marlina Caminos and Meta Barbara Smith.

## III.    LEGAL STANDARD

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; the opponent must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *In re Oracle Corp.*, 627 F.3 at 387.

- 6 -

## IV.    ARGUMENT

To recover for retaliation under the FLSA, a plaintiff must first establish a *prima facie* case by showing that: (1) she engaged in protected activity; (2) defendants took an adverse employment action against her; and (3) there was a causal link between the protected activity and the adverse action.  *See Lono v. Haw. Pac. Univ.*, 2024 WL 1117109, at *9 (D. Haw. Mar. 13, 2024).  The standard under the HWPA is similar.  *See id.*; *see also* ECF No. 283, at 12.  If a plaintiff establishes a *prima facie* case, "the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse action."  *Lono*, 2024 WL 1117109, at *9.  "Thereafter, the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual."  *Id.*

Defendants are entitled to summary judgment on Plaintiffs' retaliation claims for a host of overlapping reasons.  Five Retaliation Plaintiffs admitted that they have no retaliation claim.  The rest fail to establish a *prima facie* case and cannot show pretext in any event.

### A.    Five Retaliation Plaintiffs Admit They Have No Claims.

As an initial matter, summary judgment is warranted on the retaliation claims brought by five Retaliation Plaintiffs—Jovanee Alviedo, Cheryl Bouillon, Inge Brodehl, Beverly Helm, and Heavenly Quintero—because each of them stated, under oath, that they are "not contending retaliation" or are "not making a claim for

retaliation" in response to Defendants' Interrogatory No. 10. *See* SSMF ¶ 24. Because each of these Plaintiffs admitted that they do not have a retaliation claim, summary judgment is warranted on their claims. *See, e.g.*, *Vaentich v. United States*, 194 F. Supp. 3d 1033, 1036 (E.D. Cal. Jul. 8, 2016) (granting summary judgment where plaintiff conceded an essential element of his claim in response to a sworn interrogatory response) (collecting cases).

### B. No Retaliation Plaintiff Makes Out a *Prima Facie* Case.

The Retaliation Plaintiffs all fail to establish the elements of a *prima facie* case of retaliation. Many cannot establish a causal link between their protected activity and the alleged adverse actions because their alleged adverse actions occurred before Defendants became aware of their protected activity. And none can identify an actionable adverse action because the actions at issue affected all spa contractors equally.

***Causal Link***. "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in protected activity" at the time of the adverse action. *Finazzo v. Haw. Airlines*, 2007 WL 2668711, at *15 (D. Haw. Sept. 7, 2007) (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793 (9th Cir. 1982)). Many Retaliation Plaintiffs fail this straightforward timing requirement.

*First*, three[7] of the Retaliation Plaintiffs cannot establish a causal link between their alleged protected activity—*i.e.*, their "participation in this lawsuit as named Plaintiffs" (ECF No. 256 at ¶ 114)—and the alleged adverse actions, because they did not seek to join this lawsuit until *after* all of the alleged adverse actions occurred. Plaintiffs allege that they were informed "[i]n *November 2023*" of the Hotel's decision to "terminate all of [the independent contractors'] contracts with the hotel"—a decision that had been made by the Hotel months prior (SSMF ¶ 8)—and that they "would be required to apply for positions as employees at the hotel's newly constructed Spa." ECF No. 256 at ¶ 187 (emphasis added). And they allege that, throughout the time period "since the filing of this lawsuit" in February 2023, they were forced to work in poor working conditions. *Id.* at ¶ 184. *See also id.* at ¶ 185 (also alleging Plaintiffs were "relocated numerous times" beginning in "*September 2023*") (emphasis added). But Plaintiffs' counsel did not inform Defendants' counsel that these three Plaintiffs intended to join this lawsuit until January 30, 2024 and February 19, 2024—months *after* the alleged adverse actions occurred. *See* SSMF ¶¶ 20-21.

It is well established that "[t]here can be no causal link [to support a retaliation claim] where, as here, the alleged adverse employment actions happened before the

---

[7] These Plaintiffs include: Sri Marlina Caminos, Meta Barbara Smith, and Chelsea Wood.

subject protected activity." *Grilho v. Pioneer Hi-Bred Int'l, Inc.*, 2020 WL 2086486, at *13 (D. Haw. Apr. 30, 2020) (granting summary judgment on HWPA retaliation claim where some of the alleged adverse actions occurred prior to the alleged protected activity); *O'Connell v. Potter*, 2006 WL 8451516, at *15–16 (D. Haw. Mar. 29, 2006) (granting summary judgment on Title VII retaliation claim where the protected activity "happened after the alleged adverse action"); *see also Dunbar v. Twentieth Century Fox Television*, 2024 WL 2107712, at *12 (C.D. Cal. Mar. 8, 2024) (holding that "retaliation claim [] fail[ed] as a matter of law" where undisputed evidence established that the alleged adverse action happened "weeks before [plaintiff's] counsel even sent [a] demand letter"); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (rejecting retaliation claim where adverse action occurred before employer was made aware of protected activity). Because the alleged adverse actions that these three Plaintiffs complain of occurred—by their own allegations— months before their protected activity, they cannot establish a causal link between their protected activity and the alleged adverse actions. Summary judgment is therefore warranted on their retaliation claims.

*Second*, it is undisputed that 29 Retaliation Plaintiffs experienced the allegedly poor working conditions prior to engaging in any protected activity.[8]

---

[8] These Plaintiffs include: Jovanee Alviedo, Kathleen Blaser, Dawn Boucher, Marisela Bracho, Inge Brodehl, Molly Brooke, Sri Marlina Caminos, Tina Ecklar, Melanie Friske, Chimiko Fukui, Olga Gorina, Misty Hudspeth, Kaori Iwatake-

Plaintiffs' counsel raised the alleged "unsafe working conditions"—including that Plaintiffs were working in supposedly "hazardous working conditions" and had been "moved outside to temporary make-shift rooms"—on September 8, 2023. SSMF ¶ 16. But Plaintiffs' counsel did not inform Defendants of the 29 "additional people who wished to join [the case] as named plaintiffs" in a Second Amended Complaint until, at the very earliest, September 28, 2023. SSMF ¶ 17. *See also id.* ¶¶ 18-21. As such, those allegedly adverse working conditions bear no potential causal connection to those 29 Plaintiffs' claims. *See Hall v. IBEW Plus Credit Union, Inc.*, 538 F. App'x 747. 748 (9th Cir. 2013) ("Because [plaintiff] has not shown that [defendant] knew she engaged in protected activity before it terminated her, there is no causal connection[.]").

*Adverse Action*. In any event, no reasonable jury could find that any of the Retaliation Plaintiffs suffered an adverse action in the first place.

As an initial matter, two Retaliation Plaintiffs—Gabrielle Kater and Carol Kato—cannot establish causation or an adverse action because it is undisputed that they left the Grand Wailea long before this lawsuit was filed. SSMF ¶¶ 22-23. Accordingly, they could not have been subjected to any adverse action as a result of

---

Williams, Hiroko Kawachi, Kari Lawrence, Nancy Lawrence, Chihiro MacKnight, Adriana Xavier Maguire, Ana Cristina Malaguti Miranda, Laurie Noble, Susan Olmsted, Danielle Olson, Michael Painchaud, Emiko Reiss, Tsuyoshi Saito, Elysia Semmerling, Meta Barbara Smith, Tiffany Tea, and Chelsea Wood.

their participation in the lawsuit. *See, e.g.*, *Rahman v. Am. Tire Distributor, Inc.*, 2014 WL 6451296, at *3 (W.D. Wash. Nov. 17, 2014) (granting summary judgment on Title VII retaliation claim where "Plaintiff [] failed to identify any protected activity in which he engaged prior to his termination"); *Lo v. Verizon Wireless LLC*, 2015 WL 3603726, at *5 (D. Nev. Jun. 8, 2015) ("Plaintiff conducted no protected activity during his employment.  Plaintiff did not file his EEOC claim until after his resignation.").

As to the others, the undisputed facts establish that each adverse action of which the Retaliation Plaintiffs complain impacted all Spa contractors alike, regardless of whether, at the time of the alleged adverse actions, they had engaged in any protected activity.   This Court has already recognized that allegedly retaliatory actions are not adverse where they "applied broadly to *all* Hotel spa workers, whether or not they participated in the protected activity."  *Bolos v. Waldorf=Astoria Mgmt. LLC*, 762 F. Supp. 3d 975, 1019 (D. Haw. 2025) (collecting "[m]any other retaliation decisions follow[ing] this principle") (emphasis in original).  As this Court explained, "[i]t simply does not follow that an employer's announcement of a new policy that affects all or substantially all of its employes in the same manner would so adversely affect the Plaintiffs' lives that it would have dissuaded them from the protected activity."  *Id.* (citing *Weger v. City of Ladue*, 500 F.3d 710, 727 (8th Cir. 2007)).

The Retaliation Plaintiffs have made no attempt to show that the allegedly adverse actions impacted them in particular—as opposed to all spa contractors generally.  Indeed, as established above, the alleged poor working conditions impacted Plaintiffs who had already joined the lawsuit, as well as those who had not yet joined the lawsuit at the time of the alleged adverse action, equally.  SSMF ¶¶ 16-21.  It is also undisputed that all spa contractors—including those who had and had not yet joined the lawsuit—were informed in November 2023 that the Kilolani Spa was scheduled to open in February 2024 and were encouraged to apply to positions as employees.  SSMF ¶ 9.  The Independent Contractor Agreements for all spa contractors were subsequently terminated.  SSMF ¶ 10; *see also, e.g.*, Yamini Ex. J, Zane Dep., at 180:18-20 ("Q. Isn't it true that all independent contractors had their agreements terminated?  A. Yes.").  And in their depositions, several Retaliation Plaintiffs admitted that the other alleged adverse actions applied to all independent contractors, too.  *See* SSMF ¶ 11; *see also, e.g.*, Yamini Ex. K, Noble Dep., at 149:17-150:2 ("Q. But in terms of when you say that we lost seniority, are you referring to everyone, all the massage therapists?  A. Yes."); *Id.* at 151:7-14 (A. But they made us - - they terminated us and made us reapply for our positions with the general public.  Q.  Okay.  And did they do that for everyone that was working as an independent contractor at the spa?  A.  Yes.").

- 13 -

Because *all* of the Hotel's independent contractor spa workers were subjected to the alleged adverse actions regardless of whether they engaged in protected activity, summary judgment is warranted on all retaliation claims.

### C.    No Reasonable Jury Could Find That Defendants' Legitimate Reasons Were Pretext for Unlawful Retaliation.

Even if Plaintiffs could establish a prima facie case of retaliation, Defendants had legitimate, non-discriminatory reasons for the alleged adverse actions—and no reasonable jury could find that those legitimate reasons were pretext for unlawful retaliation.  It is undisputed that the Hotel terminated the Independent Contractor Agreements for all spa contractors because they were "open[ing] a new business"— the Kilolani Spa—and it "wanted greater control" over the service providers in the new spa under "a new business model."  SSMF ¶¶ 6, 10.  The Hotel ultimately "made a determination to move forward with employees versus independent contractors" because it "needed to have employees that [it] could subsequently train and engage with and [that could] understand [the Hotel's] core values."  *Id.* ¶ 6.  It is also undisputed that, to develop this new business, the Hotel "[w]ent through a very lengthy, more than two-year construction of a new spa," SSMF ¶ 1, which resulted in the temporary relocation of spa services to other places on the Hotel property.  *Id.* ¶ 2; *see also* Yamini Ex. F, Erlich Dep., at 155:17-25 (testifying that spa workers stopped working outside "[t]he day [the Hotel] opened Kilolani").  And it is undisputed that the Hotel did not track Plaintiffs' "seniority" as independent

contractors, such that the Hotel did not recognize seniority for any contractors who applied to Kilolani "because seniority didn't exist." SSMF ¶ 11. Nonetheless, the Hotel did, in fact, recognize the contractors' length of service to the Grand Wailea by "translat[ing] their . . . contracted years" and "allow[ing] [the contractors] to pick in that . . . order for work opportunity" and shift selection. SSMF ¶ 12.

Plaintiffs present no evidence "that [the Hotel's] reason [for the alleged adverse actions] is pretextual." *Lono*, 2024 WL 1117109, at *9. To the contrary, several Plaintiffs admitted in their depositions that the alleged poor working conditions were due to spa renovations—not due to any protected activity—and began long before this lawsuit was filed. SSMF ¶ 2; *see also, e.g.*, Yamini Ex. B, Fukui Dep., at 82:19-88:12 (testifying that spa workers were required to work in various locations due to "Hotel renovation[s]" from 2020 to February 2024 and that Plaintiffs assisted in moving equipment during this time to support the renovations); Yamini Ex. C, Olmsted Dep., at 193:9-22 (testifying that the spa workers were "working in a wing of the [Hotel] for a year and a half while they were remaking the spa" but then the Hotel "booked [the] wing, so they needed to move [the spa workers] and "moved [them] outside . . . so that [the Hotel] could [] refurbish those rooms and use those rooms"); Yamini Ex. D, Brooke Dep., at 35:11-38:35 (testifying that the spa was under renovations from "early 2021 or late 2020" until "February 2024" and that the spa workers were "moved many times" as a result because the

amount of space that the spa used was significantly reduced); Yamini Ex. E, Nguyen Dep., at 90:9-16 (testifying that she was performing services in a "guest room" "because the spa [was] being renovated").

Accordingly, summary judgment on Plaintiffs' retaliation claims is also warranted because Plaintiffs cannot establish that the legitimate business reasons proffered for the actions Defendants took, are pretextual.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant summary judgment on Count VI.

Dated:  July 15, 2025

Respectfully submitted,

JONES DAY


By:  _/s/ Michael J. Gray_
        Michael J. Gray

*Attorney for Defendants*,
Waldorf=Astoria Management LLC;
GW Manager LLC; BRE Iconic GWR
Owner LLC; and John Paul Oliver