IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURIE BOLOS, ET AL., on behalf of herself and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>WALDORF=ASTORIA MANAGEMENT LLC OPERATING AS GRAND WAILEA, a Waldorf Astoria Resort; ET AL.,<br><br>    Defendants. | CIV. NO. 23-00104 JMS-KJM<br><br>ORDER CERTIFYING QUESTION OF LAW TO THE HAWAII SUPREME COURT; CERTIFICATE OF QUESTION |

## ORDER CERTIFYING QUESTION OF LAW TO THE HAWAII SUPREME COURT

## I. INTRODUCTION

The court certifies the following question of Hawaii law to the Hawaii

Supreme Court under Hawaii Rule of Appellate Procedure ("HRAP") 13(a):

> What unit of measure—a *per-workweek unit*, as utilized under federal law when determining compliance with minimum wage provisions of the Fair Labor Standards Act, or a *per-hour unit* as utilized under minimum wage provisions of some States—applies when measuring compliance and damages under Hawaii's minimum wage provisions, Hawaii Revised Statutes §§ 387-2 and 387-12?

To follow, the court provides the relevant background and context, i.e., "a statement of prior proceedings in the case, a statement of facts showing the nature of the cause, . . . and the circumstances out of which the question arises." HRAP 13(b).  Certifying a question of law to the Hawaii Supreme Court is governed by HRAP 13(a), which provides:

> When a federal district or appellate court certifies to the Hawai'i Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawai'i that is determinative of the cause and that there is no clear controlling precedent in the Hawai'i judicial decisions, the Hawai'i Supreme Court may answer the certified question by written opinion.

Accordingly, this Order also explains why the court believes the current posture of this litigation meets Rule 13(a)'s standards.

## II.  BACKGROUND AND ANALYSIS

### A.    Hawaii Minimum Wage Provisions (Hawaii Revised Statutes ("HRS") § 387-2 et seq.) Are at Issue

As alleged in the Fourth Amended Complaint ("4AC"), this action is a combined individual, class, and collective action brought under federal and Hawaii law on behalf of "each of the massage therapists, nail technicians, estheticians, and hair stylists who worked at the Spa Grande located within the Grand Wailea-Waldorf Astoria Resort, 3850 Wailea [Alanui] Drive, Wailea, Hawai'i, 96753 . . . at any time during the relevant statutes of limitation, and who Defendants misclassified as 'independent contractors.'"  ECF No. 256 at PageID.6478.  Prior

2

versions of the operative complaint alleged as many as 16 counts against

Defendants Waldorf=Astoria Management LLC, GW Manager LLC, BRE Iconic

GWR Owner LLC, and John Paul Oliver (collectively, "Defendants"), making

claims related to violations of federal and Hawaii minimum wage and overtime

provisions by wrongfully and willfully misclassifying Plaintiffs as independent

contractors rather than employees of the Grand Wailea resort on Maui.  The 4AC

now alleges seven Counts, after the court dismissed several Counts of a Third

Amended Complaint ("TAC") at a motion-to-dismiss stage.[1]  *See Bolos v.*

*Waldorf=Astoria Mgmt. LLC*, 762 F. Supp. 3d 975 (D. Haw. 2025) ("*Bolos I*")

(granting in part and denying in part motions to dismiss the TAC); *see also Bolos v.*

*Waldorf=Astoria Mgmt. LLC*, 2025 WL 1685052 (June 16, 2025) ("*Bolos II*")

(addressing certain Counts of the 4AC).  Those decisions describe the factual and

legal background in detail, and the court need not repeat that background here.

---

[1]  The seven remaining Counts are: (1) "Willful Misclassification of Employees and Failure to Pay Minimum Wage in Violation of [HRS] §§ 387-2 and 387-12" (individually and as a class action); (2) "Unpaid Wages Brought Against All Defendants as a Class Action by Plaintiffs Individually and on Behalf of All Others Similarly Situated in Violation of [HRS] §§ 388-10(a), 388-11(a)"; (3) "Unlawful Failure to Reimburse and Unlawful Paycheck Deductions in Violation of [HRS] § 388-6" (individually and as a class action); (4) "Failure to Pay Overtime in Violation of Fair Labor Standards Act [("FLSA")], 29 U.S.C. § 201 et seq." (individually and as a collective action); (5) "Unjust Enrichment and Restitution *Quantum Meruit*" (individually and as a class action); (6) "Retaliation in Violation of the FLSA (29 U.S.C. § 215(a)(3)) and [HRS] § 378-62") (individually and as a class action); and (7) "Detrimental Reliance on a Promise" (individually and as a class action).  *See generally* ECF No. 256.

What is most relevant here, however, is that the court is now considering (among other matters) a Motion for Partial Summary Judgment brought by Defendants, which was heard on October 6, 2025. *See* ECF Nos. 287, 357. One of the primary issues in that Motion concerns Count One of the 4AC, a Hawaii law claim[2] seeking recovery under HRS § 387-12 for alleged violations of Hawaii's minimum wage statute, HRS § 387-2. *See* ECF No. 256 at PageID.6514 (asserting individual and class action causes of action for "Willful Misclassification of Employees and Failure to Pay Minimum Wage in Violation of [HRS] §§ 387-2 and 387-12").[3]

---

[2] In analyzing the TAC, the court earlier determined that Plaintiffs' statutory minimum wage claims would more properly be brought under Hawaii law—not under the minimum wage provisions of the FLSA, codified at 29 U.S.C. § 206. *See Bolos I*, 762 F. Supp. 3d at 995. In contrast, statutory claims for violations of *overtime* laws must be brought under the FLSA, 29 U.S.C. § 207(a)(1), not under Hawaii law. *See id.* at 994–995 (citing *In re Wal-Mart*, 490 F. Supp. 2d 1091, 1129 (D. Nev. 2007)). Accordingly, Plaintiffs brought Count One in their 4AC only under Hawaii law.

[3] HRS § 387-2 ("Minimum wages") provides in pertinent part:

> (a) Except as provided in section 387-9 and this section, every employer shall pay to each employee employed by the employer, wages at the rate of not less than:
>
> . . . .
>
> (4) $7.75 per hour beginning January 1, 2015;
> (5) $8.50 per hour beginning January 1, 2016;
> (6) $9.25 per hour beginning January 1, 2017;
> (7) $10.10 per hour beginning January 1, 2018;
> (8) $12.00 per hour beginning October 1, 2022;
> (9) $14.00 per hour beginning January 1, 2024; . . . .

(continued . . . )

4

**B.    The Unit of Measure for Determining Compliance Is Central to Deciding Count One, and Authorities Are Split**

The unit of measure—per workweek or per hour—of the amount of wages earned may be the determining factor in whether a minimum wage statute has been violated.  *See, e.g.*, *Wieben v. Nevada Gold Mines LLC*, 2025 WL 1785885, at *6 (D. Nev. June 27, 2025) ("Under the workweek method, the total wages paid to an employee during an entire workweek is divided by the total number of hours worked by that employee in the same workweek.") (internal quotation marks omitted).[4]  For example, consider the following hypothetical

---

And HRS § 387-12 ("Penalties; collection of unpaid wages; injunctions; etc.") provides in pertinent part:

> (b) Liability to employee.  Any employer who violates any provision of sections 387-2 and 387-3 shall be liable to the employee or employees affected in the amount of their unpaid minimum wages or unpaid overtime compensation, and in case of wilful violation in an additional equal amount as liquidated damages.

> (c) Collection suits; attorney's fee; assignments; relief from costs.  Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of oneself or themselves and other employees similarly situated, or the employee or employees may designate an agent or representative to maintain action for and in behalf of all employees similarly situated.  The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, in the event the plaintiff or plaintiffs prevail, allow a reasonable attorney's fee to be paid by the defendant and costs of the action. . . .

[4]  *Wieben* explained how the unit of measure can be dispositive:

> Plaintiffs do not dispute that if the Court applies [Defendant's] proposed workweek method—considering only whether Plaintiffs'

(continued . . . )

situation: Assume the minimum wage in Hawaii is $12 an hour (as it was from

October 1, 2022 until January 1, 2024 under HRS § 387-2). Then assume that a

person was paid $24 an hour for 20 hours of work over a workweek, resulting in

total wages of $480. Then assume it is later determined that the person actually

worked 30 hours during the workweek, but the person was not paid for the 10 extra

hours based on the employer willfully misclassifying the person as an independent

contractor rather than an employee. The person files suit, alleging a violation of

HRS § 387-2, and seeking recovery of unpaid wages and liquidated damages under

HRS § 387-12(b) as well as attorney's fees and costs under § 387-12(c).

Using a workweek unit of measure, no statutory minimum wage

violation occurred because the employee—having worked 30 hours, with the

minimum wage of $12—was entitled to $360 of minimum wages, and was paid

$480 for the week. That is, there would be no violation of the minimum wage law

because the employee was paid more than the minimum wage for the hours worked

---

weekly compensation exceeded Nevada's minimum hourly wage
of approximately $12 when averaged across total compensated and
uncompensated hours—they cannot support their minimum wage
claims. . . . On the other hand, there is no question that if the Court
takes Plaintiffs' proposed approach and considers whether they
received minimum wage for individual hours worked, Plaintiffs
have adequately supported minimum wage claims by alleging they
received $0 in compensation for the time they spent dealing with
equipment, tools and clothing before and after their shifts.

2025 WL 1785885, at *7 (emphasis and footnote omitted).

during the workweek.  But if the unit of measure is an hour (not a workweek), the

employee would be entitled to an additional $120 (10 extra hours multiplied by

$12 per hour of minimum wages).  That is, so the argument goes, the employee is

entitled to a minimum wage under HRS § 387-2 for every hour the employee

actually worked.  And in an action under § 387-12(c), the employee may also seek

attorney's fees and costs.  Further, if a "willful" violation occurred, the employee

would be entitled to an *additional* $120 as liquidated damages under § 387-12(b).

   The Ninth Circuit (as with most other Circuits) has held that the

workweek is the applicable unit of measure for determining compliance with

federal minimum wage provisions.  *See, e.g.*, *Douglas v. Xerox Business Servs.,*

*LLC*, 875 F.3d 884, 886–90 (9th Cir. 2017).  *Douglas*, addressing the minimum-

wage provision of the Fair Labor Standards Act ("FLSA"), specifically considered

"whether the relevant unit for determining minimum-wage compliance is the

workweek as a whole or each individual hour within the workweek."  *Id.* at 885.[5]

The Ninth Circuit first determined that "the traditional tools of statutory

construction do not conclusively resolve the per-hour versus per-workweek

question," *id.* at 887, but then looked to the United States Department of Labor,

---

[5] Specifically—although *Douglas* commented that "[l]ittle can be gleaned from the statutory text"—the opinion described "the operative provision" as 29 U.S.C. § 206(a)(1)(C), which provides that "[e]very employer shall pay to each of his employees who in any workweek in engaged in commerce . . . not less than . . . $7.25 an hour."  875 F.3d at 886.

Wage and Hour Division's policy statement from 1940, which adopted a per-workweek measure for the FLSA. *Id.* And, although the statement was not promulgated through formal rulemaking, Congress has not since amended the FLSA to adopt a different standard. *Id.* Similarly, *Douglas* recognized that, in 1941, a court accepted that statement as the Department of Labor's choice, and "[s]ince then, the Second, Fourth, Eighth, and D.C. Circuits have embraced the per-workweek construction." *Id.* at 888 (citing *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985)). *See also Balasanyan v. Nordstrom, Inc.*, 913 F. Supp. 2d 1001, 1009 (S.D. Cal. 2012) (applying the workweek standard); *but see Norceide v. Cambridge Health Alliance*, 814 F. Supp. 2d 17, 24 (D. Mass. 2011) (rejecting the weekly averaging method in favor of the hour-by-hour method); *cf. Dove*, 759 F.2d at 171 (recognizing that "[h]our-by-hour compliance . . . although tilting in the employees' favor, would not thwart Congress' endeavor 'to guarantee a minimum livelihood to the employees covered by the [FLSA],'" and that "the minimum wage laws logically could be construed as requiring hour-by-hour compliance") (quoting *Klinghoffer*, 285 F.2d at 490).

Defendants' Motion thus seeks to apply that federal interpretation to

Hawaii's statutory minimum wage provision.  As Defendants state the issue:

> This motion first presents a narrow and purely legal
> question: whether Plaintiffs' commissions must be
> apportioned across all hours worked in the week when
> assessing minimum wage compliance under Hawaii law
> (Count 1).  Under the [FLSA], minimum wage
> compliance must be evaluated by dividing the total
> amount of commissions/compensation received in a
> workweek by the number of hours worked.  Given the
> similarities between Hawaii's Wage and Hour Law and
> the FLSA, the same approach should apply, and
> Plaintiffs' commissions earned in a workweek must be
> apportioned over all hours worked in a workweek when
> ascertaining minimum wage compliance.

ECF No. 287 at PageID.7881.  And it is true that this court often looks to the FLSA

in interpreting Hawaii's wage and hour statutes.  *See, e.g.*, *Bolos I*, 762 F. Supp. 3d

at 1001; *Davis v. Four Seasons Hotel Ltd.*, 810 F. Supp. 2d 1145, 1158–59 (D.

Haw. 2011).[6]

---

[6]  Defendants cite, for example, to legislative history from enactment of Hawaii's minimum wage law in 1941.  *See* ECF No. 344-5 at PageID.15347.  That committee report states in part:

> It was also determined to make the wage fixing procedure conform
> more closely to the federal law, and to include as one of the
> elements to be considered by any wage board in determining a
> wage rate, the rate, if any, fixed by collective bargaining in the
> industry considered, an element included in the bill as it passed the
> last session but omitted from the present bill.

> . . . .

(continued . . . )

But the federal workweek measure has been rejected in several states when applying state-law minimum wage provisions (often based on specific language of state statutes).  For example, in *Armenta v. Osmose, Inc.*, 37 Cal. Rptr. 3d 460 (Cal. App. 2005), a California Court of Appeals rejected the "FLSA model of averaging all hours worked 'in any work week' to compute an employer's minimum wage obligation" in favor of an hourly unit.  *Id.* at 468.  *Armenta* relied on (1) a California statute specifically "provid[ing] that any employee receiving 'less than the legal minimum wage' is entitled to recover the unpaid balance of the 'full amount' owed," *id.* at 467; as well as (2) "a clear legislative intent to protect the minimum wage rights of California employees to a greater extent than federally," *id.* at 468; and (3) "California's labor statutes [that] reflect a strong public policy in favor of full payment of wages for all hours worked."  *Id.*

Similarly, in *Carranza v. Dovex Fruit Co.*, 416 P.3d 1205 (Wash. 2018), the Washington Supreme Court—answering certified questions from a federal court in the Eastern District of Washington—rejected "[Defendant] Dovex Fruit Company's argument that it need ensure only that each worker's average *weekly* compensation is equal to at least minimum wage."  *Id.* at 1208.  *Carranza*

---

In conforming the present bill more closely to the federal act, the amendments have been drawn with the hope of insuring that it be clear that the purpose of the Act is to secure the highest minimum wage rate for labor (within the fixed limits prescribed) that will be compatible with a continuance of the industry in full operation.

10

imposed an hourly requirement, given the plain language of the Washington

Minimum Wage Act ("MWA") requiring payment "at a rate of not less than [the

applicable minimum wage] *per hour*," applied to certain agricultural workers paid

on a "piece rate" basis. *Id.  See also, e.g.*, *Hill v. Xerox Bus. Servs., LLC*, 426 P.3d

703, 706, 708 (Wash. 2018) (en banc) (holding—after certification of a question

from the Ninth Circuit—that Washington's MWA "does not permit such

[workweek] averaging for hourly workers. . . . hourly workers must receive their

contractual rate of pay or minimum wage, whichever is higher, for each hour

worked" and reiterating that "'an employer *must* pay an employee at least the

minimum wage for work' performed") (quoting *Seattle Prof'l Eng'g Emps. Ass'n

v. Boeing Co.*, 991 P.2d 1126, 1133 (Wash. 2000)); *In re Lowe's Companies, Inc.

Fair Lab. Standards Act & Wage & Hour Litig.*, 517 F. Supp. 3d 484, 515

(W.D.N.C. 2021) (agreeing that "Washington does not recognize 'workweek

averaging' as a means for an employer to meet its minimum wage obligations")

(citing *Hill*, 426 P.3d at 706).[7]

   And in Nebraska, federal courts applying Nebraska law have adopted

an hourly unit—specifically rejecting the federal workweek rule—in interpreting

---

[7] Well before the Washington Supreme Court answered the certified question, the Ninth Circuit had affirmed a district court decision deciding that a per-hour standard applies for hourly employees in Washington.  *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 912 (9th Cir. 2003) ("The district court concluded that Washington courts were 'likely' to adopt the per-hour standard for hourly employees.  We agree.").

Nebraska's minimum wage statute. *See Abarca v. Werner Enters., Inc.*, 774 F.

Supp. 3d 1125, 1147 (D. Neb. 2025) ("This Court has repeatedly declined to apply

the *Klinghoffer* [workweek] rule to the [Nebraska Wage and Hour Act] and has

instead calculated minimum wage on an hour-by-hour basis.") (citing *Petrone v.*

*Werner Enters, Inc.*, 121 F. Supp. 3d 860, 872 (D. Neb. 2015) ("[C]alculations

under the Nebraska Wage and Hour act will be based on an hour-by-hour basis,

whereas the *Klinghoffer* rule shall be applied to the FLSA violations.")); 

*Walkinshaw v. Saint Elizabeth Reg'l Med. Ctr.*, 428 F. Supp. 3d 171, 183 (D. Neb.

2019) ("*Petrone* answered in no uncertain terms that calculations under the

Nebraska Wage and Hour Act will be based on an hour-by-hour basis, whereas the

*Klinghoffer* rule shall be applied to the FLSA violations." (internal quotation marks

omitted) (other citation omitted)).

      Other federal courts have rejected a workweek rule when addressing

minimum wage provisions from Nevada and Georgia (again, depending on the

language of those state law provisions). *See Porteous v. Capital One Servs. II,*

*LLC*, 809 F. App'x 354, 357 (9th Cir. 2020) (mem.) ("Absent contrary authority

from the Nevada Supreme Court, we think the [Nevada Minimum Wage Act] is

best interpreted to guarantee a minimum wage for each individual hour worked,

rather than as an average over a workweek.") (applying Nevada law); *Wieben*,

2025 WL 1785885, at *6 (rejecting the federal "workweek method" in favor of an

12

hourly measure under the Nevada Minimum Wage Act); *Anderson v. S. Home Care Servs., Inc.*, 2016 WL 11521626, at **3–4 (N.D. Ga. Sept. 21, 2016) (rejecting a weekly method in favor of an hourly method, given statutory language requiring wages "for each hour worked") (Georgia law).

In short—without determining which rule might be the majority— there is at least a split between federal and state interpretations as to the unit of measure in determining compliance with the language of various minimum wage statutes. And the parties admit that no cases from Hawaii's appellate courts have addressed the unit of measure (and the court has found none).[8] Nor has a federal

---

[8] Plaintiffs point to guidance from the Hawaii Department of Labor, Wage Standards Division, answering "frequently asked questions." *See* https://labor.hawaii.gov/wsd/wage-and-hour-faqs/ (last retrieved Nov. 12, 2025). In that guidance, question 8 asks: "Is there a minimum number of hours an employer must pay an employee if the employee reports to work and finds out they were taken off the schedule?" The Hawaii Department of Labor answered:

> Under Chapter 387, HRS, Wage and Hour Law, *an employer is required to pay for all hours that an employee is "suffered or permitted to work."* There is no provision that requires an employer to pay an employee for a canceled shift. An employer is not required to pay an employee who reports to work and is immediately informed that no work is available and the employee is allowed to leave. *However, if the employee reports to work at his/her scheduled time and is suffered or permitted to wait for work before being informed that no work is available, the employer is required to compensate the employee, at the employee's regular rate of pay, for the time spent waiting between the employee's scheduled start time and the time the employee is sent home.*

(Emphases added). But, although the emphasized language provides some support for Plaintiffs' position that they should be paid for all hours worked, the language does not answer the question whether an hourly or workweek unit applies. Nor is it clear how much weight a court must give to such guidance, which appears only on a website with no indication that it is a formally

(continued . . . )

court applying Hawaii law ruled on the question when interpreting Hawaii's

minimum wage statute.

## C.    Hawaii Rule of Appellate Procedure 13(a) Appears to Be Satisfied

As set forth earlier, before certifying a question of law to the Hawaii

Supreme Court there must be (1) "a question concerning the law of Hawai'i," that

is (2) "determinative of the cause," and (3) "no clear controlling precedent in the

Hawaii judicial decisions."  HRAP 13(a).  Here, there is no dispute that the issue

before the court concerns a question of Hawaii law, and that there is no "clear

controlling precedent" in Hawaii case law.  The court thus turns to whether the

issue is "determinative of the cause" in the current posture.

The Hawaii Supreme Court has not specifically decided the exact

contours of the phrase "determinative of the cause" under HRAP 13(a).  *See, e.g.*,

*In re Ho*, 2017 WL 1323406, at *2 (Bankr. D. Haw. Apr. 7, 2017) ("No Hawaii

case law defines the phrase 'determinative of the cause,' but it probably means that

the Hawaii Supreme Court will not [answer] questions that may not be necessary to

the resolution of some or all of the claims in the case.").  In *Lima v. Deutsche Bank*

*National Trust Co.*, 149 Haw. 457, 494 P.3d 1190 (2021), however, the Hawaii

Supreme Court found a question to be "determinative of the cause," given that the

---

adopted administrative rule or opinion.  And the court has found no specific guidance in Hawaii
Administrative Rules.  *See* 12 Haw. Admin R., Ch. 20, Subch. 1, §§ 12-20-1 to 12-20-13
(regarding the Administration and Enforcement of the Wage and Hour Law).

Hawaii District Court "will likely grant summary judgment in favor of Defendant,"
depending on the answer. *Id.* at 464, 494 P.3d at 1197. *Lima* reasoned that the
plaintiff "must be able to establish a prima face case for compensatory damages . . .
to survive Defendant['s] motion for summary judgment," and so "the District
Court's question is determinative of the cause if [Plaintiffs] fail to make such a
case." *Id.*, 494 P.3d at 1197.

Moreover, the Hawaii Supreme Court has accepted certified questions
even if other causes of action remain in the litigation. *See, e.g.*, *Villon v. Marriott
Hotel Servs., Inc.*, 130 Haw. 130, 134, 306 P.3d 175, 179 (2013) (explaining the
procedural history for the certified questions, indicating that other claims were
stayed pending resolution); *Villon v. Marriott Hotel Servs., Inc.*, 2011 WL
4047373, at *2 (D. Haw. Sept. 8, 2011) (certifying question on one count of a
multicount complaint); *Miller v. Hartford Life Ins. Co.*, 126 Haw. 165, 173, 268
P.3d 418, 426 (2011) (answering certified question on bad faith with other tort
counts apparently remaining in federal court).[9]

---

[9] That is, the Hawaii Supreme Court has not limited itself to answering certified
questions only where the entire litigation turns on the answer. *See, e.g.*, *Ill. Nat'l Inc. Co. v.
Nordic PLC Constr., Inc.*, 2013 WL 160263, at *3 (D. Haw. Jan. 14, 2013) (declining to certify a
question under HRAP 13(a), speculating that "'[c]ause' [in 'determinative of the cause'] might
refer to the entire case, as opposed to one of the claims" or that "[t]reating 'cause' as referring to
a single cause of action would mean that the requirement would be satisfied even if other claims
not affected by the Question might yield the same recovery").
In this regard, the contours of the "dispositive of the cause" element of HRAP 13(a) are
ultimately matters of Hawaii law as defined by Hawaii's appellate courts. And so, this court is
(continued . . . )

The court thus concludes that, for at least some of the individual Plaintiffs, the issue regarding the unit of measure is "determinative of the cause" as to Count One.  Indeed, the parties agreed during prior proceedings discussing the certification question that there are at least some Plaintiffs whose Hawaii statutory minimum wage claims would necessarily fail if a workweek unit applies as the relevant measure.[10]  *See, e.g.*, ECF No. 362 at PageID.15589–15590; 15594. Although Plaintiffs make class action allegations under Hawaii law and collective action allegations under the FLSA,[11] the court has not yet certified the action as a class or collective action, and there are approximately 100 individual Plaintiffs with potential minimum wage claims.

---

not necessarily restricted to statements about the standard articulated in federal cases such as *Yamashita v. LG Chemical, Ltd.*, 48 F.4th 993, 1001–1002 (9th Cir. 2022) ("A question of law is 'determinative,' or 'dispositive,' if at least one answer to the question would completely dictate the result in a case and therefore resolve the dispute.") (citing *McKesson v. Doe*, 592 U.S. 1, 5–6 (2020)).  The Hawaii Supreme Court can, of course, decline to accept certification as not "determinative of the cause," and if it deems appropriate, can clarify the meaning of that phrase and explain the limitations on the type of questions that fit Rule 13(a).

[10]  Defendants argue that the answer is not determinative because there are different ways for Plaintiffs' minimum wage claims to fail.  *See* ECF No. 354 at PageID.15553–15554.  That is, they argue that even if an hourly rate applies, Plaintiffs still might not prevail because, for example, they would still need to prove they were misclassified and that they worked the hours. Defendants say that such questions "[are] likely to result in disputed issues of fact to be decided by the ultimate factfinder."  *Id.* at PageID.15554.  But, again, if the answer is as Defendants advocate (i.e., a workweek unit), at least some Plaintiffs would necessarily lose—whether at summary judgment or at trial—as to Count One for violations of Hawaii's minimum wage provisions.  *See Lima*, 149 Haw. at 464, 494 P.3d at 1197.

[11]  *See, e.g.*, *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1099–1102 (9th Cir. 2018) (explaining terminology and procedures of a collective action under the FLSA).

Further, in a more general sense, the answer to the certified question appears to be the critical component to estimate the total amount of possible damages for the Plaintiffs' case—and from that practical perspective, the answer could be "dispositive" of this litigation.  For example, Defendants have represented to the court that the unit of measure for determining compliance with HRS § 387-2 is "the single biggest issue driving the parties' respective valuations of the case." ECF No. 320 at PageID.12568.  According to Defendants, deciding the motion "will most efficiently drive resolution of [a] significant issue[] of law that will in turn drive this case to resolution."  *Id.*  Without knowing the Hawaii Supreme Court's answer to this important issue of Hawaii law, the parties might be required to litigate the minimum wage question to verdict, only to have the issue of Hawaii law raised in the Ninth Circuit on appeal (where the certification question might again arise).  And "[w]hile federal courts should not abdicate their duty to decide issues properly before them by routinely certifying questions to state supreme courts, certification under appropriate circumstances can result in significant conservation of the litigants' time and money as well as judicial resources." *Richardson v. City & County of Honolulu*, 802 F. Supp. 326, 345 (D. Haw. 1992).

Whether to certify a question is a matter of judicial discretion.  *See, e.g.*, *Robert Ito Farm, Inc. v. County of Maui*, 111 F. Supp. 3d 1088, 1107 (D. Haw. 2015); *Richardson*, 802 F. Supp. at 345 ("The decision whether to certify a state

17

law question to the state supreme court rests in the sound discretion of the federal

district court.") (citation omitted).  The court recognizes that certifying a question

regarding the unit of measure is not mandatory, and that a federal court generally

"should not certify questions when the answer is reasonably clear and the court

can, using its best judgment, predict how the Hawaii Supreme Court would decide

the issue." *Takushi v. BAC Home Loans Servicing, LP*, 2011 WL 13129739, at *1

(D. Haw. Dec. 9, 2011) (citations omitted).  But here, after reviewing the statutory

language, its legislative history, and case law from other jurisdictions, the court is

not convinced that the answer is reasonably clear.  Even if the court could make a

prediction, the court ultimately deems it appropriate to certify this important

question to the Hawaii Supreme Court.

## III.  CONCLUSION

Considering the posture of this case and the importance of an answer

(both for this case and, more generally, for an understanding of Hawaii's statutory

minimum wage requirements), the court certifies the following question of Hawaii

law under HRAP 13(a):

> What unit of measure—a *per-workweek unit*, as utilized
> under federal law when determining compliance with
> minimum wage provisions of the Fair Labor Standards
> Act, or a *per-hour unit* as utilized under minimum wage
> provisions of some States—applies when measuring
> compliance and damages under Hawaii's minimum wage
> provisions, Hawaii Revised Statutes §§ 387-2 and 387-
> 12?

18

This court's "phrasing of the question should not restrict the [Hawaii Supreme Court's] consideration of the problems and issues involved. The [Hawaii Supreme Court] may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." *Allstate Ins. Co. v. Alamo Rent-A-Car, Inc.,* 137 F.3d 634, 637 (9th Cir. 1998) (brackets, citation and quotation marks omitted).

Attached to this Order is a formal "Certificate of Question" as required by HRAP 13(b), which will also be filed separately in the court's docket. The Certificate incorporates by reference this Order Certifying Question of Law to Hawaii Supreme Court to fulfill Rule 13(b)'s requirement to include "a statement of prior proceedings in the case, a statement of facts showing the nature of the cause, the question of law to be answered, and the circumstances out of which the question arises."

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 12, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

19