IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURIE BOLOS, ET AL., on behalf of herself and others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>WALDORF=ASTORIA MANAGEMENT LLC OPERATING AS GRAND WAILEA, a Waldorf Astoria Resort, ET AL.,<br><br>        Defendants. | CIV. NO. 23-00104 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT, ECF NO. 319 |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT,
ECF NO. 319**

## I. INTRODUCTION

Some of the Plaintiffs in this case claim that they were retaliated

against because of their participation in this litigation, in violation of federal and

state law. *See* ECF No. 256 at PageID.6556–6557.[1] Defendants Waldorf=Astoria

Management LLC, GW Manager LLC, BRE Iconic GWR Owner LLC, and John

---

[1] The Fourth Amended Complaint ("4AC"), ECF No. 256, filed on March 12, 2025, is the operative complaint.

Paul Oliver (collectively, "Defendants") filed a "Second Motion for Summary
Judgment" ("Motion"), ECF No. 319, seeking summary judgment on these
retaliation claims.  For the reasons explained in this Order, the Motion is
GRANTED as to the retaliation claims brought by Plaintiffs Jovanee Alviedo,
Cheryl Bouillon, Inge Brodehl, Beverly Helm, Gabrielle Kater, Carol Kato, and
Heavenly Quintero, and DENIED in part and GRANTED in part as to all other
retaliation claims.

## II. <u>BACKGROUND</u>

### A.    **Factual Background**

      This action is a combined individual, class, and collective action
brought on behalf of dozens of named Plaintiffs and others who were "massage
therapists, nail technicians, estheticians, and hair stylists who worked at the Spa
Grande located within the Grand Wailea-Waldorf Astoria Resort" in Wailea,
Hawaii.  ECF No. 256 at PageID.6478.[2]  The original Complaint alleged that
Defendants had "willfully misclassified" Plaintiffs and similarly situated Spa
workers as independent contractors, resulting in the loss of wages and benefits
owed under federal and state law.  *See* ECF No. 1.

---

    [2]  This Order refers to the Spa Grande as "the Spa" and the Grand Wailea-Waldorf
Astoria Resort as "the Hotel."

The original Complaint was filed on February 23, 2023, while the Spa was undergoing renovations. *See id.*; Defendants' Concise Statement of Facts ("DSOF"), ECF No. 319-1 at PageID.12330.[3]  After the Complaint was filed, Defendants allegedly relocated the Spa workers to various "inappropriate and hazardous areas" and required them to move "heavy materials, furniture, and equipment." ECF No. 256 at PageID.6507.  When the Spa reopened, Defendants terminated all independent contractor agreements.  DSOF, ECF No. 319-1 at PageID.12331.  Defendants then invited the former independent contractors to apply for jobs at the new Spa, but allegedly offered below-market compensation, reneged on promises to honor seniority, and made rehiring contingent on participation in "mandatory training and orientation days" with "little to no notice." ECF No. 256 at PageID.6508–6510.  In the 4AC, Plaintiffs allege that these and other actions were taken in retaliation for their participation in the lawsuit, in violation of the Fair Labor Standards Act ("FLSA") and Hawaii law. *Id.* at PageID.6556–6557; 29 U.S.C. § 215(a)(3); HRS § 378-62.[4]

---

[3]  This Order cites Defendants' Concise Statement of Facts, ECF No. 319-1, for undisputed facts only.  For disputed facts, this Order cites directly to the evidence in the record.

[4]  This Order refers to the Plaintiffs asserting retaliation claims as the "Retaliation Plaintiffs."  The 47 named Retaliation Plaintiffs are Laurie Bolos, Jovanee Alviedo, Kathleen Blaser, Robin Bolos, Dawn Boucher, Cheryl Bouillon, Marisela Bracho, Karen Brandon, Inge Brodehl, Molly Brooke, Jacqueline Bui, Sri Marlina Caminos, Carey Carroll, Tina Ecklar, Melanie Friske, Chimiko Fukui, Pamela Gist, Olga Gorina, Beverly Helm, Misty Hudspeth,

(continued . . . )

**B.     Procedural Background**

On July 15, 2025, Defendants filed the instant Motion, ECF No. 319, seeking summary judgment on all retaliation claims.  Plaintiffs filed their Opposition, ECF No. 336, on August 29, 2025, and on September 12, 2025, Defendants filed their Reply, ECF No. 345.  The court held a hearing on the Motion on October 6, 2025.  *See* ECF No. 357.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue is "genuine" only if there is "a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party," and a fact is "material" only if it "could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48 (1986)).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine issue of material fact.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  If the moving party carries its burden,

---

Kaori Iwatake-Williams, Gabrielle Kater, Carol Lynn Kato, Hiroko Kawachi, Yuliya Labrosse, Kari Lawrence, Nancy Lawrence, Wendie Lindsay, Chihiro MacKnight, Adriana Xavier Maguire, Ana Cristina Malaguti Miranda, Melea Moir, Tina Nguyen, Laurie Noble, Susan Olmsted, Danielle Olson, Heavenly Quintero, Michael Painchaud, Emiko Reiss, Tsuyoshi Saito, Elysia Semmerling, Meta Barbara Smith, Karen Stavash, Tiffany Tea, Nancy Vandervoort, Chelsea Wood, and Nalani Zane.  ECF No. 256 at PageID.6556.

the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted). The nonmoving party must show more than "some metaphysical doubt as to the material facts," *id.* at 586, and must identify more than "the mere existence of a scintilla of evidence" in its favor. *In re Oracle*, 627 F.3d at 387; *see also Liberty Lobby*, 477 U.S. at 248 (stating that a party opposing summary judgment cannot "rest upon the mere allegations or denials of his pleading").

When considering a motion for summary judgment, the court "does not make credibility determinations or weigh conflicting evidence." *Soremkun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Instead, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Conclusory statements and speculation, however, are not sufficient to defeat a motion for summary judgment. *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Under Local Rule 56.1(f), the court does not have an "independent duty to search and consider any part of the record not otherwise referenced" by the parties, and the court "will review only those portions of the exhibits specifically identified" by the parties. In other words, "judges are not 'like pigs, hunting for

truffles' in the record, and all arguments must be clearly briefed with citations to supporting evidence." *Bill Darrah Builders, Inc. v. Hall at Makena Place, LLC*, 2018 WL 650195, at *6 n.6 (D. Haw. Jan 31, 2018) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (same).

## IV. <u>DISCUSSION</u>

### A. Statutory Framework

To establish a retaliation claim under the FLSA, a plaintiff must first make a prima facie showing that (1) she engaged in activity protected by the statute, (2) her employer took an adverse action against her, and (3) there was a causal link between the protected activity and the adverse action. *Lono v. Haw. Pac. Univ.*, 2024 WL 1117109, at * 9 (D. Haw. Mar. 13, 2024).[5]  The same showing is required for a retaliation claim under Hawaii law. *Id.*  If the plaintiff establishes her prima facie case, the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for the adverse action. *Id.*  Once a legitimate reason has been offered, the burden "shifts back to the plaintiff to demonstrate that the employer's reason is pretextual." *Id.*

---

[5]  The Ninth Circuit recently reiterated that under the FLSA, retaliatory conduct is not "limited to adverse *employment* action, and instead covers 'adverse action' more generally." *Hollis v. R& R Restaurants, Inc*., --- F.4th ---, 2025 WL 3212363, at *8 (9th Cir. Nov. 18, 2025) (emphasis added) (citations omitted).  But here, all the alleged adverse actions relate to the Retaliation Plaintiffs' employment relationship with Defendants.

When seeking summary judgment on a retaliation claim, a defendant can prevail by showing the absence of a genuine issue of material fact relating to any element of the plaintiff's prima facie case. *See Brignoni v. J.C. Penney Corp.*, 2015 WL 11455758, at *1 (C.D. Cal. Nov. 16, 2015) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) ("To prevail on summary judgment, the movant must first show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim."). Alternatively, a defendant can prevail by showing that no reasonable factfinder could conclude that the stated reasons for the adverse action were pretextual. *See, e.g.*, *Chambers v Hanson Aggregates LLC*, 2016 WL 11760726, at *9 (C.D. Cal. Sept. 6, 2016) (stating that summary judgment in favor of the defendant is warranted if the plaintiff "cannot raise a genuine dispute as to whether [the defendant's] explanation is pretextual.").

## B.    Prima Facie Case

### 1.    *Protected Activity*

The Retaliation Plaintiffs engaged in protected activity by participating in this lawsuit. *See Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000) (noting that the FLSA "prohibits employers from retaliating against employees for filing complaints about violations" of the statute). Defendants do not dispute that element, and instead focus their arguments on the

adverse action and causation elements.  *See* ECF No. 319 at PageID.12319; ECF

No. 345 at PageID.15357–15358.

## 2.    *Adverse Actions*

Under the FLSA, an adverse action is any action "reasonably likely to

deter employees from engaging in protected activity."  *Bolos v. Waldorf=Astoria*

*Mgmt. LLC*, 2025 WL 1685052, at *6 (D. Haw. June 6, 2025) (quoting *Ray v.*

*Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)).  This definition is

"expansive"—it extends beyond firing and demotion, to include actions such as

lateral transfers, unfavorable references, and burdensome schedule changes.  *Ray*,

217 F.3d at 1241–43.  The same definition applies in the context of retaliation

claims under Hawaii law.  *See, e.g.*, *Chan v. Wells Fargo Advisors, LLC*, 124 F.

Supp. 3d 1045, 1056 (D. Haw. 2015).

As discussed above, Retaliation Plaintiffs allege numerous adverse

actions.  As evidence of these actions, Retaliation Plaintiffs cite their interrogatory

responses and deposition testimony.  *See* ECF Nos. 337-1 through 337-23, 338-1

through 338-17 (responses to interrogatories); ECF Nos. 338-18 through 338-23,

339-1 through 339-4 (deposition testimony).[6]

---

[6] Defendants assert evidentiary objections to the interrogatory responses, arguing that
(1) they should be excluded in their entirety because they are conclusory and self-serving, and
merely restate the allegations in the 4AC, or (2) in the alternative, parts should be excluded based
on lack of personal knowledge.  *See* ECF No. 345-1 at PageID.15375–15393.

(continued . . . )

Several Retaliation Plaintiffs state in their interrogatory responses that after the lawsuit had been filed and while the renovations were ongoing, Spa workers were "relocated numerous times" to various locations on the Hotel property, including to "outdoor makeshift tents" where they were exposed to "unbearable heat, wind, and rain" and did not have access to running water, and to "flimsy makeshift outdoor structures" where they were "routinely . . . exposed to bird and gecko excrement." *See, e.g.*, ECF No. 337-1 at PageID.14574.[7]  Other

---

Defendants' objections are overruled for three reasons.  First, as explained above, the summary judgment standard itself precludes reliance on conclusory statements, and such statements play no part in the court's reasoning here.  Second, although the source of a statement "may have some bearing on its credibility and on the weight it may be given by a trier of fact," the court may not "disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature."  *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (explaining that "declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position").  And third, Defendants do not identify which parts of the interrogatory responses should be excluded based on lack of personal knowledge.  The court will not rule at this summary judgment stage based on generalized objections.

Defendants also assert evidentiary objections to the deposition excerpts, arguing that they cannot be considered because they were filed without a court reporter's signed certification.  *See* ECF No. 345-1 at PageID.15393–15396.  These objections were rendered moot by Plaintiffs' submission (with Defendants' consent) of signed certifications corresponding to each deposition excerpt.  *See* ECF Nos. 347, 347-1, 347-2.

[7]  Other Retaliation Plaintiffs gave consistent descriptions of the working conditions in the temporary locations.  *See, e.g.*, ECF No. 337-4 at PageID.14606 (describing being "forced to work outdoors in uncomfortable conditions"); ECF No. 337-9 at PageID.14653–14654; ECF No. 337-11 at PageID.14673 (describing "unsafe working conditions"); ECF No. 338-11 at PageID.14907 (describing "outdoor treatment rooms . . . located in close proximity to" propane tanks); ECF No. 338-19 at PageID.14985 (describing "giving a massage in 95 degree" heat).

Retaliation Plaintiffs said that Spa workers had been "required to move furniture, supplies, and equipment . . . to various locations" on the Hotel property.  *Id.*[8]

Many Retaliation Plaintiffs also state that in conjunction with the Spa's reopening, Defendants terminated all independent contractor agreements, then offered below-market compensation to former independent contractors rehired as employees, reneged on promises to honor seniority, and made rehiring contingent on participation in "mandatory training and orientation days" with "little to no notice" and on acceptance of an arbitration agreement that purported to include past claims.  *See, e.g.*, ECF No. 338-4 at PageID.14838–14840; ECF No. 338-8 at PageID.14876–14877; ECF No. 338-11 at PageID.14908–14909; ECF No. 338-13 at PageID.14929; ECF No. 338-15 at PageID.14948–14949.  Several others said that Defendants had "eliminated the entire class of Lead workers in the transition" to the new Spa, which "served to functionally demote all the Leads." *See, e.g.*, ECF No. 337-5 at PageID.14616; ECF No. 338-10 at PageID.14897.

Defendants argue that none of the alleged adverse actions can support a retaliation claim because they "impacted all Spa contractors alike, regardless of whether, at the time of the alleged adverse actions, they had engaged in any protected activity."  ECF No. 319 at PageID.12323.

---

[8]  Again, other Retaliation Plaintiffs gave similar answers.  *See, e.g.*, ECF No. 337–3 at PageID.14595; ECF No. 337-16 at PageID.14713; ECF No. 337-18 at PageID.14733; ECF No. 338-8 at PageID.14875.

The court has previously recognized in this case that "generally applicable workplace policies" are not adverse actions. *See Bolos v. Waldorf=Astoria Mgmt. LLC*, 762 F. Supp. 3d 975, 1019–1020 (D. Haw. 2025) (quoting *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023)) (quotation marks omitted).[9] This principle could, in theory, apply to some of the actions alleged here. For example, if the Hotel had offered the same compensation package to former independent contractors and to new external hires, that generally applicable policy would not be an adverse action. The same would be true of the training and orientation requirements if they had applied to everyone hired to work at the new Spa, not just to former independent contractors. But here, genuine and material factual disputes remain as to whether the compensation packages and training requirements applied equally to former independent contractors and to new external hires. For example, one Retaliation Plaintiff testified that new external hires had received a larger sign-on bonus, ECF No. 338-23 at PageID.15019, and two Retaliation Plaintiffs claimed that new external hires had not been required to attend the trainings. *Id.* at PageID.15018; ECF No. 337-17 at PageID.14724.

---

[9] In dismissing the retaliation claims as originally pled, the court left open the possibility that Plaintiffs could state a viable claim based on actions that were not "Hotel-wide changes or conditions applicable to all classes of workers." *Bolos*, 762 F. Supp. 3d at 1020.

And some alleged adverse actions were "generally applicable" only in the sense that they applied to all Spa workers who had been classified as independent contractors—*all* of whom were potential plaintiffs in this case. For example, the termination of all independent contractor agreements inherently applied uniformly and exclusively to independent contractors. Likewise, that group was uniformly and exclusively affected by Defendants' alleged refusal to recognize seniority upon rehiring. And finally, although Defendants' counsel suggested during the October 6, 2025 hearing that some of the alleged adverse actions had also affected other Spa employees (i.e., not just independent contractors), *see* ECF No. 362 at PageID.15633, Defendants' Motion does not identify any evidence to support that argument. *See* ECF No. 319; *Bill Darrah Builders*, 2018 WL 650195, at *6 n.6 (explaining that at summary judgment, "all arguments must be clearly briefed with citations to supporting evidence").

An adverse action taken against an entire class of aggrieved employees remains adverse even though some members of the class had not yet voiced their grievances. For example, suppose that five employees holding the same position had been underpaid, and that two of those employees brought an FLSA lawsuit against their employer. Then suppose that the employer sends an email telling all five employees that their hours may be cut, and in response, the remaining three employees decide not to join the lawsuit. Under Defendants'

12

view, the email could not be considered an adverse action because when it was sent, some of the employees had engaged in protected activity but others had not. The result would be that employers would perversely benefit from successful retaliation, avoiding liability when they "induce aggrieved employees quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). That result would undermine the anti-retaliation provision's purpose of ensuring that employees feel "free to approach officials with their grievances." *Id.*

The court does not mean to suggest that any action that uniformly and exclusively affected a class of aggrieved employees is necessarily an adverse action. Even under those circumstances, specific facts might show that the action was truly a generally applicable workplace policy. But here, Defendants' argument is simply that the alleged actions were not "adverse" because they affected all independent contractors, not just those who had already joined the lawsuit. That argument—unsupported by additional facts—is rejected.

### 3.   *Causation*

To make out their prima facie case, Retaliation Plaintiffs must also show that the alleged adverse actions were causally linked to their protected activity. *See, e.g.*, *Lono*, 2024 WL 1117109, at * 9. Defendants argue that a causal link cannot exist for Retaliation Plaintiffs who did not formally join the lawsuit as

named Plaintiffs until after the alleged adverse actions occurred.  ECF No. 319 at

PageID.12320–12322; ECF No. 345 at PageID.15363.  This argument lacks merit;

under Ninth Circuit precedent, a complaint lodged on behalf of a group of similarly

situated employees can put an employer on notice of protected activity by every

member of that group, providing the requisite knowledge for causation.  *See Cohen*

*v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citation omitted)

("Essential to a causal link is evidence that the employer was aware that the

plaintiff had engaged in the protected activity.").[10]

   *Lambert v. Ackerly*, 180 F.3d 997 (9th Cir. 1999) (en banc), involved

FLSA claims for unpaid overtime wages owed to Lambert and other ticket sales

agents employed by a basketball team.  *Id.* at 1001.  In a letter to team

management, Lambert's attorney (1) noted that "Ms. Lambert *and other*

*employees*" had been rebuffed when they had asked about overtime wages;

(2) explained that the Department of Labor had told "Ms. Lambert that she *and*

*other employees*" were entitled to overtime wages; and (3) requested that

management "refrain from retaliation . . . against Ms. Lambert *and other*

*employees*."  *Id.* at 1010 (emphasis in original).  *Lambert* held that this language

---

[10]  An employer's knowledge of protected activity is necessary but not sufficient to show
a causal link between that activity and the alleged adverse action.  *See Cohen*, 686 F.2d at 796
("To show the requisite causal link, the plaintiff must present evidence sufficient to raise the
inference that her protected activity was the likely reason for the adverse action.").  But here,
Defendants argue only that they lacked knowledge of protected activity by some of the
Retaliation Plaintiffs.  *See* ECF No. 319 at PageID.12319–12322.

was sufficient to give the defendants "direct and specific notice that Lambert *and her coworkers*" were demanding overtime wages under the FLSA. *Id.* (emphasis added).

The original Complaint in this case, ECF No. 1, is comparable to the letter in *Lambert*. The Complaint was filed by Laurie Bolos "individually *and on behalf of all similarly situated individuals*," and alleged that Defendants "misclassified [Bolos] and all other members of the class as independent contractors." *Id.* at PageID.2–3 (emphasis added). The Complaint stated that Bolos sought "to represent . . . current and former hotel staff who were . . . classified as independent contractors"—a group that includes all Retaliation Plaintiffs. *Id.* at PageID.3. As in *Lambert*, the language of the Complaint was sufficient to give Defendants direct and specific notice of protected activity not only by Bolos herself, but by potentially all similarly situated Spa workers.

Defendants attempt to distinguish *Lambert*, emphasizing that the Ninth Circuit also referred to trial testimony in the course of its discussion. ECF No. 345 at PageID.15363. But to the extent Defendants argue that the trial testimony was a prerequisite to *Lambert*'s holding, they are mistaken. *Lambert* discussed the trial testimony not as a basis for the holding, but because the testimony "support[ed] [the] conclusion" that the court had reached based on the attorney's letter. 180 F.3d at 1010. Specifically, before even discussing the trial

testimony, the court concluded that because the letter had lodged complaints on behalf of Lambert and "the rest of the ticket sales staff," it had made the Defendants aware of protected activity by all the plaintiffs. *Id.* at 1010. The same is true of the original Complaint here.

In short, the court concludes that Retaliation Plaintiffs have met their burden on all three elements of their prima facie case, with the exception of seven Retaliation Plaintiffs whose claims are discussed below.

## C.    Legitimate Reasons

Once a plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to articulate legitimate, non-retaliatory reasons for the adverse actions. *Lono*, 2024 WL 1117109, at * 9. A defendant's burden at this stage is "not onerous." *Singson v. Farber*, 2010 WL 5399217, at *10 (N.D. Cal. Dec. 23, 2010) (citing *Bd. of Trs. of Keene State Coll. v. Sweeny*, 439 U.S. 24, 25 (1978)).

Defendants have given legitimate reasons for (1) the termination of all independent contractor agreements; (2) the refusal to recognize seniority upon rehiring; and (3) the relocation of Spa workers to other parts of the Hotel property. Defendants' reasons are as follows:

1.    Defendants decided to operate the reopened Spa under "a new business model" using employees instead of independent contractors, which would provide "greater control" and facilitate training and

16

alignment with the Hotel's "core values." ECF No. 319 at
PageID.12325 (quoting ECF No. 319-10 at PageID.12412).

2.  Defendants had not tracked seniority among independent contractors,
    so there was no seniority to be recognized upon rehiring. *Id.* at
    PageID.12325–12326 (citing ECF No. 319-3 at PageID.12349; ECF
    No. 319-10 at PageID.12404).

3.  Defendants relocated spa services to other areas because of the
    ongoing Spa renovations, and spa services returned to a permanent
    indoor space as soon as the renovations were complete. *Id.* at
    PageID.12326 (citing ECF No. 319-8 at PageID.12391).

Defendants' explanation for the relocation of spa services can reasonably be

understood to also explain why Spa workers were tasked with carrying materials,

furniture, and equipment. Defendants have met their burden to show non-

retaliatory reasons for these alleged adverse actions.

Defendants have not, however, articulated any explanation for other

alleged adverse actions, including (1) offering below-market compensation to

former independent contractors rehired as employees; (2) eliminating the class of

lead Spa workers, effectively demoting those who had held that position;

(3) requiring mandatory training and orientation days for rehired employees with

minimal notice, and (4) conditioning rehiring on acceptance of an arbitration

agreement that purported to include past claims. *See* ECF No. 319 at

PageID.12325–12326 (absence of explanations); ECF No. 345 at PageID.15370–

15371 (same).

Given the absence of legitimate explanations for these alleged adverse actions, Defendants are not entitled to summary judgment on any retaliation claims that include these actions.

## D.    Evidence of Pretext

Because Defendants have offered legitimate reasons for four of the alleged adverse actions, the burden shifts back to Plaintiffs to identify evidence that those reasons were pretext for retaliation.  *Lono*, 2024 WL 1117109, at * 9.  A plaintiff's burden at this stage "remains low, and 'very little evidence is necessary'" to raise a genuine issue of fact.  *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024) (quoting *Opara v. Yellen*, 67 F.4th 709, 723 (9th Cir. 2023)) (brackets omitted).  "Nevertheless, a plaintiff must present some evidence that goes to the defendant's motivation," *id*, either by directly showing retaliatory intent or by showing that the defendant's stated reasons are "internally inconsistent or otherwise not believable."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).  With these standards in mind, the court concludes that Plaintiffs have met their burden with respect to Defendants' reasons for terminating all independent contractors and refusing to recognize seniority upon rehiring, but not with respect to Defendants' reasons for relocating Spa workers during the renovations and requiring them to move materials, furniture, and equipment.

First, as to the termination of all independent contractor agreements, Plaintiffs argue that the Hotel "already exerted extreme control over Spa workers," so Defendants' explanation is not believable.  ECF No. 336 at PageID.14508. Plaintiffs cite a deposition excerpt in which the Spa's former director said that Spa workers did not have "decision making authority independent from management regarding any aspect of spa operations," including hiring, firing, discipline, hours of operation, services offered, or other Spa policies.  ECF No. 339-11 at PageID.15199, 15204–15205.  This is sufficient evidence to show a genuine and material factual dispute as to whether Defendants' explanation was merely pretext for retaliation.

Second, as to the refusal to recognize seniority, Plaintiffs argue that Defendants' claim that "seniority did not exist" is contradicted by "hundreds of documents discussing seniority."  ECF No. 336 at PageID.14509.  Plaintiffs cite four exhibits:

- a table titled "Seniority List," listing massage therapists and their number of shifts;

- an email from a "Spa Administrative Assistant" to lead spa workers requesting "Seniority/Phone lists;"

- an email from the "Director of Spa and Wellness" directing recipients to "continue to maximize hours by seniority;" and

- a document titled "Scheduling Policies and Procedures" stating that a second missed shift would result in a loss of "two spots in seniority."

19

ECF Nos. 339-13 through 339-16.  Again, this is sufficient evidence to show a

genuine dispute of material fact as to whether Defendants' explanation was merely

pretext for retaliation.

        Third, as to the relocation of Spa workers, Plaintiffs concede that

relocation "might have been necessary to construct the new spa," but argue that

"there is absolutely no legitimate rationale" for Defendants' decision to use "flimsy

tents in the heat, rain and wind, near propane tanks and animal excrement on a

property the size of the Grand Wailea."  ECF No. 336 at PageID.14509–14510.

That conclusory statement, however, is not sufficient to create a genuine issue of

fact.  The only factual support offered is a deposition excerpt in which the Spa's

former director described "different options" that had been considered for

temporarily housing spa services during the renovations.  *See* ECF No. 339-11 at

PageID.15195–15196.  Those options included various possible "structures"

located in "different places on the property outdoors."  *Id.* at 15195.  And although

the Spa director said he had "asked for air conditioning[]," he had been told by the

Hotel's operations staff that "there wasn't enough electricity for air conditioning"

and that fans might be provided instead.  *Id.* at 15196.  Nothing in the deposition

excerpt would allow a reasonable factfinder to conclude that Defendants selected

temporary structures and locations based on retaliatory intent, as opposed to

legitimate considerations such as budget or proximity to guest rooms.  Plaintiffs

likewise point to no evidence suggesting that Defendants required Spa workers to carry supplies and equipment in retaliation for their participation in the lawsuit.

In sum, Plaintiffs have shown sufficient evidence of pretext relating to Defendants' explanations for terminating all independent contractor agreements and refusing to recognize seniority.  Those actions, as well as the actions for which Defendants have not offered legitimate explanations, may support triable retaliation claims.  Claims may not proceed, however, based on the relocation of Spa workers and the associated demands to carry materials, equipment, and furniture.

## E.    Remaining Arguments

Defendants also argue that seven Retaliation Plaintiffs—Alviedo, Bouillon, Brodehl, Helm, Kater, Kato, and Quintero—have not identified evidence that they were subjected to any of the alleged adverse actions.  The court agrees.

First, it is undisputed that two of these Plaintiffs—Kater and Kato— no longer worked at the Hotel when this lawsuit was filed and the alleged adverse actions began.  *See* ECF No. 319-1 at PageID.12333–12334; ECF No. 336-1 at PageID.14517.  Given that undisputed fact, Plaintiffs' counsel agreed during the October 6, 2025 hearing that Kater and Kato do not have viable retaliation claims. *See* ECF No. 362 at PageID.15623–15624.

Second, Defendants argue that the remaining five—Alviedo, Bouillon,

Brodehl, Helm, and Quintero—conceded in their interrogatory responses that they

were "not contending retaliation" and were "not making a claim for retaliation."

ECF No. 319 at PageID.12318–12319.  Plaintiffs point to contradictory evidence

in the form of amended interrogatory responses.  ECF No. 336 at PageID.14510

(citing ECF Nos. 339-17, 339-18, 339-19, 339-20, 339-21).  Defendants argue that

the amended responses cannot be considered because they were not made until

after discovery had closed and Defendants had moved for summary judgment.

ECF No. 345–1 at PageID.15396–15406.

Federal Rule of Civil Procedure 37(c)(1) prohibits the use of

undisclosed information to supply evidence on a motion unless the failure to

disclose was substantially justified or harmless.  When exclusion under Rule

37(c)(1) amounts to dismissal of a claim, as it would here, the court must also

"consider whether the claimed noncompliance involved willfulness, fault, or bad

faith."  *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

Defendants explain that their counsel emailed Plaintiffs' counsel in

February 2025—months before the close of discovery—to point out that several

Retaliation Plaintiffs had "admitted" in their interrogatory responses that they did

not have retaliation claims.  ECF No. 345 at PageID.15359 (citing ECF No. 386-3

at PageID.7794).  That email specifically mentioned Bouillon, Quintero, and

22

Alviedo, but also referred generally to "several Plaintiffs." *See* ECF No. 286-3 at
PageID.7794. Given that Plaintiffs' counsel received notice of this issue well
before the close of discovery, the court concludes that the failure to timely amend
involved fault and was not substantially justified. Finally, Plaintiffs argue that the
delay was harmless because the amendments were made well in advance of trial,
*see* ECF No. 353 at PageID.15530, but Plaintiffs do not explain why the delay did
not prejudice Defendants' efforts to seek summary judgment on these five
Plaintiffs' retaliation claims. The court therefore declines to consider the amended
interrogatory responses.

In sum, Alviedo, Bouillon, Brodehl, Helm, Kater, Kato, and Quintero
have not identified any evidence showing that they were subjected to the alleged
adverse actions, leaving no genuine issue of material fact as to that element and
entitling Defendants to summary judgment on their retaliation claims.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Second Motion for Summary
Judgment, ECF No. 319, is GRANTED as to the retaliation claims asserted by
Plaintiffs Alviedo, Bouillon, Brodehl, Helm, Kater, Kato, and Quintero, and
GRANTED in part and DENIED in part as to all other retaliation claims.
Specifically, the Motion is GRANTED as to the relocation of Spa workers and the
associated demands to carry materials, equipment, and furniture; retaliation claims

may not proceed based on those actions.  The Motion is DENIED as to all other

alleged adverse actions.  The parties are directed to meet and confer to determine

how these rulings affect the remaining 40 retaliation claims.  Within 60 days, the

parties shall submit to the court a list of the retaliation claims that remain viable,

including which of the alleged adverse actions underly each claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 4, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge