IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURIE BOLOS, ET AL., on behalf of herself and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>WALDORF=ASTORIA MANAGEMENT LLC OPERATING AS GRAND WAILEA, a Waldorf Astoria Resort; ET AL.,<br><br>        Defendants. | CIV. NO. 23-00104 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 287 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 287

## I. INTRODUCTION

Defendants Waldorf=Astoria Management LLC, GW Manager LLC, BRE Iconic GWR Owner LLC, and John Paul Oliver (collectively, "Defendants") have filed a Motion for Partial Summary Judgment, ECF No. 287, as to certain claims in Plaintiffs' Fourth Amended Complaint ("4AC"). As explained to follow, the Motion is GRANTED in part and DENIED in part, with certain arguments being deferred (i.e., denied without prejudice) pending a ruling by the Hawaii Supreme Court on a certified question or after the court considers a related motion

by Plaintiffs as to certification of a collective action under the Fair Labor Standards Act ("FLSA").

## II. <u>BACKGROUND</u>

This complicated action is a combined individual, class, and collective action brought on behalf of dozens of named Plaintiffs and others who were "massage therapists, nail technicians, estheticians, and hair stylists who worked at the Spa Grande located within the Grand Wailea-Waldorf Astoria Resort" in Wailea, Hawaii. ECF No. 256 at PageID.6478. The original Complaint alleged that Defendants had "willfully misclassified" Plaintiffs and similarly situated Spa workers as independent contractors, resulting in the loss of wages and benefits owed under federal and state law. *See* ECF No. 1.

This Motion was filed in conjunction with six other motions in this action—four by Defendants seeking summary judgment as to certain claims and Plaintiffs, and two by Plaintiffs seeking certification of (1) a class action under Federal Rule of Civil Procedure 23 and (2) a collective action under the FLSA. *See* ECF Nos. 287, 293, 294, 295, 296, 297 and 319. On November 13, 2025, the court certified a question of Hawaii law to the Hawaii Supreme Court regarding one of the issues raised in this Motion. *See* ECF No. 367; *Bolos v. Waldorf=Astoria Mgmt. LLC*, 2025 WL 3177399 (D. Haw. Nov. 13, 2025) (the "Certification Order"). The Hawaii Supreme Court accepted the certified question

2

on November 19, 2025.  *See* ECF No. 373.  The court deferred consideration of

Plaintiffs' two certification motions, pending a decision on the certified question.

*See* ECF No. 370.  Subsequently, the court ruled on one of Defendants' summary

judgment motions regarding retaliation claims in the 4AC.  *See* ECF No. 374;

*Bolos v. Waldorf=Astoria Mgmt. LLC*, 2025 WL 3485379 (D. Haw. Dec. 4, 2025)

(the "Retaliation Order").[1]

      Given the Certification Order, the Retaliation Order, and several other

prior orders in this case at motion-to-dismiss and other stages,[2] the court need not

set forth any further factual background here.  The parties certainly know the

context, and the court otherwise relies on those prior orders to set the stage for this

Motion.  The court thus turns directly to the arguments made in this Motion.

### III.  <u>STANDARD OF REVIEW</u>

      Summary judgment is proper when there is no genuine issue of

material fact, and the moving party is entitled to judgment as a matter of law.  Fed.

---

[1]  Three motions for summary judgment as to individual Plaintiffs remain pending, with a hearing currently set for February 9, 2026.  *See* ECF No. 370.

[2]  *See, e.g.*, *Bolos v. Waldorf=Astoria Mgmt. LLC*, 762 F. Supp. 3d 975 (D. Haw. 2025) (comprehensive order regarding motion to dismiss a prior version of the Complaint); *Bolos v. Waldorf=Astoria Mgmt. LLC*, 2025 WL 1685052 (D. Haw. June 16, 2025) (order denying Defendants' Partial Motion to Dismiss as to the 4AC); *Bolos v. Waldorf=Astoria Mgmt. LLC*, 2024 WL 4869754 (D. Haw. Nov. 22, 2024) (order compelling arbitration as to certain Plaintiffs); *Bolos v. Waldorf Astoria Mgmt. LLC*, 2024 WL 3594741 (D. Haw. July 31, 2024) (order granting in part and denying in part Defendant Joseph Berger's renewed motion to dismiss regarding personal jurisdiction).

R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *In re Oracle*, 627 F.3d at 387 (citation omitted); *see also Anderson*, 477 U.S. at 248 (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

When considering a motion for summary judgment, the court views the facts and draws reasonable inferences in the light most favorable to the nonmovant.  *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "[T]he court

does not make credibility determinations or weigh conflicting evidence."

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## IV.  <u>DISCUSSION</u>

### A.    **Count One—Damages Under Hawaii Revised Statutes ("HRS") § 387-2**

Defendants first seek a ruling regarding computation of damages in

Count One under HRS § 387-2.  The court defers a ruling on this claim because the

court certified a question of Hawaii law regarding this claim to the Hawaii

Supreme Court.  *See Bolos*, 2025 WL 3485379, at *1.  For administrative purposes,

the Motion in this regard is DENIED without prejudice to the claim being raised

again if appropriate after the Hawaii Supreme Court's decision on the certified

question.

### B.    **Count Three—HRS § 388-6 Claim for Fees and Gratuities**

Count Three seeks recovery under HRS § 388-6 for unlawful

deductions from Plaintiffs' paychecks for "linen fees" and "gratuities."  ECF No.

256 at PageID.6534–6536.  In particular, as to linen fees, the 4AC alleges that

"Plaintiffs were required to pay linen fees each pay period at various set amounts

throughout the relevant period, and these linen fees were unlawfully deducted from

their paychecks by Defendants."  *Id.* at PageID.6535.  As to gratuities, the 4AC

alleges:

> [F]rom the 20% automatic gratuity attached to services
> performed by Plaintiffs and the Putative Class Members,

> Plaintiffs and the Putative Class Members received only 17%. Defendants did not provide notice of this deduction from the gratuity amount within a commission agreement, nor did they inform guests and clients that Plaintiffs and the Putative Class Members did not receive the full gratuity for the services they performed in violation of state law requirements.

*Id.* And § 388-6 provides in part:

> No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee, provided that the following may not be so authorized, or required to be borne by the employee: [ . . . listing exceptions].

Further, HRS § 388-11 provides a cause of action to recover unpaid wages under § 388-6, as well as interest and reasonable attorney's fees. *See* §§ 388-11(a), -11(c).

### 1. *Linen Fees*

Defendants point to the clause "except . . . when such deductions or retentions are authorized in writing by the employee" in § 388-6 and argue that there is no violation because the independent contractor agreements that Plaintiffs signed included written authorization for deductions for linen fees. *See, e.g.*, ECF No. 288-1 at PageID.8034 (providing the following language in "Exhibit A" to the independent contractor agreement: "PRODUCT & LINEN FEE: Contractor will

be charged $0.50 per treatment.  Monthly billing to each Contractor will be made

on the 1st week of the following month").

       Defendants' argument, however, assumes in the first place that the

independent contractor agreements are valid contracts, with all the agreements'

terms being enforceable.  But the thrust of the 4AC is that Plaintiffs were

"employees"—not independent contractors—and essentially that the independent

contractor agreements are not valid or enforceable.  If Plaintiffs prevail on the

theory that they were willfully misclassified (and are employees), it is far from

clear that all the individual terms of the independent contractor agreements would

still be enforceable—an issue that was neither raised nor briefed.  That is,

Defendants' "argument is part and parcel of the primary issue raised by Plaintiffs,

i.e., that Defendants wrongfully classified Plaintiffs as independent contractors in

the first place." *Bolos v. Waldorf Astoria Mgmt. LLC*, 2025 WL 2049190, at *1 (D.

Haw. July 10, 2025) (denying Defendants leave to file an additional summary

judgment motion which would have argued that certain equitable claims were

barred by the existence of independent contractor agreements).  Whether or not the

linen fee provisions of the independent contractor agreements might survive a

finding that Plaintiffs were willfully misclassified, the record is insufficient to

preclude linen fees under § 388-6 at this summary judgment stage.

### 2. *Deductions from Gratuities*

Defendants next argue that the claim under § 388-6 for unlawfully deducting "gratuities" from Plaintiffs' checks (i.e., the allegedly undisclosed or unlawful 3% paycheck deduction from an automatic 20% gratuity paid by customers) fails because those gratuities do not fall within HRS § 481B-14, which Defendants characterize as "the Hawaii statute addressing mandatory service charges." ECF No. 287 at PageID.7891. Defendants rely primarily on *Villon v. Marriott Hotel Services, Inc.*, 130 Haw. 130, 306 P.3d 175 (2013), in which the Hawaii Supreme Court held that employees may recover under § 388-6 for violations of § 481B-14. *See id.* at 132–33, 306 P.2d at 177–78. In this regard, § 481B-14(a)—a statute in a chapter concerning fair trade regulation and unfair and deceptive practices—provides:

> Any:
>
> (1) Hotel or restaurant that applies a service charge for the sale of food or beverage services; or
>
> (2) Hotel that applies a service charge for porterage services;
>
> shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

8

Because the "service charges" at issue in this case (i.e., *Bolos*) for spa workers are undisputedly not "for the sale of food or beverage services" or "porterage services" as in *Villon*, Defendants argue that Plaintiffs' claim under § 388-6 for wrongfully withheld gratuities necessarily fails.

Defendants, however, misread *Villon*'s scope. *Villon* held that "when a hotel or restaurant applying a service charge for the sale of food or beverage services allegedly violates HRS § 481B-14 (2008) . . . the employees may bring an action under HRS §§ 388-6 (1993), -10 (1993 & Supp. 1999), and -11 (1993 & Supp. 1999) to enforce the employees' rights and seek remedies." 130 Haw. at 132–33, 306 P.3d at 177–78. This holding does not mean that *only* claims relating to gratuities falling under § 481B-14 may be brought under § 388-6. And indeed, here, Plaintiffs did not invoke § 481B-14 at all; they rely more generally on § 388-6's language that "[n]o employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee [subject to exceptions]."

*Villon*'s context is important—the underlying complaint alleged unfair competition or unfair trade practices, i.e., violations of § 481B-14, which the *Villon* class-action plaintiffs alleged to be actionable under HRS §§ 481B-4, 480-2, and 480-13, *in addition to* § 388-6. *See Villon v. Marriott Hotel Servs.*, 2011 WL 4047373, at *1 (D. Haw. Sept. 8, 2011) (explaining that the complaint alleged that

9

withholding service charges "is a violation of [HRS] § 481B-14, and is actionable

under § 481B-4 and [HRS] §§ 480-2 and 480-13, as well as under state wage

statutes, [HRS] §§ 388-6, 388-10, and 388-11, and Hawai'i common law").  In

*Davis v. Four Seasons Hotel, Ltd*., 122 Haw. 423, 228 P.3d 303 (2010), the Hawaii

Supreme Court answered a certified question regarding whether plaintiffs had

standing to bring an unfair competition claim under § 480-2 for violations of

§ 481B-14, but *Davis* left open a different question whether employees could *also*

enforce § 481B-14 under § 388-6.  *See id.* at 428 n.12, 228 P.3d at 308 n.12

("Employees also contend that Employees can enforce HRS §§ 388-6, 10, and 11.

However, this argument will not be addressed because it is beyond the scope of the

certified question.").

> *Villon* answered that open question regarding § 388-6—in the

affirmative—after another certified question from the Hawaii District Court.  *See*

*Villon*, 130 Haw. at 132, 306 P.3d at 177 (explaining that "[t]he instant certified

question picks up where our opinion on a related certified question in [*Davis*] left

off . . . .").  In so doing, *Villon* reasoned in part that the service charges under

§ 481B-14 fell within the definition of "wages" under § 388-1 as "tips or gratuities

of any kind" that are recoverable under § 388-6.[3]  *Id.* at 135, 306 P.3d at 180.  And

*Villon* allowed enforcement of § 481B-14 under § 388-6 even though a plaintiff

could also make a claim under chapter 480.  *See id.* at 143, 306 P.3d at 188

("Chapter 480 remedies are not 'exclusive' . . . therefore, nothing in the statutory

plain language or legislative history of HRS § 481B-14 precludes enforcement of

HRS § 481B-14 violations through Chapter 388.").[4]

 And so, *Villon* primarily concerned whether a statute in an unfair trade

practices context could also support a claim in the wage context, not whether other

claims for gratuities (i.e., besides those under § 481B-14) that fit the definition of

---

 [3]  Section 388-1 provides:

> "Wages" means compensation for labor or services rendered by an
> employee, whether the amount is determined on a time, task, piece,
> commission, or other basis of calculation.  It shall include the
> reasonable cost, as determined by the director under chapter 387,
> to the employer of furnishing an employee with board, lodging, or
> other facilities if such board, lodging, or other facilities are
> customarily furnished by the employer to the employer's
> employees but shall not include tips or gratuities of any kind,
> *provided that for the purposes of section 388-6, "wages" shall
> include tips or gratuities of any kind.*  (Emphasis added).

 [4]  As *Kawakami v. Kahala Hotel Investors, LLC*, 134 Haw. 352, 341 P.3d 558 (2014),
reiterated, "HRS § 481B-14's purpose was to inform customers if employees did not receive the
intended service charges."  *Id.* at 358, 341 P.3d at 564.  Because "most consumers do not tip for
services over and above the amounts they pay as a service charge," § 481B-14 "is intended to
prevent consumers from being misled about the application of moneys they pay as service
charges by requiring under the Unfair and Deceptive Practices Act that a hotel or restaurant
distribute moneys paid by customers as service charges directly to its employees as tip income,
or disclose to the consumer that the service charge is being used to pay for the employer's costs
or expenses, other than wages and tips . . . ."  *Id.*, 341 P.3d at 564 (quoting *Villon*, 130 Haw. at
139, 306 P.3d at 184).

"wages" under § 388-1 can be brought under § 388-6. That a violation of § 481B-14 for food or beverage service charges is also enforceable under § 388-6 says little about whether a claim for gratuities for estheticians and related spa workers may be brought under § 388-6. Put differently, nothing in *Villon* indicates that § 481B-14 defines the *only* type of gratuities that may be recovered under § 388-6. If anything, *Villon*'s reasoning that tips in an unfair competition context fit under § 388-1's broad definition of wages (i.e., "for purposes of section 388-6, 'wages' shall include tips or gratuities of any kind") *supports* a reading that allows gratuities for estheticians and spa workers to be sought under § 388-6. Count III concerns "the 20% automatic gratuity attached to services performed by Plaintiffs and the Putative Class Members," ECF No. 256 at PageID.6535, which clearly fits within § 388-6's definition of "tips or gratuities of any kind."

For these reasons, the court rejects Defendants' argument that *Villon* precludes recovery for the allegedly improper withholding of a 3% portion of gratuities in this case.

## C.   Count Seven—Promissory Estoppel

Defendants next challenge Plaintiffs' promissory estoppel claim made in Count VII, which alleges that "[t]hroughout the pandemic and years of construction on Defendants' new Spa, Defendants repeatedly made oral promises and written representations to the Retaliation Subclass Members promising that the

Retaliation Subclass Members would maintain their years of seniority at the newly

constructed Spa slated to open in February 2024." *Id.* at PageID.6558.  The 4AC

describes such "seniority benefits" as "including higher wages, priority shift

selection, and more time off." *Id.*  It alleges that Defendants relied on promises,

claiming that the promises caused "the Retaliation Subclass Members to forego

other job opportunities with other employers and to endure intolerable conditions

and economic hardships . . . . " *Id.*  And the 4AC alleges that in November 2023,

the members of the Retaliation Subclass "were told that their years of service

would not be honored at the new Spa, and they would have to reapply to their same

job positions as if they were first day employees of Defendants." *Id.*

> Under Hawaii law,
>
> [a] promissory estoppel may arise as an application of the
> general principle of equitable estoppel to certain
> situations where a promise has been made, even though
> without consideration, if it was intended that the promise
> be relied upon and was in fact relied upon, and a refusal
> to enforce it would be virtually to sanction the
> perpetration of fraud or result in other injustice.

*In re Herrick*, 82 Haw. 329, 337, 922 P.2d 942, 950 (1996) (quoting *Motonaga v.*

*Ishimaru*, 38 Haw. 158, 163 (1948)).  The elements of such a claim are: "(1) There

must be a promise; (2) The promisor must, at the time he or she made the promise,

foresee that the promisee would rely upon the promise (*foreseeability*); (3) The

promisee does in fact *rely* upon the promisor's promise; and (4) Enforcement of the

13

promise is necessary to avoid *injustice*.'" *Id.* at 337–38, 922 P.2d at 950–51

(citation omitted).

Defendants argue that they are entitled to summary judgment on

Count VII as to all Plaintiffs because "Plaintiffs cannot establish a clear and

definite promise made by *anyone* at Grand Wailea—let alone that *any* of the

Retaliation Subclass Members in fact relied on any such promise by foregoing a

specific job opportunity." ECF No. 287 at PageID.7894 (emphases added).[5]  They

argue that evidence of vague promises is insufficient, and that Plaintiffs "cannot

present any evidence that they relied on such statements. . . ." *Id.* at PageID.7895–

7896.  In support, they cite snippets of deposition testimony from some Plaintiffs

stating in different ways that Defendants told them to "hang in there" or "hang on"

while the Spa was being renovated. *Id.* at PageID.7895.

But Plaintiffs counter with declarations and testimony from some

Plaintiffs that reference promises specifically related to seniority. *See* ECF No.

335-17 at PageID.14404 ("[T]hey had promised us that we would retain our

---

[5]  Given the language of the Motion, the court considers it to be seeking summary
judgment as to all Plaintiffs as a unit. *See also* ECF No. 362 at PageID.15614 (Defendants'
counsel arguing that "I'm arguing that all 47 [retaliation subclass members] fail as a matter of
law [on the promissory estoppel claim] . . . .").  That is—even if not all individual Plaintiffs have
produced evidence of a specific promise related to seniority, or not all individual Plaintiffs have
cited evidence of reasonable reliance—Defendants have not met (nor have they tried to meet)
their *initial* burden to demonstrate an absence of a genuine issue of material fact as to *every*
retaliation Plaintiff for promissory estoppel. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387
("The moving party initially bears the burden of proving the absence of a genuine issue of
material fact.").

14

seniority . . . and our years. . . . And the first question I asked Lisa Hines was am I

. . . going to be started as a day-one employee or a 27-year employee.  And she said

day-one."); ECF No. 335-7 at PageID.14309 ("But there was a promise that you

would have your seniority when you came back."); ECF No. 335-9 at

PageID.14326 ("Q.  Okay.  And was that kind of a promise that was

communicated?  A.  . . . my understanding was that . . . we would have our

seniority."); ECF No. 335-19 at PageID.14412 ("[Spa Director Rachael McCrory]

made it clear to the massage therapists that those who endured this hard time

would remain at the top of the seniority list."); ECF No. 335-20 at PageID.14419

("Rachael continued to assure us as estheticians that staying on at the time would

give us seniority when we returned to the new spa."); ECF No. 335-21 at

PageID.14423 ("Rachael verbally promised the Lead workers that our seniority

would be honored when the newly renovated Spa eventually opened."); ECF No.

335-22 at PageID.14427 ("I asked Rachael if when the new spa opened, seniority

would stay intact for me and the rest of the salon team.  She answered assuredly

again, saying 'everything will be the same, nothing will change, just hang in there,

it's going to be great!'").

   Given such evidence cited by Plaintiffs, there is a genuine issue of

material fact as to whether Defendants made promises that Plaintiffs would not

lose seniority—promises that Plaintiffs could reasonably rely upon.  *See Herrick*,

82 Haw. at 337–38, 922 P.2d at 950–51.  There are genuine and material disputes

of fact as to the context in which Plaintiffs were repeatedly told to "hang in there."

Likewise, there are disputes of fact as to whether Plaintiffs in fact detrimentally

relied on such promises of retention of seniority benefits.  *See, e.g.,* ECF No. 335-

22 at PageID.14427 ("I believed that my nearly three decades of service at the

Grand Wailea Resort would continue with my seniority firmly retained.  This

absolutely influenced my decision to remain through the difficult years during the

reconstruction of the spa."); *id.* at PageID.14428 ("And to be clear, I did have other

job opportunities available to me. . . . I truly believed that I was going to receive my

seniority as promised by management, so I decided not explore other employment

opportunities."); ECF No. 335-21 at PageID.14424 ("I could have moved to the

spas at the 4 Seasons, Fairmont or Andaz Hotels.  I chose not to pursue any of

these opportunities, even though they seemed better, because I did not want to lose

my seniority and lead position when the renovated Spa opened, which were both

promised to me by Rachael."); ECF No. 335-20 at PageID.14419 ("There were a

few reasons why I decided to stay, the first being that Rachael had promised me

that I would keep both my seniority and my position as a lead. . . . I had other

opportunities arise for employment as colleagues from other spas and hotels, such

as the Kealani Spa and the Four Seasons Spa, would contact me when they were

hiring."); ECF No. 335-19 at PageID.14415 ("I would have left much earlier with

many others that had left.  I almost took a job working at the Four Seasons, but I

'hung in there' as Rachael would say, because I believed that my seniority was

going to be honored and my hard work would pay off.").

   Given genuine disputes of material fact, Defendants' Motion as to

Plaintiffs' promissory estoppel claim is DENIED.  To be clear, however, a

promissory estoppel claim based solely on a promise to "hang in there" or "hang

on" would not be actionable.  Promissory estoppel claims based on promises that

seniority and related benefits would not be lost, however, may proceed.

## D. FLSA Overtime Claims in Count Six, and Minimum Wage Claims in Count One

   Next, Defendants argue that many Plaintiffs cannot prevail on their

FLSA overtime claims in Count Six because Plaintiffs' expert report identifies 29

Plaintiffs (out of 54 Plaintiffs asserting FLSA overtime claims in the 4AC) who

have no overtime damages.[6]  Similarly, the expert report identifies 12 other

Plaintiffs asserting Hawaii law minimum wage claims in Count One who have no

---

[6] These Plaintiffs are:  Aimee Adams, Alison Belding, Kathleen Blaser, Robin Bolos, Marisela Bracho, Inge Brodehl, Jacqueline Bui, Erin Carroll, Tina Ecklar, Carissa Franco, Melanie Friske, Pamela Gist, Alina Ibragimova, Felicitas Johnson, Gabrielle Kater, April Lamparelli, Wendie Lindsay, Kathryn Lundquist, Adriana Maguire, Sara Medeiros, Ana Miranda, Holli Morton, Danielle Olson, Dayna Pacheco, Michael Painchaud, Heavenly Quintero, Jeanne Reynolds, Kyla Schwartz, and Nancy Vandervoort.  *See* ECF No. 287 at PageID.7897 n.6.

minimum wage damages.[7]  *See* ECF No. 287 at PageID.7897 (citing portions of a

supplemental report of Plaintiffs' expert witness Megan Todd ("Todd"), ECF Nos.

287-3 at PageID.7928–7933).  For two reasons, the court defers ruling on these

arguments and therefore DENIES the Motion in this regard without prejudice to

Defendants renewing the arguments later if, and when, appropriate.

First, Defendants rely on Todd's supplemental report as proof that the

identified individual Plaintiffs had no damages.  As to the minimum wage claim, in

a section of her report titled "Minimum Wages Owed for Misclassification," Todd

explains that

> To determine the amount of minimum wages owed, I
> calculate the regular rate of pay for each pay period.[41]
> Regular rate of pay is equal to the total commissions for
> the pay period divided by total hours worked during the
> pay period.  If the regular rate of pay is less than the
> applicable minimum wage, then Plaintiffs are owed the
> difference between the total hours worked times the
> applicable minimum wage less the total commissions
> paid during that work week.  Back pay for unpaid wages
> at the applicable minimum wage for Plaintiffs and
> Putative Class Members is estimated to equal $161,687.
> See Exhibit 3 for further details.
>
> [41] Minimum wage is calculated by pay period instead of
> work week due to data limitation.  Therefore, this
> estimate of minimum wages owed is conservative and
> likely higher if calculated by work week.

---

[7] These Plaintiffs are:  Naoko Curry, Gail DeCoite, Firmiana Egan, Kalena Kaili-Thomas, Kathryn Lundquist, Leslie McGuire, Jean Muldoon, Dayna Pacheco, Julie Taketa, Barbara Timo, Tara Walsh, and James Wash.  *See* ECF No. 287 at PageID.7897 n.7.

ECF No. 287-3 at PageID.7919.  In turn, Defendants cite the report's Exhibit 3 to identify the 12 Plaintiffs (not otherwise excluded) who Defendants claim have no minimum wage damages.  But now that the Hawaii Supreme Court has accepted this court's certification of the question regarding the proper measure of damages for a minimum wage violation under Hawaii law—and given the methodology Todd articulated—it may be that Todd's figures will be outdated depending on the answer to the certified question.  The methodology Todd used, as set forth above, appears to use neither a purely workweek unit of measure nor an hourly unit of measure.  It is thus unclear whether the court should rely on Todd's report as proof that the 12 identified Plaintiffs did not suffer damages under Hawaii's minimum wage statute.  And so, rather than ruling at this current summary judgment stage, the court deems it more appropriate to wait for the Hawaii Supreme Court's answer to the certified question before assessing whether any individual plaintiffs are barred from seeking damages under Hawaii's minimum wage statute.[8]

---

[8]  In a different section, Todd's supplemental report identifies a separate category of damages for unpaid back wages that she calls "nonproductive hours" worked.  *See* ECF No. 287-3 at PageID.7921.  For these "nonproductive hours," Todd explains:

> Back wages for a particular Putative Class Member are equal to the nonproductive work hours multiplied by the effective minimum wage.  Thus, the first step in determining back wages is determining the total nonproductive work hours Plaintiffs and Putative Class Members performed.  Total nonproductive work hours each week are equal the difference between total work hours and total hours booked.  Nonproductive back pay is equal to total nonproductive work hours multiplied by the applicable minimum

(continued . . . )

Second, as to the FLSA overtime claims, the court will defer ruling on these issues for a different reason—there is a potential relationship between the FLSA claims and Plaintiffs' Motion for Conditional or Final FLSA Certification,

---

wage.  To avoid double counting damages, I subtract the minimum wage damages calculated above.  As shown in Exhibit 4, damages for nonproductive work are $3,602,472.

*Id.*  This category of damages appears to use a version of an hourly unit of measure as described in the court's certification order.  *See Bolos*, 2025 WL 3177399, at **2–3.  Although unclear, given Todd's descriptions in her supplemental report, it seems like such "nonproductive hours" could include damages for minimum wage violations as alleged in the 4AC (even if she attempted "[t]o avoid double counting damages").

Todd's descriptions of "nonproductive hours" include: (1) "side work before and after shifts" where "Plaintiffs and Putative Class Members were expected to arrive early and stay late after their shifts in order to perform any assigned side work," ECF No. 287-3 at PageID.7915; (2) "time in meetings, and time serving as an on-call worker," *id.* at PageID.7916; (3) time "to attend mandatory trainings and general meetings outside of their normal working hours," *id.* at PageID.7917; (4) "work performing management duties such as creating shift schedules, picking up and distributing checks, and enforcing rules," *id.*, and (5) time "required to move equipment, products, towels, and sheets owned by Grand Wailea to another location."  *Id.*  These descriptions fit squarely within the work described in Count One of the 4AC for purposes of Plaintiffs' statutory minimum wage claim.  *See* ECF No. 256 at PageID.6515–6516.  That is— although, again, not clear with the information provided to the court—this category of damages also appears to include damages for a violation of Hawaii's minimum wage statute.

Because the parties did not provide Todd's "Exhibit 4" to the court, the court has no way of knowing which Plaintiffs have (or do not have) such damages.  The amount in Todd's Exhibit 4 ($3,602,472) is much more substantial than the $161,687 in Todd's Exhibit 3, suggesting the possibility that some of the 29 Plaintiffs identified by Defendants as lacking damages in Exhibit 3 could in fact have some minimum wage damages listed in Exhibit 4.

Moreover, Plaintiffs also cite a July 19, 2025 version of a Todd report that refers to an "Exhibit 5" (also not provided to the court) listing $3,775,011 in damages for "nonproductive" hours.  *See* ECF No. 335-6 at PageID.14291.

In any future proceedings directed to minimum wage damages, if the Todd reports are still at issue, the parties should clarify whether any of the alleged damages for "nonproductive hours" in Exhibits 4 or 5 could constitute minimum wage damages suffered by any of the Plaintiffs who show no damages in Exhibit 3.

ECF No. 297.  The court thus deems it appropriate to wait until the Motion for

Conditional or Final FLSA Certification is fully briefed and ready to be decided.[9]

The potential relationship stems from Plaintiffs' argument that they

are hampered from producing evidence of specific hours worked because keeping

such records was Defendants' responsibility.  *See* ECF No. 335 at PageID.14223.

This argument implicates a "long standing wage-and-hour doctrine[], " i.e., "the

burden-shifting framework initially set forth in the Supreme Court's seminal

decision in *Anderson v. Mt. Clemens*, [328 U.S. 680] (1946) and recently expanded

upon in *Tyson Foods v. Bouaphakeo*, [577 U.S. 442] (2016)."  *Senne v. Kansas City*

*Royals Baseball Corp.*, 934 F.3d 918, 938 (9th Cir. 2019).

"In *Mt. Clemens*, the Supreme Court acknowledged the difficult bind

that employees frequently confronted when seeking to bring wage-and-hour claims

against their employers: if their employers had failed to maintain proper

timekeeping records, proving the hours of uncompensated work often posed 'an

impossible hurdle for the employee.'"  *Senne*, 934 F.3d at 938–39 (quoting *Mt.*

*Clemens*, 328 U.S. at 687).  "*Mt. Clemens* held that such a catch-22 was not in line

with 'the remedial nature of [the FLSA] and the great public policy which it

embodies.'"  *Id.* at 939 (quoting *Mt. Clemens*, 328 U.S. at 687) (footnote omitted).

---

[9] The court has similarly deferred ruling on Plaintiff's Motion for Class Certification,
ECF No. 296, pending a decision by the Hawaii Supreme Court on the certified question.  *See*
ECF No. 370.

To address this problem, *Mt. Clemens* established its landmark burden-shifting framework for actions in which the employer has kept inaccurate or inadequate records: if an employee "proves that he has in fact performed work for which he was improperly compensated" and "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," then the burden "shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." If the employer does not rebut the employee's evidence, damages may then be awarded to the employee, "even though the result be only approximate."

*Id.* (quoting *Mt. Clemens*, 328 U.S. at 687–88).

And in *McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir. 1988), the Ninth Circuit held "that the *Mt. Clemens Pottery* standard allows district courts to award back wages under the FLSA to nontestifying employees based upon the fairly representative testimony of other employees." *Id.* at 589 (citation omitted). "The burden is not on the employees to prove the precise extent of uncompensated work." *Id. McLaughlin* thus held that "[t]he testimony of the [Secretary of Labor's] five employee witnesses . . . established 'as a matter of just and reasonable inference,' that *all* of the employees regularly worked over eight hours on weekdays and over six hours on many Saturdays." *Id.* (quoting *Mt. Clemens*,

328 U.S. at 687) (emphasis added).[10]  Through representative testimony, "[t]he

twenty-three non-testifying employees established a prima facie case that they had

worked unreported hours." *Id.*  "Once the employees establish a prima facie case,

the burden shifts to the employer to come forward with evidence of the precise

amount of work performed or evidence to negate the reasonableness of the

inference to be drawn from the employees' evidence." *Id.* (citing *Mt. Clemens*, 328

U.S. at 687–88).

> Further,
>
> [s]eventy years after *Mt. Clemens* addressed the use of
> representative evidence at the trial stage to show
> damages, *Tyson* extended *Mt. Clemens*' holding to
> answer [in the affirmative] two important questions:
> whether representative evidence may be used at the class
> certification stage, and whether representative evidence
> may also be used to establish liability in addition to
> damages.

*Senne*, 934 F.3d at 939.  "Because of Tyson's dereliction of their recordkeeping

duties, the employees were entitled to 'introduce a representative sample to fill an

evidentiary gap created by the employer's failure to keep adequate records.'" *Id.* at

940 (quoting *Tyson*, 577 U.S. at 456).  The employer's "primary defense was to

---

[10]  That is, the "evidence may consist of 'fairly representative testimony' from a sample
of employees." *In re Perez*, 749 F.3d 849, 853 (9th Cir. 2014) (quoting *McLaughlin*, 850 F.2d at
589).  Fairly representative testimony of employees "would establish . . . [that] his or her duties
and hours worked are a fair approximate for any other . . . worker employed by [defendant]." *Id.*

23

show that [plaintiffs' evidence] was unrepresentative or inaccurate." *Tyson*, 577 U.S. at 457.

And so, there is a potential relationship between the FLSA damages issue and the Motion for Conditional or Final FLSA Certification, ECF No. 297. To be clear, the court is not determining here that *Mt. Clemens*, *McGlaughlin*, and *Tyson* necessarily apply under the facts of this case (or whether Plaintiffs have met their initial burden under *Mt. Clemens*)—those questions have not been briefed or argued in the present Motion. What is important here is that these issues may implicate Plaintiffs' Motion for Conditional or Final FLSA Certification, ECF No. 297. If the doctrine as discussed in *Mt. Clemens*, *McGlaughlin*, and *Tyson* applies, then granting summary judgment against certain individual Plaintiffs now—for lack of individualized evidence—might be premature.[11] In short, the court deems it appropriate to defer the question regarding FLSA overtime damages until the Motion for Conditional or Final FLSA Certification, ECF No. 297, is fully briefed and presented to the court.

---

[11] Under the current record, many Plaintiffs *do* have some evidence supporting FLSA overtime claims, both as to liability and damages (for example, many Plaintiffs have substantial amounts of overtime and minimum wage damages listed on Todd's Exhibits 3 and 8). Rather, Defendants' argument is that, at summary judgment, others do *not,* either because Todd's supplemental report lists no damages for certain Plaintiffs—arguably, according to Plaintiffs, because they are hampered by a lack of complete records—or because certain Plaintiffs did not produce individualized evidence. Even if some did not meet a non-movant's corresponding burden at summary judgment under the *Celotex* standard, they might survive under *Mt. Clemens*, *McGlaughlin*, and *Tyson*. Again, however, the precise contours of those cases are not before the court.

**E.      The Statute of Limitations Bars Six Plaintiffs' FLSA Overtime Claims**

Finally, Defendants argued that the FLSA overtime claims of six

Plaintiffs—Carissa Franco, Felicitas Johnson, Holli Morton, Patricia Pace, Dayna

Pacheco, and Jenne Reynolds (the "six Plaintiffs")—are barred by FLSA's statute of

limitations in 29 U.S.C. § 256(a).  *See* ECF No. 287 at PageID.7898.  On this point,

the court agrees.

The court applies a three-year limitation period under 29 U.S.C.

§ 255(b) because the 4AC alleges that the FLSA violations were "willful."  *See,*

*e.g.*, *Bolos*, 762 F. Supp. 3d at 1007–09 (discussing the FLSA statute of limitations,

and applying a three-year period given allegations of willful violations).  And, for

purposes of the three-year FLSA statute of limitations for the six Plaintiffs, the

action was commenced not on June 20, 2024, when the six Plaintiffs were named in

a Second Amended Complaint, ECF No. 156, but when the six FLSA Plaintiffs filed

their "opt in" written consent.  Specifically, § 256 provides:

> In determining when an action is commenced for the
> purposes of section 255 of this title, an action
> commenced on or after May 14, 1947 under the Fair
> Labor Standards Act of 1938, as amended [29 U.S.C. 201
> et seq.], . . . shall be considered to be commenced on the
> date when the complaint is filed; *except that in the case*
> *of a collective or class action instituted under the Fair*
> *Labor Standards Act of 1938, as amended, . . . it shall be*
> *considered to be commenced in the case of any individual*
> *claimant—*

25

> (a) on the date when the complaint is filed, if he is
> specifically named as a party plaintiff in the
> complaint *and his written consent to become a
> party plaintiff is filed on such date in the court in
> which the action is brought*; or

> (b) if such written consent was not so filed or if his
> name did not so appear—on the subsequent date
> on which such written consent is filed in the court
> in which the action was commenced.

(Emphases added).  *See, e.g.*, *Hubbard v. County of Los Angeles*, 2024 WL
3273495, at *3 (C.D. Cal. June 7, 2024) ("For a named plaintiff, the statute of
limitations runs until 'the date when the complaint is filed, . . . *and* his written
consent to become a party plaintiff is filed on such date in the court in which the
action is brought.'") (citing § 256(a)) (other citations omitted).[12]

Here, Plaintiffs do not dispute that the six Plaintiffs filed their consent
forms more than three years after they last worked for the Hotel.  *See* ECF No. 362
at PageID.15619.[13]  Rather, Plaintiffs assert that equitable tolling should apply to

---

[12]  "'A new cause of action accrues at each payday immediately following the work
period for which compensation is owed.'"  *Bolos*, 762 F. Supp. 3d at 1008 (quoting *Dent v. Cox
Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007); *see also Hubbard*, 2024 WL
3273495, at *3 ("An FLSA claim accrues on the date that plaintiffs allege they should have been,
but were not, compensated for their overtime hours worked.") (citations omitted).

[13]  That is, Plaintiffs agree with Defendants' statements in their Motion that:

> Carissa Franco last worked at the Grand Wailea on July 17, 2021,
> but did not file her consent form until August 28, 2024.  Dayna
> Pacheco last worked at the Grand Wailea on March 19, 2020, but
> did not file her consent form until August 28, 2024.  Hollingsworth
> Morton last worked at the Grand Wailea on March 19, 2021, but

(continued . . . )

excuse the late filings.  Upon examination, however, Plaintiffs' resort to equitable tolling fails.

First, as the court previously reasoned when dismissing some FLSA claims in a prior version of the Complaint, fraudulent concealment or equitable tolling must be affirmatively pled.  *See Bolos*, 762 F. Supp. 3d at 1009 (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999)).  Given leave to amend to do so, Plaintiffs did not in the 4AC.  Further, Plaintiffs have also not shown that a failure to file their consent forms was the fault of Defendants, or any concealment of facts by Defendants.  *See id.* ("Under the federal equitable tolling doctrine, active concealment of fraudulent conduct or reasonable lack of discovery absent active concealment tolls the statute of limitations . . . .") (quoting *Cunha v. Ward Foods, Inc.*, 501 F. Supp. 830, 837 (D. Haw. 1980)).

And, in any event, "[e]quitable tolling may be applied if, *despite all due diligence*, a plaintiff is unable to obtain vital information bearing on the existence of his claim."  *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658,

---

did not file her consent form until August 28, 2024.  Jeanne Reynolds last worked at the Grand Wailea on March 14, 2020, but did not file her consent form until August 28, 2024.  Felicitas Johnston last worked at the Grand Wailea on in June 2021, but did not file her consent form until August 28, 2024.  Patricia Pace last worked at the Grand Wailea in March 2021, but did not file her consent form until August 28, 2024.

ECF No. 287 at PageID.7898–7899 (internal citations to record omitted).

673 (D. Haw. 2017) (citing *O'Donnell v. Vencor*, Inc., 465 F.3d 1063, 1068 (9th Cir.

2006) (emphasis added).  "Plaintiff must also allege facts that show his *due*

*diligence* in trying to uncover the facts."  *Id.* (citing *Rutledge v. Boston Woven Hose*

*& Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (emphasis added); *see also Seattle*

*Audubon Soc. v. Robertson*, 931 F.2d 590, 596 (9th Cir. 1991) ("[W]hen external

forces, *rather than plaintiff's lack of diligence*, account for the failure to file a

timely claim, equitable tolling is proper.") (emphasis added).  "Courts are 'much

less forgiving in receiving late filings *where the claimant failed to exercise due*

*diligence* in preserving his legal rights.'"  *Sanders v. Meink*, 2025 WL 1852737, at

*4 (D. Haw. July 3, 2025) (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96

(1990)) (emphasis added).

>       Here, the record reflects that each of the six Plaintiffs had signed their

opt-in consent forms in August through November of 2023.  *See* ECF No. 191 at

PageID.5722 (Pace signed on August 8, 2023); *id.* at PageID.5686 (Pacheco filed

on August 22, 2023); *id.* at PageID.5693 (Morton signed on September 19, 2023);

*id.* at PageID.5691 (Johnston signed on October 18, 2023); *id.* at PageID.5678

(Franco signed on Nov. 20, 2023); and *id.* at PageID.5696 (Reynolds signed on Nov

20, 2023).  Despite having been signed in 2023, the forms were not actually filed in

court until August 28, 2024.  Thus, although *other* factors for equitable tolling have

not been met, the six Plaintiffs have *also* not shown an exercise of due diligence in preserving their FLSA rights.[14]

Plaintiffs also contend that the court should wait until deciding the certification motion, apparently relying on case law from circuits that have abolished a two-step FLSA certification process, arguing that such cases "lend valuable persuasive authority [for equitable tolling] in this unique context."  ECF No. 335 at PageID.14224.  But Plaintiffs admit that—as explained in *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018)—the Ninth Circuit "still employs a two-step approach."  ECF No. 335 at PageID.14224.  In any event, the court's ruling on these six Plaintiffs does not have a potential relationship with the certification motion.  These Plaintiff would be time-barred regardless of whether the case proceeds as a collective action or not.  *See, e.g.*, *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 403 (6th Cir. 2021) (reasoning that "collective actions permit individualized claims and individualized defenses, 'in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases'" when discussing statutes of limitations in class and collective actions) (quoting *Campbell*, 903 F.3d at 1105).

---

[14]  Pacheco's and Reynolds' FLSA claims would have been late even if their consents had been filed as soon as signed because they last worked more than three years before they were signed.  *See* ECF No. 191 at PageID.5686, 5696; *see also* ECF No. 287-1 at PageID.7903, 7904.

Accordingly, the court GRANTS summary judgment in favor of Defendants as to the FLSA claims by Carissa Franco, Felicitas Johnson, Holli Morton, Patricia Pace, Dayna Pacheco, and Jenne Reynolds.  Their FLSA overtime claims are time-barred.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment, ECF No. 287, is GRANTED in part and DENIED in part.

As to Count One seeking a ruling regarding application of a workweek unit of measure of damages for calculating minimum wage violations under Hawaii law, the Motion is DENIED without prejudice to being raised again after the Hawaii Supreme Court rules on the certified question.

As to Count Three arguing that claims for linen fees and gratuities are not proper under HRS § 388-6, the Motion is DENIED.

As to Count Seven regarding promissory estoppel, the Motion is DENIED, although a claim fails if based solely on promises to "hang in there."

As to Defendants' arguments that FLSA overtime claims in Count Six and minimum wages claims of certain Plaintiffs are barred for lack of evidence of damages as set forth in Plaintiffs' expert report, the Motion is DENIED without prejudice.  The court defers ruling pending the Hawaii Supreme Court's decision

on the certified question and until the court considers Plaintiffs' collective action

motion (the Motion for Conditional or Final FLSA Certification, ECF No. 297).

Finally, the Motion is GRANTED as to the FLSA overtime claims of

Plaintiffs Carissa Franco, Felicitas Johnson, Holli Morton, Patricia Pace, Dayna

Pacheco, and Jenne Reynolds.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 12, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge